UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH AMBROSE, D.C.,

                                                 NO. CIV. S-08-1664 LKK/GGH

        Plaintiff,

    v.

                                             O R D E R

GARY COFFEY, et al.,

        Defendants.

_____/

Plaintiff Joseph Ambrose is a California licensed chiropractor. He filed seven claims under 42 U.S.C. § 1983 and one claim under 42 U.S.C. § 1985 against Gary Coffey and James C. Weydert, in their official capacities as employees of the San Joaquin County District Attorney's Office, the San Joaquin County District Attorney's Office (collectively, the "county defendants"); he also sued three private parties, specifically William Reynolds, an insurance investigator with Travelers Property & Casualty Company of America ("Travelers"), Travelers, and Zenith Insurance Company (the "private defendants"). Zenith has since been dismissed on plaintiffs' own motion.

1

1    Plaintiff alleges that all defendants conspired to violate his
2    civil rights by (1) maliciously prosecuting him for practicing a
3    chiropractic technique, called Manipulations Under Anesthesia
4    ("MUA"), in violation of his rights secured by the First, Fourth,
5    and Fourteenth Amendments ; (2) falsely imprisoning him without
6    probable cause in violation of the Fourth Amendment; (3) and (4)
7    falsely arresting him in violation of the Fourth Amendment; (5)
8    retaliating against him for refusing to speak against MUAs, in
9    violation of the First Amendment; (6) demanding that plaintiff make
10   untruthful statements in violation of his Fourteenth Amendment
11   right to due process; (7) abrogating a "no prosecution" agreement
12   in violation of the plaintiff's Fourteenth Amendment right to
13   procedural due process; and (8) obstructing justice, under 42
14   U.S.C. § 1985, by intimidating witnesses.

15   The private defendants have filed a motion to dismiss and a
16   motion to strike.  The county defendants filed a motion to dismiss,
17   raising many of the same issues.  Therefore, this order considers
18   the three motions together.  For the reasons explained below, the
19   motions to dismiss are granted in part and denied in part.  The
20   motion to strike is denied.

21                    **I. FACTUAL ALLEGATIONS[1]**

22   Defendant Gary Coffee is a retired investigator for the San
23   Joaquin County District Attorney's Office ("SJC DA") who continued
24   to work for the SJC DA on a contract basis.  (Compl. ¶¶ 3, 13.)

25   ───────────

26       [1] Allegations are taken from plaintiff's complaint. As required,
     for purposes of this motion they are taken as true.

Defendant James C. Weydert is a deputy district attorney in the SJC DA's office who participated in the prosecution of Plaintiff. (Compl. ¶ 15.)  Defendant William Reynolds is a private insurance investigator, formerly employed by Travelers, who participated in the criminal investigation of plaintiff.  (Compl. ¶¶ 20-21.)  The complaint alleges that defendant Travelers is a private insurance company that participated in the criminal investigation of plaintiff for the use of MUAs.  (Compl. ¶¶ 20, 23.)

Plaintiff alleges that he may lawfully administer MUAs. His claims center on his allegation that he was investigated and falsely arrested by the county defendants, with assistance from the private defendants, for practicing MUAs, false billing of insurance claims, unlawful rebates, grand theft, and conspiracy. (Compl. ¶¶ 4, 26, Pl.'s Ex. 3.)

The background for this arrest, according to the complaint, is a broad conspiracy by the insurance industry, the State of California Department of Insurance and the SJC DA seeking to end the legal practice of MUAs.  (Compl. ¶¶ 17, 23.)  Travelers allegedly used the prosecutions of plaintiff and other chiropractors to interrupt collection efforts seeking payment for MUAs, furthering its alleged financial interest in seeing MUAs prohibited.  (Compl. ¶¶ 20, 22.)  Many of plaintiff's allegations speak to this broader conspiracy, rather than the conduct at issue in the instant lawsuit.  Below the court attempts to extract specific allegations of relevant conduct from the complaint.

On September 18, 2003, plaintiff entered into a written "no

3

1  prosecution" agreement with Mr. Weydert in exchange for his honest

2  cooperation with the investigation. (Compl. ¶ 5.) Plaintiff

3  alleges that he was at all times honest and truthful; but that on

4  August 23, 2005, Weydert nonetheless sought an arrest warrant

5  without first seeking judicial review to determine the veracity of

6  plaintiff's statements, thereby violating the "no prosecution"

7  agreement. (Compl. ¶¶ 6, 7.) The arrest warrant was supported by

8  an affidavit by defendant Coffey. (Compl. ¶¶ 1, 3.) Plaintiff

9  alleges that this affidavit was based on legal opinions and

10  conclusions presented by Reynolds, and that the affidavit contained

11  deliberately false and misleading information, to wit, that

12  plaintiff was practicing a procedure (MUA) that was outside the

13  scope of the lawful practice of chiropractic medicine. (Compl. ¶

14  2, 31, 32, Pl.'s Ex. 9.)

15      Later that day, plaintiff was arrested, placed in custody,

16  booked, and released on $50,000.00 bail. (Compl. ¶ 3.)

17      Also on August 23, 2005, Weydert filed criminal charges

18  against plaintiff. (Compl. ¶ 4.) Plaintiff alleges that the

19  criminal charges were based upon an investigation conducted by the

20  SJCDA in collusion with Travelers and the State of California

21  Department of Insurance. (Compl. ¶¶ 16(H), 17, 20, 38.)

22  Specifically, plaintiff alleges that the SJC DA participated in and

23  directly supervised Travelers' involvement in the investigation.

24  Compl. ¶ 16(A). Moreover, Travelers and Reynolds allegedly helped

25  shape the strategy of the investigation by training SJC DA

26  prosecutors and investigators in an inaccurate version of the law

1   that reflected Travelers' interests.  (Compl. ¶ 21.)  Reynolds,

2   pursuant to his employment with Travelers, directly participated

3   in the investigation and questioning of plaintiff.  (Compl. ¶¶ 7,

4   20, 21, 48.)

5      On August 15, 2006, the criminal prosecution of plaintiff

6   terminated when plaintiff succeeded on a motion to dismiss all

7   charges against him.  (Compl. ¶¶ 9, 10, Ex. 5.)

8      As noted above, plaintiff asserts that the motivation for the

9   investigation and subsequent criminal prosecution was Travelers'

10   desire to override the legal practice of MUAs by using the power

11   of the SJC DA.  (Compl. ¶ 23.)  Travelers allegedly planned to use

12   the criminal prosecution of plaintiff as the basis to interrupt the

13   collection efforts of Med-1 and Sierra Hills, businesses at which

14   plaintiff worked, which had several million dollars in Workers

15   Compensation claims pending with Travelers, many of which were

16   allegedly payment for MUAs.  (Compl. ¶¶ 20, 22, 33-37, 48.)

17      Furthermore, plaintiff alleges that the criminal prosecution

18   (including the warrants issued) lacked probable cause because the

19   SJC DA knew that MUAs were within the legal scope of California's

20   chiropractic practice.  (Compl. ¶¶ 23, 28-32, 38-52, 58.)  The

21   complaint alleges that the SJC DA withheld the above mentioned

22   evidence which may have exonerated plaintiff.  (Id.)

23      Plaintiff's complaint was filed on July 18, 2008.  Pending

24   before the court are motions to dismiss filed by all defendants,

25   and private defendants' special motion to strike.

26   ////

1                                **II. STANDARDS**

2   **A.   Standard for Dismissal Pursuant to Federal Rule of Civil**

3           **Procedure 12(b)(6)**

4           In order to survive a motion to dismiss for failure to

5   state a claim, plaintiffs must allege "enough facts to state a

6   claim to relief that is plausible on its face." <u>Bell Atlantic</u>

7   <u>Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).  While a

8   complaint need not plead "detailed factual allegations," the

9   factual allegations it does include "must be enough to raise a

10  right to relief above the speculative level."  <u>Id.</u> at 1964-65.

11          The Supreme Court recently held that Federal Rule of Civil

12  Procedure 8(a)(2) requires a "showing" that the plaintiff is

13  entitled to relief, "rather than a blanket assertion" of

14  entitlement to relief.  <u>Id.</u> at 1965 n.3.  Though such assertions

15  may provide a defendant with the requisite "fair notice" of the

16  nature of a plaintiff's claim, the Court opined that only

17  factual allegations can clarify the "grounds" on which that

18  claim rests.  <u>Id.</u>  "The pleading must contain something more. .

19  . than . . . a statement of facts that merely creates a

20  suspicion [of] a legally cognizable right of action."  <u>Id.</u> at

21  1965, quoting 5 C. Wright & A. Miller, Federal Practice and

22  Procedure, § 1216, pp. 235-36 (3d ed. 2004).[2]

23  _____

24          [2] The holding in <u>Twombly</u> explicitly abrogates the well established
    holding in <u>Conley v. Gibson</u> that, "a complaint should not be dismissed
    for failure to state a claim unless it appears beyond doubt that the

25  plaintiff can prove no set of facts in support of his claim which would
    entitle him to relief."  355 U.S. 41, 45-46 (1957); <u>Twombly</u>, 127 S. Ct.

26  at 1968.

On a motion to dismiss, the allegations of the complaint must be accepted as true.  See Cruz v. Beto, 405 U.S. 319, 322 (1972).  The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  See Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  In general, the Complaint is construed favorably to the pleader.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982).  Nevertheless, the court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations.  W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

**B.    Standard for Motion to Strike Pursuant to Federal Rule of Civil Procedure 12(f)**

Rule 12(f) authorizes the court to order stricken from any pleading "any redundant, immaterial, impertinent, or scandalous matter."  A party may bring on a motion to strike within 20 days after the filing of the pleading under attack.  The court, however, may make appropriate orders to strike under the rule at any time on its own initiative.  Thus, the court may consider and grant an untimely motion to strike where it seems proper to do so.  See 5A Wright and Miller, Federal Practice and Procedure: Civil 2d ' 1380.

Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading

7

1   have no possible relation to the controversy, and may cause

2   prejudice to one of the parties. See 5A C. Wright & A. Miller,

3   Federal Practice and Procedure: Civil 2d ' 1380;  See also Hanna

4   v. Lane, 610 F. Supp. 32, 34 (N.D. Ill. 1985).  If the court is

5   in doubt as to whether the challenged matter may raise an issue

6   of fact or law, the motion to strike should be denied, leaving

7   an assessment of the sufficiency of the allegations for

8   adjudication on the merits. See 5A Wright & Miller, supra, at '

9   1380.

10                        **III. ANALYSIS**

11       In the complaint, plaintiff brings numerous claims under 42

12  U.S.C. § 1983 alleging that the defendants violated his rights

13  under the First, Fourth, and Fourteenth Amendments of the United

14  States Constitution.  In particular, plaintiff alleges that he

15  was maliciously prosecuted, falsely imprisoned, falsely

16  arrested, retaliated against for refusing to speak against MUAs,

17  that his Fourteenth Amendment due process rights were violated

18  when defendants demanded that he make untrue statements, and

19  that his Fourteenth Amendment right to procedural due process

20  was violated when defendants violated a "no prosecution"

21  agreement.  All of the above claims are brought under section

22  1983; plaintiff explicitly disavows bringing state law claims.

23  In addition to the section 1983 claims, plaintiff alleges that

24  defendants obstructed justice under 42 U.S.C. § 1985(2) by

25  intimidating witnesses.

26       In response, the private defendants filed a motion to

                                    8

1  strike, arguing that plaintiff's claims violate the anti-SLAPP

2  (strategic lawsuit against public participation) provisions

3  outlined in California's Code of Civil Procedure section 425.16.

4  Because plaintiff raises no state law claims, this state law

5  defense does not apply, and the motion to strike is denied.

6       In addition, all defendants have filed motions to dismiss.

7  Defendants argue that plaintiff has failed to plead the

8  essential elements of a section 1985 claim, and raise various

9  overlapping defenses to the section 1983 claims.  Because many

10 of these defenses potentially apply to multiple claims, the

11 court's discussion is structured around the asserted defenses.

12 **A.   Motion to Strike**

13      The private defendants move to strike various claims as

14 barred by Cal. Civ. Proc. Code § 425.16.  Specifically, private

15 defendants claim that plaintiff seeks to hold Travelers and Mr.

16 Reynolds liable for their protected communications with the SJC

17 DA, in violation of the First Amendment and the prohibition in

18 section 425.16 against strategic lawsuits against public

19 participation (SLAPPs).

20      In advancing this argument, the private defendants

21 mischaracterize plaintiff's claims.  Although the complaint

22 could have been clearer, plaintiff has explicitly stated that

23 all claims are brought under 42 U.S.C. §§ 1983 and 1985.  To the

24 extent that plaintiff discusses state law, it is because state

25 law informs the section 1983 claims.

26      The Supremacy Clause bars the application of the anti-SLAPP

1  statute to federal claims.  See Globetrotter Software Inc. v.

2  Elan Computer Group, 63 F. Supp. 2d 1127 (N.D. Cal. 1999). As

3  the court explained in refusing to apply the anti-SLAPP statute

4  to federal claims, such application "[would not be] supported by

5  the *Erie* rationale articulated in the *Lockheed* decision or by

6  any other authority of which the Court is aware." Id. at 1130.

7  See also In re Bah, 321 B.R. 41, 46 (9th Cir. 2005) ("We . . .

8  agree with the Globetrotter court that the anti-SLAPP statute

9  may not be applied to matters involving federal questions . .

10  ."), Bulletin Displays, LLC v. Regency Outdoor Advertising,

11  Inc., 448 F.Supp. 2d 1172, 1180 (C.D. Cal. 2006).

12      In the absence of any state law claims, California's anti-

13  SLAPP statute is inapplicable.  As to defendants' First

14  Amendment claim, that is an issue to be resolved at trial or

15  summary judgment.  The motion to strike is denied.

16  **B.   Plaintiff Has Not Alleged the Elements of a Claim under 42**

17  **U.S.C. § 1985(2)**

18      In his claim under 42 U.S.C. § 1985(2), plaintiff alleges

19  that because of his arrest and subsequent prosecution he was

20  unavailable to act as a witness in various state criminal

21  trials.  All defendants contend that plaintiff has failed to

22  allege a section 1985(2) claim.

23      Section 1985(2) contains two distinct clauses, which

24  provide separate causes of action. As now explained, plaintiff

25  has failed to state a claim under either clause.

26      The first clause of section 1985(2) prohibits conspiracies

1    "to deter, by force, intimidation, or threat, [the participation

2    of] any party or witness in any court of the United States."   42

3    U.S.C. § 1985(2).   This clause "concerns access to federal

4    courts."  Portman v. County of Santa Clara, 995 F.2d 898, 908-09

5    (9th Cir. 1993), see also Bretz v. Kelman, 773 F.2d 1026, 1028

6    (9th Cir. 1985).   Because plaintiff alleges interference with

7    state, rather than federal, court proceedings, plaintiff has not

8    stated a claim under the first clause of section 1985(2).

9         The second clause of section 1985(2) does encompass

10   interference with state court proceedings, but requires "an

11   allegation of class-based animus."[3]  Portman, 995 F.2d at 909

12   (quoting Bretz, 773 F.2d at 1029); Kush v. Rutledge, 460 U.S.

13   719, 725 (1983).   Chiropractors are not a protected or suspect

14   class, and plaintiff has not alleged any other class based

15   animus.

16        Because plaintiff has failed to allege the necessary

17   elements of a claim under either clause of section 1985(2),

18   defendants' motion to dismiss this claim will be granted.

19   **C.   The Statute of Limitations as to Plaintiff's Second, Third,**

20        **Fourth, Fifth, Sixth, and Seventh Claims**

21        Plaintiff's remaining claims are brought under 42 U.S.C. §

22   _____

23        [3] The second clause prohibits conspiracies "for the purpose
     of impeding . . . the due course of justice in any State or
24   Territory, with intent to deny to any citizen the equal protection
     of the laws, or to injure him or his property for lawfully
25   enforcing, or attempting to enforce, the right of any person, or
     class of persons, to the equal protection of the laws."  42 U.S.C.
26   § 1985(2).

1  1983.   Section 1983 imposes civil liability on any individual

2  who "under color of any statute, ordinance, regulation, custom,

3  or usage, of any State . . . subjects, or causes to be

4  subjected, any citizen of the United States . . . to the

5  deprivation of any rights, privileges or immunities secured by

6  the Constitution and laws."   42 U.S.C. § 1983.

7       Plaintiff's claims two through seven allege deprivation of

8  various rights.   Each claim, however, rests on essentially the

9  same conduct by defendants, i.e. the acts surrounding

10  plaintiff's arrest.   Defendants argue that all claims based on

11  plaintiff's arrest are barred by the applicable statute of

12  limitations.

13       In order to evaluate this argument, the court must

14  determine the length of the limitations period, when this period

15  began to run, and whether any events since that time have tolled

16  the running of the period.   The Supreme Court has explicitly

17  addressed these issues in the context of section 1983 claims for

18  false arrest and false imprisonment. <u>Wallace v. Kato</u>   549 U.S.

19  384, 127 S.Ct. 1091 (2007).   Therefore, the court begins with

20  plaintiff's claims under those causes of action (claims two,

21  three, and four), and then consider's <u>Kato</u>'s applicability, if

22  any, to plaintiff's other claims (claims five, six, and seven).[4]

23  ////

24  _____

25       [4]   <u>Kato</u> applies to events that preceded that decision.
   Although <u>Kato</u> might have announced a new rule, the Court applied

26  that rule retroactively to the parties in the case. <u>Reynoldsville
   Casket Co. v. Hyde</u>, 514 U.S. 749, 752 (1995).

1          **1.    False Imprisonment and False Arrest Claims**

2               **(Claims 2, 3, and 4)**

3          Section 1983 does not contain its own statute of

4    limitations.  As such, the federal courts borrow the forum

5    state's statute of limitations for personal injury claims.  <u>See</u>

6    <u>Wilson v. Garcia</u>, 471 U.S. 261, 279-80 (1985).  In California,

7    the personal injury statute of limitations period is two years.

8    Cal. Civ. Proc. Code § 335.1 (West 2008).  The two year period

9    established in C.C.P. § 335.1, and not the one year period for

10   state law false imprisonment claims, applies to section 1983

11   claims alleging false imprisonment.  <u>See</u> <u>Rutledge v. County of</u>

12   <u>Sonoma</u>, 2008 WL 2676578 8 (N.D. Cal. July 1, 2008), <u>Greene v.</u>

13   <u>Bloom</u>, 2008 WL 1882800 8 (E.D. Cal. April 24, 2008).

14        In contrast to the state-by-state approach determining the

15   length of the limitations period, uniform federal law determines

16   when the period begins to run.  <u>Kato</u>, 127 S.Ct. at 1095, <u>Elliott</u>

17   <u>v. City of Union City</u>, 25 F.3d 800, 801-02 (9th Cir. 1994).

18   Generally, the period begins "when the plaintiff knows or has

19   reason to know of the injury that is the basis for the action,"

20   i.e., the point at which the plaintiff could have filed suit.

21   <u>Elliot</u>, 25 F.3d at 802. This rule, however, does not strictly

22   apply to section 1983 claims of false arrest or false

23   imprisonment.  A plaintiff may file a false arrest/false

24   imprisonment claim as soon as the allegedly wrongful conduct

25   begins, but the limitations period begins to run only after the

26

13

1   false imprisonment ends.  Kato, 127 S.Ct. at 1095-1096.[5]

2      While the parties agree with this analysis, they dispute

3   when plaintiff's false imprisonment ended.  Plaintiff was

4   arrested, arraigned, and released on bail on August 23, 2005.

5   He argues that his status as a bailee left him in custody of the

6   bail bondsman "until the 'on bail' status ended," on August 15,

7   2006, and that the statute of limitations began to run at this

8   point.  Defendants argue that the limitations period began to

9   run on August 23, 2005, when plaintiff was held pursuant to

10  legal process.[6]

11     Plaintiff's argument fails, because even assuming that

12  plaintiff's bail status constituted imprisonment, Kato compels

13  the conclusion that this was not *false* imprisonment.  "[F]alse

14  imprisonment ends once the victim becomes held *pursuant to*

15  *[legal] process*--when, for example, he is bound over by a

16  magistrate or arraigned on charges."  Id. at 1096 (emphasis in

17  _____

18     [5]  Kato described this as a rule unique to false imprisonment,
    id. at 1096, although some other courts have reached the same
19  result under the general rule of "continuing torts."  Karen v.
    State, 444 N.Y.S.2d 381 (Ct. Cl. 1981) (observing that false arrest
20  is a "continuing" tort lasting until release from custody), Adler
    v. Beverly Hills Hosp., 594 S.W.2d 153 (Tex. Civ. App. 1980); see
21  also Flowers v. Carville, 310 F.3d 1118, 1126 (9th Cir. 2002)
    (stating the general rule that "When a tort involves continuing
22  wrongful conduct, the statute of limitations doesn't begin to run
    until that conduct ends.").

23     [6] Defendants argue that the arrest warrant itself constituted
    legal process.  Thus, defendants also attack the merits of the
24  false imprisonment claim, arguing that because the arrest was based
    on a warrant, there was *no* imprisonment without legal process.
25  Because the court properly resolves this claim on the statute of
    limitations defense, and on the basis of arraignment.  The court
26  need not address these arguments.

1   original).   Unlawful detention after this point "forms part of
2   the damages for the 'entirely distinct' tort of malicious
3   prosecution, which remedies detention accompanied, not by
4   absence of legal process, but by wrongful institution of legal
5   process."   Id.   Thus, the limitations period for plaintiff's
6   second, third, and fourth claims began to run when plaintiff
7   appeared before the examining magistrate and was bound over for
8   trial on August 23, 2005.

9        Plaintiff attempts to distinguish Kato by arguing that
10  arraignment's significance under Kato derives from the
11  independent evaluation by a judge, and that in this case
12  defendant Weydert's allegedly fraudulent declaration made
13  independent evaluation impossible.   Although Kato did not
14  directly explain why arraignment is significant, that case
15  appears to foreclose plaintiff's argument.   Kato repeatedly
16  stated that arraignment ends false imprisonment even when events
17  at arraignment support a malicious prosecution claim.   See,
18  e.g., id. at 1026.   Because an element of a malicious
19  prosecution claim is absence of probable cause, many such claims
20  will involve allegations that the arraigning judge was misled
21  about the existence of probable cause. In sum, Kato implies that
22  arraignment terminates false imprisonment even when arraignment
23  is based on false information.

24       Plaintiff's final argument on this issue is that under Heck
25  v. Humphrey, 512 U.S. 477 (1994), he could not have filed his
26  false arrest claim until the criminal proceedings against him

had terminated, and thus the limitations period either did not begin or was tolled until this time.

Heck bars civil claims that would necessarily impugn an outstanding conviction.  To succeed on a false arrest claim plaintiff would need to show lack of probable cause, and this issue would potentially be raised during the criminal proceeding.  Plaintiff's argument would extend Heck to cover cases when the criminal conviction is merely a future possibility.  Kato, however, explicitly rejected this extension of Heck, holding that it has no bearing even when a criminal case is currently proceeding.  Kato, 127 S.Ct. at 1098.

The limitations period for plaintiff's second, third, and fourth claims was two years.  It began running on August 23, 2005, the day of plaintiff's arraignment, and plaintiff has presented no evidence that it was ever tolled. The limitations period therefore expired on August 23, 2007. Plaintiff's filing of these claims on July 18, 2008, is untimely, and these claims must be dismissed.

### 2.   First Amendment and Due Process Claims Based on The Arrest (Claims 5, 6, and 7)

Plaintiff's fifth, sixth, and seventh claims are, respectively, that the arrest was retaliation for conduct protected by the First Amendment, that the arrest was made because plaintiff refused to make untruthful statements (violating substantive due process), and that the arrest violated the no prosecution agreement (violating procedural due

1    process).

2        Defendants argue that the limitations period for these

3    claims also began to run on August 23, 2005.  Plaintiff responds

4    with the same argument advanced above, arguing that the arrest

5    was part of a continuous course of conduct that included

6    plaintiff's "imprisonment" while released on bail, and which

7    therefore lasted through plaintiff's acquittal.  (Pl.'s Opp'n to

8    County Defs.' Mot. Dismiss, 12:20-22.)  Additionally, plaintiff

9    argues that all defendants were engaged in a conspiracy with one

10   another, such that their acts cannot be considered separately

11   for statute of limitations purposes.  Thus, plaintiff argues

12   that the limitations period for these claims, as to all

13   defendants, began to run on August 15, 2006.

14       Defendants' discussion of claims five, six, and seven makes

15   no mention of plaintiff's "continuing acts" theory, does not

16   address the conspiracy theory, and does not discuss whether Kato

17   applies to non-Fourth Amendment claims.  Although it is not

18   obvious that these claims were brought within the limitations

19   period, on this motion to dismiss, the burden is on the

20   defendants, and they have not yet carried it. Indeed it should

21   be noted that  Kato itself recognizes that it's doctrine arise

22   from  the unique facts relating to a false imprisonment.  127

23   S.Ct. at 1097, 1101.  Accordingly, the motion as to those causes

24   of action must be denied.

25   ////

26   ////

D.    **Whether Defendant Weydert Is Entitled to Prosecutorial Immunity on The Remaining Claims (1, 5, 6, and 7)**

Defendant Weydert asserts that he enjoys prosecutorial immunity as to all of plaintiff's claims.  Prosecutors enjoy absolute immunity from suits under section 1983 "when performing the traditional functions of an advocate." Kalina v. Fletcher, 522 U.S. 118, 131 (1997).  Plaintiff responds with a scattershot list of many non-prosecutorial acts that the complaint alleges that Weydert performed.  The question, however, is not whether Weydert has engaged in any non-prosecutorial acts, but whether the specific acts forming the basis of plaintiff's particular claims were or were not prosecutorial.  Therefore, after reviewing the scope of prosecutorial immunity, the court evaluates whether the immunity applies to particular claims.

The scope of "prosecutorial functions" which are entitled to immunity, while broad in scope, have been specifically drawn. Imbler v. Patchman, 424 U.S. 409, 431 n.34 (1976).  "Only in 'initiating a prosecution and in presenting the State's case' is the prosecutor absolutely immune." Miller v. Gammie, 335 F.3d 889, 896 (9th Cir. 2003) (quoting Imbler, 424 U.S. at 431). Prosecutors are not absolutely immune when they personally attest to facts, Kalina, 522 U.S. at 130; act as an investigator, id.; advise law enforcement officers, Burns v. Reed, 500 U.S. 478, 492-96 (1991); or speak to the media, Buckley v. Fitzsimmons, 509 U.S. 259, 277-78 (1993).

For acts within the specified scope, however, immunity from

18

1  civil suit is absolute.  Prosecutors are not subject to
2  liability under section 1983 even when they use perjured
3  testimony, Imbler, 424 U.S. at 431 n.34; suppress evidence, id.;
4  or even conspire with a judge "to predetermine the outcome of a
5  judicial proceeding," Ashelman v. Pope, 793 F.2d 1072, 1078 (9th
6  Cir. 1986) (en banc).  See also Shmueli v. City of New York, 424
7  F.3d 237-38 (2d Cir. 2005) (absolute immunity applies even to
8  claims that prosecution was initiated for retaliatory or
9  political reasons).

10      **1.   Prosecutorial Immunity As To The Malicious Prosecution**
11           **Claim**

12      Plaintiff alleges that "[t]he malicious prosecution
13  commenced at the filing of the affidavit and issuance of the
14  arrest warrant.  It continued until August 8, 2006 when charges
15  were dismissed by Judge Saiers."  (Compl. ¶ 76.)  Therefore, in
16  determining whether defendant Weydert is entitled to
17  prosecutorial immunity on this claim, the court asks whether
18  acts Weydert is alleged to have performed during this time
19  period were subject to absolute immunity.

20      First, plaintiff alleges that Weydert signed the criminal
21  complaint against plaintiff.  (Compl. ¶ 4.)  Signing a criminal
22  complaint, without more, is plainly prosecutorial and within the
23  scope of immunity.  Kalina, 522 U.S. at 129.

24      Second, plaintiff elaborates on this claim by alleging
25  that, despite the general rule, in signing this particular
26  criminal complaint Weydert personally attested to the truth of

1  the facts alleged.  (Compl. ¶ 64, Pl.'s Opp'n to County Defs.'

2  Mot. Dismiss at 3:13-14.)  Serving as a fact witness is outside

3  the scope of prosecutorial activity.  However, plaintiff's own

4  exhibit demonstrates that the allegations in the criminal

5  complaint are "on information and belief," rather than attested

6  to under the penalty of perjury or otherwise testimonial.

7  (Compl. Ex. 3, 1:19-20, 8:6-8.)  Because the filing of a

8  criminal complaint on information and belief is an act

9  undertaken by a prosecutor in preparing for trial, this filing

10  is entitled to absolute prosecutorial immunity.  <u>Fitzsimmons</u>,

11  509 U.S. at 273.

12      Plaintiff's third and final allegation of conduct by

13  Weydert within the period of malicious prosecution is that

14  Weydert "contributed to and/or conspired with Gary Coffey to

15  create the criminal complaint and [] intended that the criminal

16  complaint be inaccurate, misleading, contain material omissions,

17  material misrepresentations and [] shared in bad faith reasons

18  for the filing of the criminal complaint."  (Compl. ¶ 63.)  As

19  discussed above, the prosecutorial immunity inquiry looks only

20  to the types of act performed, not the prosecutor's motive, bad

21  faith, or knowing use of perjured testimony.  Therefore, this

22  allegation, which does not specify any additional conduct, does

23  not defeat prosecutorial immunity.

24      In addition to making these allegations, plaintiff has

25  repeatedly emphasized, in his opposition memo, that Weydert does

26  not enjoy prosecutorial immunity when acting as an investigator,

whether in addition to or prior to his role in the prosecution
of a case.  While this statement is consistent with the law,
plaintiff has not alleged that Weydert engaged in investigatory
activity.  Therefore, Weydert has prosecutorial immunity with
respect to the malicious prosecution claim, and defendants'
motion to dismiss this claim as to Weydert will be granted.

**2.    Prosecutorial Immunity on The Fifth, Sixth, and
Seventh Claims**

Plaintiff's fifth, sixth, and seventh claims all stem from
the acts leading to and surrounding plaintiff's arrest.  Again,
the court examines particular allegations to determine whether
the claims are subject to immunity.

First, plaintiff's opposition memo states that "there is a
strong inference that Weydert knew of Coffey's lies in his
affidavit (and omissions) and that they worked together as a
team to create a wrongful arrest."  (Pl.'s Opp'n to County
Defs.' Mot. Dismiss at 4:6-7.)  Without addressing whether such
an inference is in fact warranted, the court notes that
prosecutorial immunity encompasses the offering of perjured
testimony, so knowledge of "Coffey's lies," rather than Weydert
lying himself, would not defeat immunity.  Plaintiff has not
identified specific non-prosecutorial acts Weydert performed in
creating this arrest.

Plaintiff also alleges that Weydert made "public statements
and threats . . . in the press . . . to prosecute people who
practice MUA's."  (Compl. ¶ 16(D).)  In Fitzsimmons, the Court

held that prosecutors do not enjoy absolute immunity when making statements at a press conference.  509 U.S. at 278.  In that case, the prosecutor had allegedly made false statements about the plaintiff at a press conference discussing the criminal case against plaintiff, in an effort to gain votes in an upcoming election.  Id. at 262.  Although threats to prosecute made to the press are arguably more prosecutorial than the statements of fact at issue in Fitzsimmons, these statements to the press are nonetheless outside the narrow confines of "initiating a prosecution and [] presenting the State's case." Imbler, 424 U.S. at 431.

     Taking these allegations of threats as true, and construing them in the light most favorable to the plaintiff, plaintiff has alleged conduct that could support his fifth, sixth, and seventh claims and that would be outside the scope of prosecutorial immunity.  Therefore, defendants' motion to dismiss these claims as to defendant Weydert should be denied.

**E.  County Defendants' Sovereign Immunity**

     The county defendants also assert that all claims against them are barred by sovereign immunity.  Defendants are mistaken, and do not receive any added protection from sovereign immunity.

     Beginning with Weydert and Coffey, for an individual to be protected by a state's sovereign immunity, the individual must be a state official sued in his official capacity.[6]  Defendants

─────────────

[6] "A suit against a state official in his or her official capacity is not a suit against the officer but rather is a suit

22

do not satisfy these threshold issues.  The complaint suggests
that Weydert and Coffey are sued in their individual, rather
than official, capacities.[7]  However, even if Coffey and Weydert
are sued in their official capacities, they are local, not
"state," officers for purposes of plaintiff's remaining claims.
Local government officials are only protected by states'
sovereign immunity when they perform state functions.  <u>McMillian
v. Monroe County</u>, 520 U.S. 781 (1997).  Whether a particular act
by a local official constitutes a state function is a question
of federal law (in that federal courts will not defer to labels
affixed by the state), but the question "will necessarily be
dependent on the definition of the official's functions under
relevant state law."  <u>Id.</u> at 786.

Weydert, as a prosecutor with a California District
Attorney's office, "act[s] as [a] state official[], and so
possess[es] Eleventh Amendment immunity, [only] when acting in
[a] prosecutorial capacity." <u>Del Campo v. Kennedy</u>, 517 F.3d
1070, 1073 (9th Cir. 2008) (internal quotations and citations
omitted).  Thus, the Ninth Circuit has used cases considering
prosecutorial immunity in determining prosecutors' eligibility
for sovereign immunity.  <u>Ceballos v. Garcetti</u>, 361 F.3d 1168,

---

against the official's office.  As such, it is no different from
a suit against the State itself." <u>Will v. Mich Dept't of State
Police</u>, 491 U.S. 58, 71 (1989).

    [7] In addition, the court notes that plaintiff does not assert
any claims directly against the state itself.  Nor does plaintiff
suggest that he seeks to impose liability on the state for any
defendants' conduct.

1  1183 n.11 (2004), rev'd on other grounds, 547 U.S. 410 (2006).

2  Following Ceballos, the court concludes that the question of

3  whether Weydert was engaged in prosecutorial functions is the

4  same for both types of immunity.  As to plaintiff's malicious

5  prosecution claim, if Weydert is being sued in his individual

6  capacity, he enjoys prosecutorial immunity, and if he is being

7  sued in his official capacity, he enjoys sovereign immunity.  As

8  to all other claims, Weydert has neither immunity.

9       Coffey does not address whether any of his acts consisted of

10 "state functions."  This omission is understandable, given

11 plaintiff's extremely limited discussion of what defendant

12 Coffey is alleged to have done.  Nonetheless, Coffey's assertion

13 that he is entitled to sovereign immunity is denied.  If Coffey

14 was being sued in his official capacity, he would bear the

15 burden of demonstrating that he functioned as a state official,

16 and he has not met that burden.  In any event, as discussed

17 above, Coffey is apparently being sued in his individual

18 capacity, and plaintiff does not seek to impose liability on the

19 state for Coffey's conduct.  Accordingly, Coffey is not entitled

20 to sovereign immunity as to any of plaintiff's claims.

21      Finally, the SJC DA's office also asserts sovereign

22 immunity.  The parties have hardly discussed the potential basis

23 for the SJC DA's liability, much less whether the SJC DA's

24 should be treated as state or local government.  Based on this

25 slight discussion, the court concludes that the SJC DA's office

26 is not entitled to sovereign immunity on any of plaintiff's

claims.  Ordinarily, county government offices are distinct from the state and not entitled to sovereign immunity.  Nothing here suggests that the claim against the office is ultimately one against the state.  Even if the court applied the "state function" test in a suit against an office (i.e., an institution, rather than an individual officer or position), the complained-of acts are not state functions.  Plaintiff seeks Monell liability because of, inter alia, knowing failure to discipline and failure to supervise.  (Compl. ¶ 16.)  Defendant has not argued that a failure to discipline is a state function (prosecutorial or otherwise), or that a conclusion that Weydert is immune from civil suits based on certain conduct must absolve the office of liability for failure to discipline for the same conduct.  Therefore, the court will deny defendants' present motion to dismiss the claims against the SJC DA's office on the basis of sovereign immunity.

**F.   Plaintiff Has Sufficiently Alleged that Private Defendants Acted Under Color of State Law**

A section 1983 claim consists of "two essential elements: (1) that the Defendants acted under color of state law; and (2) that the Defendants caused plaintiff to be deprived of a right secured by the Constitution and laws of the United States." Johnson v. Knowles, 113 F.3d 1114, 1117 (9th Cir. 1997).

The effect of the first element is that section 1983 is generally not applicable to non-state actors, as private defendants argue here.  However, the Ninth Circuit has

1   recognized four exceptions to this general rule, in cases of

2   "(1) public function; (2) joint action; (3) governmental

3   compulsion or coercion; and (4) governmental nexus." Sutton v.

4   Providence St. Joseph Med. Ctr., 192 F.3d 826, 835-836 (9th Cir.

5   1999); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 152

6   (1970) ("Private persons, jointly engaged with state officials

7   in the prohibited action, are acting 'under color' of law for

8   purposes of the statute."). Only the "joint action" exception

9   is relevant here.

10      Under the joint action test, "courts examine whether state

11  officials and private parties have acted in concert in effecting

12  a particular deprivation of constitutional rights." Franklin v.

13  Fox, 312 F.3d 423, 445 (9th Cir. 2002) (quoting Gallagher v.

14  Neil Young Freedom Concert, 49 F.3d 1442, 1453 (10th Cir.

15  1995)). A plaintiff may allege joint action by alleging the

16  existence of a conspiracy or by showing that the private party

17  was "a willful participant in joint action with the State or its

18  agents." Franklin, 312 F.3d at 445 (quoting Collins v.

19  Womancare, 878 F.2d 1145, 1154 (9th Cir. 1989)). To be liable,

20  a party must share in the common objective and engage in a

21  substantial degree of cooperation, although they need not know

22  the exact details of the plan. Id. For example, a private

23  landlord engaged in joint action with police officers in the

24  course of sustained efforts to evict a tenant when there was

25  "more than a single incident of police consent to 'stand by' in

26  case of trouble," because the private defendant "repeatedly

1 requested aid by the police . . . and the police intervened at

2 every step." <u>Howerton v. Gabica</u>, 708 F.2d 380, 384-85 (9th Cir.

3 1983); <u>see also</u> <u>Collins</u>, 878 F.2d at 1155.

4     The private defendants contend that plaintiff's allegations

5 that they furnished information to prosecutors do not constitute

6 "joint action" for purposes of section 1983.  Defendants rely on

7 <u>Rivera v. Green</u>, 775 F.2d 1381, 1384-85 (9th Cir. 1985), which

8 held that defendants who called police to file a noise complaint

9 against their neighbor had not engaged in joint action.  <u>See</u>

10 <u>also</u> <u>Radcliffe v. Rainbow Const. Co.</u>, 254 F.3d 772 (9th Cir.

11 2001).  In so doing, defendants mischaracterize plaintiff's

12 allegations.  Plaintiff alleges that private defendants offered

13 the SJC DA logistical support and training, that Reynolds

14 participated in the plaintiff's interviews that were part of the

15 investigation, and that Reynolds's expertise was relied upon in

16 preparing at least one warrant.  Plaintiff's allegations go far

17 beyond those in either <u>Rivera</u> or <u>Radcliffe</u>.

18     The question of whether the private defendants acted jointly

19 with the county is, under the instant circumstances, a question

20 of fact to be resolved at trial.  Plaintiff's allegations of

21 cooperation resemble the ties between public and private parties

22 considered in <u>United Steel Workers of America v. Phelps Dodge</u>

23 <u>Corp.</u>, 865 F.2d 1539 (9th Cir. 1989) (en banc).  <u>Phelps Dodge</u>

24 considered a motion by defendant, a private corporation, for

25 summary judgment on the issue of whether defendant could be

26 liable under section 1983 for arrests of plaintiffs in

27

1  connection with a labor strike.  Id. at 1540.  The court held

2  that plaintiff had provided evidence on four issues tending to

3  show that Phelps Dodge, a private corporation, engaged in joint

4  action with the local sheriff, and the court therefore denied

5  the motion.  Id. at 1544-45, see also Radcliffe, 254 F.3d at 784

6  (providing essentially the following summary of these issues).

7  The issues were: (1) many of the arresting law enforcement

8  officials were also employed by Phelps Dodge; (2) Phelps Dodge

9  managers had met with the sheriff to discuss the upcoming

10  arrests, go over a list of people to be arrested, and request

11  high bail to keep strikers off the streets, (3) warrants for the

12  arrest were issued without probable cause and by an official who

13  was a Phelps Dodge employee, and bail was set at the requested

14  amount without further inquiry; and (4) Phelps Dodge

15  representatives regularly met and cooperated with law

16  enforcement personnel.

17     Plaintiff has only alleged some of the factors identified in

18  Phelphs Dodge.  Specifically, plaintiff has not alleged that

19  private defendants employed or otherwise paid the county

20  defendants, elements of the first and third factors above.

21  However, plaintiff has alleged that private defendants helped

22  plan the arrest, met regularly with the SJC DA, and, as

23  discussed above, provided legal advice.  Private defendants

24  alleged cooperation extended far beyond a "single incident,"

25  Gabica, 708 F.2d at 385, or the cooperation alleged in Rivera

26  and Radcliffe.  Instead, plaintiff has alleged a series of acts,

28

supported by circumstantial evidence from the alleged underlying
conspiracy, showing that private and county defendants shared
the common objective of prosecuting plaintiff for his allegedly
legal practice of MUAs.  While plaintiff's allegations are not
perfectly clear, they sufficiently allege that defendants acted
under color of state law within the meaning of 42 U.S.C. § 1983.
Private defendants are not entitled to dismissal on this ground.

**G.  Defendants' Arguments Particular to The Claim of Malicious Prosecution under 42 U.S.C. § 1983.**

Defendants raise many arguments directed specifically
against plaintiff's first claim.[7]  In this claim, plaintiff
alleges that defendants maliciously prosecuted him in violation
of his rights under the First, Fourth, and Fourteenth
Amendments.  (Compl. ¶¶ 75, 76.)  Plaintiff explicitly states
that this claim is brought under 42 U.S.C. § 1983, and not under
state law.  In the Ninth Circuit, a malicious prosecution claim
may be brought under 42 U.S.C. § 1983 when the purpose of the
prosecution was to deny the plaintiff a specific constitutional
right.  See Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th
Cir. 2004).

In addition to the defenses applicable to multiple claims
discussed above, defendants argue that plaintiff has not alleged
the elements of a section 1983 malicious prosecution claim, that

---

[7] Because the court has already concluded that Weydert enjoys
prosecutorial immunity as to this claim, the following discussion
only concerns the remaining defendants.

1  some defendants did not participate in the prosecution, that

2  plaintiff did not allege the elements necessary to bring a

3  malicious prosecution claim against a party other than a

4  prosecutor, that various state defenses bar this claim, and that

5  claims against some defendants may be time barred.  The court

6  considers these arguments in turn.

7  **1.      Plaintiff Has Sufficiently Alleged the Basic**

8  **Elements of a Section 1983 Malicious Prosecution**

9  **Claim**

10       To succeed on a malicious prosecution claim under section

11  1983, the plaintiff must show both the elements of a state law

12  malicious prosecution claim and that the prosecution was brought

13  for the purpose of denying a specific constitutional right.

14  Womack v. County of Amador, 551 F. Supp. 2d 1017, 1031 (E.D.

15  Cal. 2008) (citing Usher v. City of Los Angeles, 828 F.2d 556,

16  562 (9th Cir. 1987)), Ayala v. KC Environmental Health, 426 F.

17  Supp. 2d 1070 (E.D. Cal. 2006) (same).[8]

18  _____

19       [8] Although the Eastern District has consistently followed this
     rule, the Ninth Circuit's cases are more ambiguous.  In Usher the
20   Ninth Circuit explained section 1983 malicious prosecution claims
     as follows:

21            [T]he general rule is that a claim of
              malicious prosecution is not cognizable under
22            42 U.S.C. § 1983 if process is available
              within the state judicial system to provide a
23            remedy.  However, an exception exists to the
              general rule when a malicious prosecution is
24            conducted with the intent to deprive a person
              of equal protection of the laws or is
25            otherwise intended to subject a person to a
              denial of constitutional rights.  In
26            California, the elements of malicious
              prosecution are (1) the initiation of criminal

Under California law, "the malicious prosecution plaintiff must plead and prove that the prior proceeding commenced by or at the direction of the malicious prosecution defendant, was: (1) pursued to a legal termination favorable to the plaintiff; (2) brought without probable cause; and (3) initiated with malice." Womack, 551 F. Supp. 2d at 1031 (citing Sagonowsky v. More, 64 Cal. App. 4th 122, 128, 75 Cal. Rptr. 2d 118 (1998) and Villa v. Cole, 4 Cal. App. 4th 1327, 1335, 6 Cal. Rptr. 2d 644 (1992)).

Defendants argue that plaintiff has not alleged that the prosecution was brought without probable cause, that it was brought with malice, and that it was "commenced by or at the direction of" the private defendants or defendant Coffey.

---

prosecution, (2) malicious motivation, and (3) lack of probable cause.

Usher, 828 F.2d at 562 (internal citations and quotations omitted). Usher therefore strongly implied, but did not explicitly state, that the elements of such a claim are determined by California law. However, several other Ninth Circuit cases have obscured the issue by simply stating, without reference to state law, that the elements of a section 1983 malicious prosecution claim are malice, lack of probable cause, and a purpose of depriving plaintiff of a constitutional right. Awabdy, 368 F.3d at 1066, Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995). Additionally, cases discussing the presumption that prosecutors exercise independent judgment refer to federal cases rather than state law. Beck v. City of Upland, 527 F.3d 853, 862 (9th Cir. 2008), Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126-1127 (9th Cir. 2002). Nonetheless, because these cases effectively agree on the actual elements required, and because they do not explicitly disagree with Usher's apparent reliance on state law, this court adopts the approach taken in Womack and Ayala, and assumes that Awabdy and Freeman relied on state law sub silentio. See also Castellano v. Fragozo, 352 F.3d 939, 949 (5th Cir. 2003) (en banc) (surveying all circuits' cases on section 1983 malicious prosecution claims, and concluding that a majority of circuits incorporate state law).

1       First, although defendants have not challenged plaintiff on

2  this issue, the court notes that plaintiff has alleged that the

3  prosecution was brought for the purpose of depriving plaintiff

4  of his rights under the First Amendment, the Fourth Amendment,

5  and the Due Process Clause of the Fourteenth Amendment.

6       Next, contrary to private defendants' argument, plaintiff

7  has alleged that the prosecution was without probable cause, in

8  that all defendants knew that MUAs were within the legal scope

9  of California's chiropractic practice.  (Compl. ¶¶ 23, 28-32,

10 38-52.)  This allegation is sufficient to survive the motion to

11 dismiss.

12      Plaintiff further alleges that defendants' actions "were

13 wanton, wilful, malicious and done with a conscious disregard

14 for the constitutional rights of plaintiff."  (Compl. ¶ 72.)

15 Plaintiff supports this otherwise conclusory allegation with

16 statements that all defendants had actual knowledge that MUAs

17 were legal even when they claimed they were not.  (Compl. ¶¶ 83,

18 84.)  "The malice required in an action for malicious

19 prosecution is not limited to actual hostility or ill will

20 toward plaintiff but exists when the proceedings are instituted

21 primarily for an improper purpose. . . . proceedings are

22 initiated for an improper purpose [when] the person initiating

23 them does not believe that his claim may be held valid."

24 Albertson v. Raboff, 46 Cal. 2d 375, 383 (Cal. 1956).  Thus,

25 plaintiff has sufficiently alleged malice.

26

32

1       Finally, Coffey and the private defendants argue that, as
2  non-prosecutors, they cannot be liable for the malicious
3  prosecution.  In general, malicious prosecution actions are not
4  limited to suits against prosecutors, rather, such actions may
5  be brought, as here, against other parties who have wrongfully
6  caused the charges to be filed.  <u>Galbraith v. County of Santa</u>
7  <u>Clara</u>, 307 F.3d 1119, 1126-1127 (9th Cir. 2002).  The defendants
8  argue, however, that plaintiff has not alleged that their acts
9  caused prosecution.

10      This argument raises the two questions, of factual and
11 proximate causation.  On the first, plaintiff has sufficiently
12 alleged that defendants performed acts that were the cause in
13 fact (or but-for) cause of the prosecution.  He alleged that
14 Reynolds, on behalf of Travelers, participated in the interviews
15 leading up to the prosecution and provided legal opinions relied
16 upon by the prosecution.  (Compl. ¶ 7.)  Similarly, plaintiff
17 alleged that Coffey acted in conspiracy with other defendants in
18 "creat[ing] the criminal complaint."  (Compl. ¶ 63.)

19      As to proximate causation, "[a] prosecutor's independent
20 judgment may break the chain of causation between the
21 unconstitutional actions of other officials and the harm
22 suffered by a constitutional tort plaintiff."  <u>Beck v. City of</u>
23 <u>Upland</u>, 527 F.3d 853, 862 (9th Cir. 2008) (citing <u>Hartman v.</u>
24 <u>Moore</u>, 547 U.S. 250, 262-63 (2006)).  The Ninth Circuit has
25 established an evidentiary presumption that the prosecutor's
26 acts do break this chain, which plaintiffs must rebut to show

1    causation.  _Galbraith_, 307 F.3d at 1126, _see also_ _Beck_, 527 F.3d
2    at 862 (holding that the contours of the presumption differ
3    depending on whether a First or Fourth Amendment right is
4    violated).[9]  However, this presumption has no application in the
5    context of a motion to dismiss.

6    Prior to _Twombly_, the Ninth Circuit explicitly held that
7    plaintiffs were not required to plead facts that, if true, would
8    rebut this presumption.  _Galbraith_, 307 F.3d at 1126 (citing
9    _Swierkiewicz v. Sorema N.A._, 534 U.S. 506, 510 (2002)), _see also_
10   _Awabdy_, 368 F.3d at 1067 (in evaluating a motion to dismiss,
11   noting but not applying this presumption).  _Swierkiewicz_
12   similarly held that in the Title VII context, plaintiffs did not
13   need to plead facts that would rebut the applicable presumption
14   that acts were nondiscriminatory.  534 U.S. at 510, 515.  Both
15   _Galbraith_ and _Swierkiewicz_ explained their holdings as rejecting
16   a heightened pleading standard.

17   The new pleading standard from _Twombly_ does not change this
18   result, as the Court stated that its ruling was not counter to
19   _Swierkiewicz_.  127 S.Ct. at 1973.  Although a plaintiff must
20   allege facts that, taken as a whole, render his claim plausible,
21   the Court explicitly stated that a plaintiff does not need to
22   allege particularized or specific facts (subject to the

23

24

25        [9] In discussing these tests or presumptions, _Galbraith_ and
26   _Beck_ both refer exclusively to federal cases, rather than to state
     law.

1  exceptions in Fed. Rules Civ. Proc. 9(b)-(c)).  Id. at 1973

2  n.14.[10]

3      Therefore, in evaluating these motions to dismiss, this

4  court does not ask whether plaintiff has alleged facts

5  sufficient to satisfy the Galbraith and Beck tests for whether a

6  prosecutor exercised independent judgment.  Instead, the court

7  asks, at most, whether plaintiff's allegations amount to a

8  plausible claim that the prosecutor's judgment was overcome.

9  Plaintiff's allegations of conspiracy and participation by non-

10  prosecutor defendants are sufficient to render this claim

11  plausible.

12      Plaintiff's allegations are therefore sufficient to support

13  a malicious prosecution claim, including one brought against

14  defendants other than the prosecutor.

15      **2.    State Law Exhaustion and Immunity Do Not Apply to a**

16          **Section 1983 Malicious Prosecution Claim**

17

18

19      [10] To be more specific, Twombly could have blunted the effect
    of Swierkiewicz (that plaintiff is not required to plead facts that
20  would overcome the presumption that conduct was non-discriminatory)
    without challenging that case's reasoning (that such a presumption
21  does not impose a higher than normal pleading standard) by
    providing that the general or normal pleading standard was itself
22  high enough to require pleading these specific facts.  Twombly's
    discussion of Swierkiewicz implies that Twombly did not have this
23  effect; a plaintiff's complaint that "detailed the events leading
    to his termination, provided relevant dates, and included the ages
24  and nationalities of at least some of the relevant persons involved
    with his termination" was sufficient, even though these
25  allegations, if true, would not themselves be sufficient to
    overcome the presumption that termination was non-discriminatory.
26  Twombly, 127 S.Ct. at 1973 (quoting Swierkiewicz, 534 U.S. at 514).

1    County defendants assert that plaintiff failed to exhaust

2  his state law administrative remedies, and that plaintiff's non-

3  exhaustion should bar his malicious prosecution claim.

4  Similarly, county defendants argue that they enjoy immunity as

5  to this claim under Cal. Gov. Code § 821.6.  However, these

6  state defenses, much like California's anti-SLAPP provision, do

7  not apply to federal claims.  Plaintiff's opposition memoranda

8  clarified that plaintiff was not bringing any state law claims,

9  and defendants apparently concede that these defenses are

10  therefore inapplicable.

11    **3.   The Malicious Prosecution Claim Is Not Barred By The**

12    **Statute of Limitations**

13    Private defendants and defendant Coffey argue that the

14  statute of limitations bars the malicious prosecution claim

15  against them.  As discussed above, the limitations period for

16  all section 1983 claims is derived from the state's personal

17  injury statute--here, two years--and the period begins to run

18  when plaintiff is able to bring his claim.  Defendants argue

19  that plaintiff has not alleged that they engaged in any conduct

20  after the arrest, and that plaintiff's complaint was filed more

21  than two years after that point.  However, the limitations

22  period for a malicious prosecution claim runs from the date of

23  favorable termination in the plaintiff's favor, not from the

24  date of defendant's activity.  Therefore, the statute of

25  limitations does not bar the malicious prosecution claim against

26  any defendants.

**I.  Plaintiff's Fifth Claim Adequately Alleges a Violation of First Amendment Rights**

The County Defendants argue that plaintiff has failed to allege a violation of his first amendment rights, because plaintiff has not alleged that defendants retaliated against him for engaging in protected conduct.  Plaintiff alleges he was prosecuted for

•   Practicing his profession and recommending procedures.

•   Seeking payment for services rendered.

•   Refusing to speak against the practice of MUAs

(Compl. ¶ 84.)  County defendants do not dispute that the third element of this list, refusing to speak, is protected by the first amendment.  Instead, they argue that plaintiff has not alleged that he ever engaged in such a refusal.  However, plaintiff has alleged that he refused to speak against MUAs when he was interviewed by defendants, Compl. ¶ 7, and that this refusal prompted his arrest.  These allegations are sufficient to support plaintiff's claim.[11]

<strong>V. CONCLUSION</strong>

For the reasons above:

1.  Defendants' motions to dismiss are GRANTED as to

plaintiff's second (false imprisonment), third (false

---

[11] Because this allegation is sufficient, the court does not decide at this time whether the other conduct is protected by the First Amendment.

1         arrest), fourth (false arrest) and eighth (obstructing

2         justice) causes of action.

3   2.  With respect to plaintiff's first claim (for malicious

4         prosecution), defendants' motions to dismiss are GRANTED

5         insofar as they pertain to Defendant Weydert, and DENIED

6         insofar as they pertain to all other defendants.

7   3.  Defendants' motions to dismiss are DENIED as to

8         plaintiff's fifth, sixth, and seventh claims.

9   4.  The private defendants' motion to strike is DENIED.

10   5.  Plaintiff is granted 20 days to file an amended

11        complaint.  It appears to the court that the plaintiff

12        may truthfully amend to cure defects on some of his

13        claims.  However, plaintiff is cautioned not to re-plead

14        insufficient claims, or to falsely plead.

15 IT IS SO ORDERED.

16 DATED:  November 13, 2008.

17

18

19 LAWRENCE K. KARLTON

20 SENIOR JUDGE
   UNITED STATES DISTRICT COURT

21

22

23

24

25

26