UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH AMBROSE, D.C.,

         Plaintiff,

    v.

GARY COFFEY, et al.,

         Defendants.

_____/

NO. CIV. S-08-1664 LKK/GGH

O R D E R

    Plaintiffs bring suits arising out of an investigation of them, their arrests, and their criminal prosecution. Below, the court disposes of various motions to dismiss.

## I. BACKGROUND

### A.   Procedural Posture

    On July 18, 2008, plaintiff Joseph Ambrose ("Ambrose") filed a complaint against Gary Coffey ("Coffey"), James C. Weydert ("Weydert"), William Reynolds ("Reynolds"), Travelers Property and Casualty Company of America ("Travelers"), Zenith Insurance Company ("Zenith"), and the County of San Joaquin ("County"). On August 20, 2008, Travelers and Reynolds moved to

1

1  dismiss all causes of action pled against them, and on August

2  28, 2008, the County, Coffey, and Weydert also moved to dismiss

3  all claims against them. Ambrose voluntarily dismissed Zenith on

4  September 4, 2008. On November 13, 2008, the court granted

5  defendants' motions to dismiss Ambrose's complaint in part, and

6  granted Ambrose leave to amend his complaint. Ambrose filed an

7  amended complaint on September 18, 2009.

8       On May 28, 2009, plaintiffs Richard Sausedo ("Sausedo") and

9  Pedram Vaezi ("Vaezi") filed a complaint against Travelers,

10  Reynolds, County, Weydert, and Coffey, Sausedo v. Travelers

11  Prop. & Cas. Co., 2:09-cv-01477-LKK-GGH, arising out of the same

12  facts. Plaintiffs concurrently filed a notice of related cases

13  to Ambrose v. Coffey, 2:09-cv-01664-LKK-GGH. On June 16, 2009,

14  the court consolidated Ambrose and Sausedo.

15       On July 27, 2009, plaintiff Michael Yates ("Yates") filed a

16  virtually identical complaint as Sausedo against the same

17  defendants, Yates v. Travelers Prop. & Cas. Co., 2:09-cv-02062-

18  LKK-GGH. Yates filed a notice of related cases with his

19  complaint to Ambrose and Sausedo. On August 3, 2009, the court

20  ordered the cases related, and on September 2, 2009, the court

21  consolidated Yates with Ambrose and Sausedo. On October 5, 2009,

22  defendants County, Coffey, and Weydert ("moving defendants")

23  moved to dismiss Yates's and Sausedo and Vaezi's complaints.

24  Plaintiffs filed an opposition to the motion on November 6,

25  2009.

26       On September 21, 2009, plaintiff Wilmer D. Origel

2

1  ("Origel") filed a complaint virtually identical to those of

2  Sausedo and Yates, Origel v. Travlers Prop. & Cas. Co, 2:09-

3  02640-LKK-GGH. On October 2, 2009, Origel filed a notice of

4  related cases with Ambrose, Sausedo, and Yates. On October 30,

5  2009, the court ordered Origel related to Ambrose, Sausedo, and

6  Yates. The court has not consolidated Origel with the other

7  three cases. On October 15, 2009, the moving defendants filed a

8  motion to dismiss Origel's complaint. Origel filed an opposition

9  on November 6, 2009. Both the motion and the opposition filed in

10  Origel are virtually identical to those filed in Sausedo and

11  Yates. For these reasons this order will address all the motions

12  together.

13      **B.   Factual Allegations**

14          **1.   Plaintiffs' Chiropractic Practice**

15      Sausedo, Vaezi, Yates, and Origel ("plaintiffs") were all

16  licensed as chiropractors under California law, and practiced in

17  California prior to their arrests in 2005. Sausedo Complaint

18  ("SC") ¶ 2; Yates Complaint ("YC") ¶ 2; Origel Complaint ("OC")

19  ¶ 2. Plaintiffs performed a chiropractic procedure called

20  Manipulation Under Anesthesia ("MUA"). SC ¶ 7; YC ¶ 7; OC ¶ 7.

21  This procedure is one in which "a medical doctor anesthetizes a

22  patient and a chiropractor performs a manipulation of the

23  patient during the time the patient is anesthetized." SC ¶ 7; YC

24  ¶ 7; OC ¶ 7.

25      Plaintiffs allege that MUAs are a legal procedure in

26  California. SC ¶ 7; YC ¶ 7; OC ¶ 7. In support of this

3

conclusion, plaintiffs cite a policy from the Board of
Chiropractic Examiners of the State of California dated
September 13, 1990. SC ¶ 7; YC ¶ 7; OC ¶ 7. This policy,
plaintiffs assert, provides "that a proper chiropractic
adjustment, if within the scope of practice of § 302, is not
made illegal simply because the patient is under anesthesia." SC
¶ 7; YC ¶ 7; OC ¶ 7.

### 2.    Travelers Initiates Criminal Investigations

Plaintiffs allege that non-moving Defendant Travelers owed
them and the business entities of which they were members,
payment "for lawful chiropractic services provided by each
through the workers' compensation system." SC ¶ 3; YC ¶ 3; OC ¶
3. Plaintiffs allege that as a result, non-moving defendant
Reynolds, an employee of Travelers, "prepared and submitted a
'Request for Criminal Prosecution' to the San Joaquin County
District Attorneys Office" for the prosecution of plaintiffs and
other California chiropractors utilizing the MUA technique. SC
¶¶ 4, 9; YC ¶¶ 4, 9; OC ¶¶ 4, 9. The basis of Reynolds' request
was that the practice of MUAs by chiropractors was illegal in
California. SC ¶ 9; YC ¶ 9; OC ¶ 9. Plaintiffs allege that
Reynolds submitted this report in order to benefit Travelers. SC
¶ 9; YC ¶ 9; OC ¶ 9. Specifically, they allege that Travelers
sought to avoid paying chiropractors, including plaintiffs, for
MUAs they performed. SC ¶ 9; YC ¶ 9; OC ¶ 9. Plaintiffs also
allege that Travelers and other workers' compensation insurance
carriers "had unsuccessfully challenged MUA payments ow[ed] to

1   licensed chiropractors before the Workers' Compensation Appeals

2   Board, and in other forums." SC ¶ 9; YC ¶ 9; OC ¶ 9.

3        Additionally, plaintiffs allege that Weydert and Coffey,

4   "with the knowledge and approval of the County" District

5   Attorney's Office, "and in furtherance of policies and

6   procedures of that office, made public statements to the

7   electronic media, print press, and in other public forums,

8   falsely stating that [plaintiffs] had committed criminal acts,

9   fraudulent acts, and [were] engaged in unlawful and sham

10  activities in violation of [their] chiropractic license[s]." SC

11  ¶ 14; YC ¶ 14; OC ¶ 14. Furthermore, plaintiffs allege that

12  Coffey and nonmoving defendant Reynolds acted with malice

13  towards plaintiffs by making statements while aware that

14  plaintiffs had not violate the law for the sole purpose of

15  "providing financial benefit to Travelers and other insurance

16  companies by providing a pretext to deny payments to

17  chiropractors, including plaintiff[s], for the performance of

18  past lawful MUAs, and the intimidation of all chiropractors

19  within the State of California from performing lawful MUAs, or

20  seeking payment of sums owed to them by Travelers and other

21  insurance companies for the lawful performance of MUAs because

22  of fear of criminal prosecution." SC ¶ 14; YC ¶ 4; OC ¶ 14.

23  Plaintiffs do not allege that Weydert acted with malice. SC ¶

24  10; YC ¶ 10; OC ¶ 10.

25

26

1

### 3.   District Attorney Files and Dismisses Criminal Charges Against Plaintiffs

2

3        With the assistance of Reynolds and Travelers, moving

4   defendants Deputy District Attorney Weydert and Coffey, an

5   investigator for the District Attorney, filed criminal

6   complaints against plaintiffs. SC ¶¶ 6, 10; YC ¶¶ 6, 10; OC ¶¶

7   6, 10. Moreover, it is alleged that, Reynolds "interviewed

8   witnesses, prepared court documents, provided and prepared

9   evidence for court hearings, drafted legal and factual

10  arguments, and in other ways substantially assisted in the . . .

11  prosecution of plaintiffs." SC ¶ 10; YC ¶ 10; OC ¶ 10.

12  "Travelers provided financial assistance to the County and to

13  Reynolds and Coffey to pay for the expenses of the

14  prosecutions." SC ¶ 10; YC ¶ 10; OC ¶ 10. Plaintiffs allege that

15  defendants were aware of the California Board of Chiropractic

16  Examiners policy and the Workers' Compensation board approval of

17  MUAs, and that no charges had ever been brought against

18  chiropractors in California for performing MUAs. SC ¶¶ 7, 11,

19  12; YC ¶¶ 7, 11, 12; OC ¶¶ 7, 11, 12.

20       On January 5, 2005, Weydert and the District Attorney of

21  San Joaquin County filed a criminal complaint in the Superior

22  Court of California, County of San Joaquin against Origel. OC ¶

23  6. Origel was charged with numerous felonies, including the

24  uncertified practice of medicine, unlawful client or patient

25  referral, conspiracy to commit a crime, grand theft of personal

26  property, forgery, worker's compensation false statements,

1 making false or fraudulent claims, money laundering, and

2 unlawful rebates. Id. On July 29, 2008, Weydert and the district

3 attorney filed an amended information charging Origel with the

4 following felonies, making false and fraudulent claims, worker's

5 compensation false statements, insurance fraud, money

6 laundering, uncertified practice of medicine, and several theft

7 charges. Id. Origel alleges that on November 20, 2008, the court

8 dismissed all charges against Origel "in the interests of

9 justice."[1] Id.

10    On August 23, 2005, Weydert and the District Attorney filed

11 another criminal complaint against Vaezi and Sausedo. SC ¶ 6.

12 Vaezi and Sausedo were charged with the uncertified practice of

13 medicine and the filing of false worker's compensation

14 statements. SC ¶ 6. On March 11, 2008, all charges against

15 Sausedo were dismissed by the court upon motion of the district

16 attorney "in the interests of justice, and for insufficient

17 evidence." Id. On the same day, the court dismissed all charges

18 against Vaezi due to "insufficient evidence and in the interest

19 of justice." Id.

20    Also on August 23, 2005, Weydert and the district attorney

21 filed a complaint against Yates along with Ambrose. YC ¶ 6. In

22 addition to the charges brought against Vaezi and Sausedo, Yates

23

24    [1] At oral argument, defendants informed the court that Origel
was tried and that the trial resulted in a hung jury. If true,
25 Origel's allegations concerning the dismissal of criminal charges
against him merely mentioning a dismissal in the interest of
26 justice is misleading and may border on sanctionable conduct.

1  and Ambrose were charged with making false and fraudulent

2  claims, conspiracy to commit a crime, unlawful rebates, and

3  several felonies of theft and/or the taking of property. <u>Id.</u> All

4  charges against Yates were dismissed by the court "in the

5  interests of justice."[2] <u>Id.</u>

6       Plaintiffs allege that they were "subject to search,

7  seizure, and arrest, and [were] held in custody and under legal

8  disabilities. . . . As a result of the conduct . . .

9  plaintiff[s] . . . [were] deprived of [their] . . . rights to

10 lawfully practice [their] profession as licensed chiropractors .

11 . . [and of their] rights to speak freely and practice [their]

12 profession." SC ¶ 13; YC ¶ 13; OC ¶ 13.

13 **II. STANDARD FOR A FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS**

14      A Federal Rule of Civil Procedure 12(b)(6) motion

15 challenges a complaint's compliance with the pleading

16 requirements provided by the Federal Rules. In general, these

17 requirements are established by Federal Rule of Civil Procedure

18 8.

19      Under Federal Rule of Civil Procedure 8(a)(2), a pleading

20 must contain a "short and plain statement of the claim showing

21 that the pleader is entitled to relief." The complaint must give

22 _____

23      [2] Defendants have presented some evidence that criminal
     proceedings against Yates proceeded to a preliminary examination.
24   Yate's allegations concerning the dismissal of the criminal
     proceedings, however, do not at all reflect this posture. Rather,
25   they mirror the allegations for Saucedo and Vaezi. While perhaps
     not sanctionable conduct, the court notes that Yates must
26   accurately and clearly plead facts within his knowledge.

1  defendant "fair notice of what the claim is and the grounds upon

2  which it rests." <u>Bell Atlantic v. Twombly</u>, 550 U.S, 544, 555

3  (2007) (internal quotation and modification omitted).

4      To meet this requirement, the complaint must be supported

5  by factual allegations. <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S.

6  Ct. 1937, 1950 (2009). "While legal conclusions can provide the

7  framework of a complaint," neither legal conclusions nor

8  conclusory statements are themselves sufficient, and such

9  statements are not entitled to a presumption of truth. <u>Id.</u> at

10  1949-50. <u>Iqbal</u> and <u>Twombly</u> therefore proscribe a two step

11  process for evaluation of motions to dismiss. The court first

12  identifies the non-conclusory factual allegations, and the court

13  then determines whether these allegations, taken as true and

14  construed in the light most favorable to the plaintiff,

15  "plausibly give rise to an entitlement to relief." <u>Id.</u>; <u>Erickson</u>

16  <u>v. Pardus</u>, 551 U.S. 89 (2007).[3]

17      "Plausibility," as it is used in <u>Twombly</u> and <u>Iqbal</u>, does

18  not refer to the likelihood that a pleader will succeed in

19  proving the allegations. Instead, it refers to whether the

20  non-conclusory factual allegations, when assumed to be true,

21  "allow[ ] the court to draw the reasonable inference that the

22

23      [3] As discussed below, the court may consider certain limited
   evidence on a motion to dismiss. As an exception to the general
24  rule that non-conclusory factual allegations must be accepted as
   true on a motion to dismiss, the court need not accept allegations
25  as true when they are contradicted by this evidence. <u>See</u> <u>Mullis</u> v.
   <u>United States Bankr. Ct.</u>, 828 F.2d 1385, 1388 (9th Cir. 1987),
26  <u>Durning v. First Boston Corp.</u>, 815 F.2d 1265, 1267 (9th Cir. 1987).

1  defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129

2  S.Ct. at 1949. "The plausibility standard is not akin to a

3  'probability requirement,' but it asks for more than a sheer

4  possibility that a defendant has acted unlawfully." <u>Id.</u> (quoting

5  <u>Twombly</u>, 550 U.S. at 557). A complaint may fail to show a right

6  to relief either by lacking a cognizable legal theory or by

7  lacking sufficient facts alleged under a cognizable legal

8  theory. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699

9  (9th Cir. 1990).

10     The line between non-conclusory and conclusory allegations

11  is not always clear. Rule 8 "does not require 'detailed factual

12  allegations,' but it demands more than an unadorned,

13  the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 129 S.Ct.

14  at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555). While Twombly was

15  not the first case that directed the district courts to

16  disregard "conclusory" allegations, the court turns to <u>Iqbal</u> and

17  <u>Twombly</u> for indications of the Supreme Court's current

18  understanding of the term. In <u>Twombly</u>, the Court found the naked

19  allegation that "defendants 'ha[d] entered into a contract,

20  combination or conspiracy to prevent competitive entry . . . and

21  ha[d] agreed not to compete with one another,' " absent any

22  supporting allegation of underlying details, to be a conclusory

23  statement of the elements of an anti-trust claim. <u>Id.</u> at 1950

24  (quoting <u>Twombly</u>, 550 U.S. at 551). In contrast, the <u>Twombly</u>

25  plaintiffs' allegations of "parallel conduct" were not

26  conclusory, because plaintiffs had alleged specific acts argued

10

1  to constitute parallel conduct. <u>Twombly</u>, 550 U.S. at 550-51,
2  556.

3       <u>Twombly</u> also illustrated the second, "plausibility" step of
4  the analysis by providing an example of a complaint that failed
5  and a complaint that satisfied this step. The complaint at issue
6  in <u>Twombly</u> failed. While the <u>Twombly</u> plaintiffs' allegations
7  regarding parallel conduct were non-conclusory, they failed to
8  support a plausible claim. <u>Id.</u> at 566. Because parallel conduct
9  was said to be ordinarily expected to arise without a prohibited
10 agreement, an allegation of parallel conduct was insufficient to
11 support the inference that a prohibited agreement existed. <u>Id.</u>
12 Absent such an agreement, plaintiffs were not entitled to
13 relief.[4] <u>Id.</u>

14      In contrast, <u>Twombly</u> held that the model pleading for
15 negligence demonstrated the type of pleading that satisfies Rule
16 8. <u>Id.</u> at 565 n. 10. This form provides "On June 1, 1936, in a
17 public highway called Boylston Street in Boston, Massachusetts,
18 defendant negligently drove a motor vehicle against plaintiff
19 who was then crossing said highway." Form 9, Complaint for
20 Negligence, Forms App., Fed. Rules Civ. Proc., 28 U.S.C. App., p
21 829. These allegations adequately " 'state[ ] ... circumstances,
22 occurrences, and events in support of the claim presented.' "

23

24      [4] This judge must confess that it does not appear self-evident
   that parallel conduct is to be expected in all circumstances and
25 thus would seem to require evidence. Of course, the Supreme Court
   has spoken and thus this court's own uncertainty may be noted, but
26 cannot form the basis of a ruling.

1  <u>Twombly</u>, 550 U.S. at 556 n. 3 (quoting 5 C. Wright & A. Miller,

2  Federal Practice and Procedure § 1216, at 94, 95 (3d ed. 2004)).

3  The factual allegations that defendant drove at a certain time

4  and hit plaintiff render plausible the conclusion that defendant

5  drove negligently.

6  **IV. ANALYSIS**

7  **A.   Plaintiffs' Conceded Claims**

8  Defendants County, Coffey, and Weydert have moved to

9  dismiss all claims against them. In their oppositions,

10  plaintiffs concede that their conspiracy claim under 42 U.S.C. §

11  1985 should be dismissed. Sausedo Opposition ("SO") at 11;

12  Origel Opposition ("OO") at 8. Plaintiffs also concede that they

13  have not sufficiently pled a claim against the County for

14  liability under 42 U.S.C. § 1983. SO at 11; OO at 8. For these

15  reasons, the court grants County, Coffey, and Weydert's motion

16  to dismiss the conspiracy claims under § 1985, and grants the

17   County's motions to dismiss all claims against it under § 1983.

18  Both claims are dismissed without prejudice.[5]

19  ////

20  ////

21  ////

22  ////

23  ////

24  

25  [5] Plaintiffs request an opportunity to discover the District
Attorney's policy and procedure.  Discovery in this district is

26  before the Magistrate Judges and the court makes no ruling on that
matter.

B.     **Whether Weydert and Coffey are Entitled to Qualified Immunity.**[6]

1.     **Grounds for Qualified Immunity**

Defendants argue that they are entitled to qualified immunity because it is not clearly established that MUAs are legal. Weydert and Coffey are "entitled to qualified immunity where clearly established law does not show" their actions violated the Constitution. Pearson v. Callahan, 555 U.S. ___, 129 S. Ct. 808, 822 (2009). "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." Id. at 823. Consequently, Weydert and Coffey are immune from "civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 815 (internal quotation omitted).

---

[6] As a prosecutor, Weydert is entitled to absolute prosecutorial immunity. Buckley v. Fitzsimmons, 509 U.S. 259, 268-69 (1993). "In determining whether particular actions of government officials fit within a common-law tradition of absolute immunity, or only the more general standard of qualified immunity, we have applied a functional approach, . . . which looks to the nature of the function performed, not the identity of the actor who performed it. Id. at 269 (internal quotations omitted). Here, plaintiffs have alleged facts that Weydert violated their constitutional rights through actions that both constitute prosecutorial and non-prosecutorial functions. See November 13, 2008 Order, Doc. No. 29, for a discussion of the actions that constitute prosecutorial functions. However, because the court holds that Weydert is entitled to qualified immunity for all claims alleged against him, the court need not distinguish between those actions for which Weydert is entitled to absolute immunity and those for which he is entitled to qualified immunity.

1    In this case, the issue of qualified immunity does not
2  concern whether it is clearly established that Weydert and
3  Coffey could arrest and prosecute plaintiffs without probable
4  cause or prevent them from lawfully practicing their
5  professions. Rather, the issue defendants argue is not clearly
6  established is the basis for all claims alleged by plaintiffs,
7  namely whether the MUAs were legal, or in other words, whether
8  defendants could have reasonably believed that they were
9  prosecuting plaintiffs for a violation of state law. As an
10  initial matter, the court must decide whether it is clearly
11  established that the performance of MUAs by licensed
12  chiropractors in California is legal.

13    As discussed above, plaintiffs allege in their complaints
14  that MUAs are legal procedures because of a policy of the Board
15  of Chiropractic Examiners of the State of California indicating
16  that chiropractic adjustments are not made illegal because they
17  are performed under anaesthesia and because no chiropractors had
18  ever been prosecuted for performing MUAs in California. In their
19  oppositions, plaintiffs argue, in essence, that the actions of
20  chiropractors in performing MUAs never exceeded the statutory
21  limits on the practice of chiropractors because a doctor
22  administers and monitors the anaesthesia, chiropractors only
23  perform legal manipulations during the procedure. Plaintiffs
24  continue to argue that there is no authority that explicitly
25  states that MUAs are illegal. Finally, plaintiffs distinguish
26  the cases cited by defendants on the grounds that they do not

1   "involve[] a chiropractor performing manipulation in conjunction

2   with other professionals." Plaintiffs have made a reasonable

3   argument that MUAs are legal under California law. However, to

4   escape qualified immunity, plaintiffs must show that no

5   reasonable deputy district attorney or investigator could

6   reasonably believe that MUAs were illegal.

7        Defendants primarily refer to the interpretation of the

8   Chiropractic Initiative Act of 1922 ("Act") by California

9   courts. The primary case relied upon by defendants is <u>Tain v.</u>

10  <u>State Board of Chiropractic Examiners</u>, 130 Cal. App. 4th 609

11  (Cal. Ct. App. 2005). This decision, however, was issued on July

12  22, 2005, which was several months after a criminal complaint

13  was filed against Origel, yet a month prior to the filing of

14  charges against the other plaintiffs. Consequently, to the

15  extent that new interpretations of the Act were utilized in

16  <u>Tain</u>, they cannot be considered when deciding whether it was

17  clearly established that MUAs were lawful with respect to

18  Origel's claims alone. Nonetheless, to the extent that <u>Tain</u>

19  relies upon <u>Crees v. California State Board of Medical</u>

20  <u>Examiners</u>, 213 Cal. App. 2d 195 (Cal. Ct. App. 1963), and <u>People</u>

21  <u>v. Fowler</u>, 32 Cal. App. 2d. Supp. 737 (Cal. Ct. App. 1938),

22  defendants' analysis is relevant to consideration of whether the

23  law was clearly established when the complaint was filed against

24  Origel.

25       Section 7 of the Act states that a chiropractic license

26  "shall authorize the holder thereof to practice chiropractic in

15

1   the State of California as taught in chiropractic schools or

2   colleges; . . . but shall not authorize the practice of

3   medicine, . . . nor the use of any drug or medicine." Cal. Bus.

4   & Prof. Code § 1000-7. The Board of Medical Examiners has

5   promulgated a regulation opining on the effect of section 7 of

6   the Act.[7] This regulation states that, "A chiropractic license

7   issued in the State of California does not authorize the holder

8   thereof . . . to use any drug or medicine." Cal. Code Regs.,

9   tit. 16, § 302(4).

10      California courts have interpreted the Act to limit

11  chiropractors "'to the practice of chiropractic and the use of

12  mechanical, hygienic and sanitary measures incident to the care

13  of the body, which do not invade the field of medicine and

14  surgery, irrespective of whether or not additional phases of the

15  healing art, including medicine and surgery or the use of drugs,

16  may have been taught in chiropractic schools or colleges' and .

17  . . irrespective of whether any such additional phases have

18  actually been used by some chiropractors illegally as part of

19  professional treatment." <u>Crees</u>, 213 Cal. App. 2d at 205 (quoting

20  <u>Fowler</u>, 23 Cal. App. 2d Supp at 748).

21      California courts have held "that the permissible limits of

22  practice by the holder of a chiropractic license did not extend

23  beyond the scope of 'chiropractic' as that term was understood

24  _____

25      [7] It is not clear to the court what authority the Board of
    Medical Examiners has to define chiropractic practice, as is made
26  of the administrative infighting, it appears besides the point.

16

1   and defined in 1922, when voters adopted the Chiropractic Act."

2   Tain, 130 Cal. App. 4th at 621 (citing Crees, 213 Cal. App. 2d

3   at 204).[8] Specifically, when ascertaining the meaning of the

4   term chiropractic in 1922, "the Fowler court . . . referr[ed] to

5   several commonly used dictionaries available at the time the

6   Chiropractic Act was enacted [in 1922], including the 'Standard

7   Dictionary, 1913 edition,' which defined 'chiropractic' as 'A

8   drugless method of treating disease chiefly by manipulation of

9   the spinal column.'" Tain, 130 Cal. App. 4th at 620 (quoting

10  People v. Fowler, 32 Cal. App. 2d Supp. 737, 745 (1938)).

11  Plaintiffs have not argued or presented any evidence that MUAs

12  were performed by chiropractors in 1922. Of course, the

13  defendants have not tendered such evidence either.  Nonetheless,

14  the burden is on the plaintiff and their failure appears

15  dispositive, given the California courts construction of the

16  statute. See Enq v. Cooley, 552 F.3d 1062, 1075 (9th Cir. 2009)

17  ("Plaintiff must . . . demonstrate that the constitutional

18  rights at issue were clearly established at the time of

19  [defendant's] conduct.")

20      The plaintiffs' argument rests on their assertion that

21  they perform only traditional chiropractic practice, and it is

22  the M.D. who administers anaesthesia .  Even assuming that such

23  an argument is persuasive, the issue is whether a reasonable

24  _____

25      [8] Such an interpretation appears to forbid the practice of any
    technique developed by virtue of new scientific developments in the
26  field and appears not to be consistent with the plain language of
    the initiative.

1  D.A. (or investigator) would know that such conduct was lawful.

2  Under the circumstances, the court concludes that a reasonable

3  prosecutor or investigator could have relied on the language in

4  Fowley that the practice of chiropracty is drugless to conclude

5  that any use of drugs, regardless of who administers them,

6  violates the Chiropractic Act.

7       Moreover, a few months after defendants filed criminal

8  charges against plaintiffs, the Office of Administrative Law of

9  the State of California expressed concern that the terms of the

10 Chiropractic Act may prohibit the practice of MUAs by

11 chiropractors, yet declined to decide the matter due to an

12 insufficient record.[9] Specifically, the office reasoned that

13 there is "a question of whether this regulation [to allow MUAs]

14 is consistent with the provisions of section 7 of the

15 [Chiropractic] Act providing that a license to practice

16 chiropratic 'shall not authorize . . . the use of any drug or

17

18       [9] In their motions, defendants seek judicial notice of and
cite to a decision of the Office of Administrative Law for the
19 State of California, which disapproved of a California Board of
Chiropractic Examiner's proposed regulatory amendment permitting
20 licensed chiropractors to perform MUAs because the regulation did
not comply with the "consistency, authority, necessity, and clarity
21 standards of the Administrative Procedure Act." This decision is
judicially noticeable because it is "capable of accurate and ready
22 determination by resort to sources whose accuracy cannot reasonably
be questioned," Fed. R. Evid. 201(b). However, it is not relevant
23 to determine whether the law concerning MUAs was legal at the time
defendants   initiated   criminal   charges   against   plaintiffs.
24 Specifically, the decision was issued on October 11, 2005, and
criminal complaints were filed against plaintiffs in January and
25 August of 2005. Nonetheless, the reasoning in this decision does
bear upon whether a reasonable person at around the same time could
26 have reached a conclusion that MUAs were illegal.

1   medicine." State of California Office of Administrative Law,

2   Decision of Disapproval of Regulatory Action, OAL File No. 05-

3   0826-03 S (October 11, 2005). The office continued to state that

4   while the proposed regulation "does not authorize a chiropractor

5   to *administer* anesthesia," it may nonetheless violate the terms

6   of the Act. Id. (emphasis in original). Specifically, the office

7   argued that the term "use" is broader than the term

8   "administer," and the Act prohibits the *use* of any drug or

9   medicine in the practice of chiropractic." Id. (emphasis in

10  original). "If the use of anaesthesia is integral to the

11  performance of MUA, and if anaesthesia is a 'drug,' it is highly

12  questionable whether the regulation is consistent with the Act's

13  prohibition on 'the use of any drug or medicine.'" Id. Thus, at

14  approximately the same time that defendants filed charges

15  against plaintiffs, a state agency expressed concern that the

16  practice of MUAs by chiropractors may violate the Chiropractic

17  Act's prohibition on the use of drugs. This reasoning provides

18  further support that the law was not clearly established as to

19  whether MUAs were lawful at the time defendants filed criminal

20  charges against plaintiffs, and consequently, that defendants

21  may have reasonably believed that MUAs were unlawful.[10]

22      Based on California case law, plaintiffs can, and do, make

23  a reasonable argument that MUAs are not prohibited because a

24

25      [10] While, of course, the court need not, nor does it take
26  sides in the interagency scuffle, the court notes the Office's
    opinion to demonstrate the unsettled nature of the controversy.

doctor administers the anaesthesia. However, a reasonable attorney or investigator could view the same statute and case law and conclude that the practice of MUAs was illegal in that a chiropractor performs a procedure with the use of drugs. Because the law was not clearly established, defendants are entitled to qualified immunity to the extent that plaintiffs' claims rely on MUAs being lawful.

### 2. Application to Plaintiffs' Claims Under § 1983

#### a. Plaintiffs' First Amendment Claims

Plaintiffs allege that defendants violated the First Amendment by depriving them of their "right(s) to speak freely and practice their profession." SC ¶ 13; YC ¶ 13; OC ¶ 13. Plaintiffs allege no facts to support a claim that their right to speak freely was limited. As such, plaintiffs have not stated a claim for relief under that theory.[11]

#### b. Plaintiffs' Fourth Amendment Claims

Similarly, plaintiffs' Fourth Amendment claims for unlawful search, seizure, and arrest depend upon their being "no factual or legal basis for their prosecution" and investigation. SC ¶ 12; YC ¶ 12; OC ¶ 12. Because it is not clearly established that MUAs are legal, it is not clearly established that plaintiffs were searched, seized, and arrested without probable cause (i.e. without a legal or factual basis). For these reasons, Weydert

---

[11] To the extent that any alleged violation arises by virtue of plaintiffs' claims that MUAs are lawful, the uncertain state of the law would also preclude this cause of action.

1  and Coffey are entitled to qualified immunity on plaintiffs'
2  Fourth Amendment claims.

3           **c.   Plaintiffs' Due Process Claims**

4       In their opposition, plaintiffs identify their claims as
5  substantive due process, however plaintiffs' complaints and
6  arguments in the opposition suggest that they actually have pled
7  a procedural due process claim. Specifically, plaintiffs allege
8  that they were "deprived . . . of their . . . rights to lawfully
9  practice their profession . . . without due process of law. SC ¶
10 13; YC ¶ 13; OC ¶ 13. Nonetheless, regardless of which sort of
11 due process claim plaintiffs have alleged, their claim relies
12 upon their practice being lawful. As described above, it is not
13 clearly established that plaintiffs' performance of MUAs was
14 lawful, and, as such, Weydert and Coffey are entitled to
15 qualified immunity for this claim as well.

16          **d.   Plaintiffs' Malicious Prosecution Claims**

17      As described in this court's previous order concerning the
18 motion to dismiss Ambrose's complaint, Doc. No. 29, to succeed
19 on a malicious prosecution claim, plaintiffs must show that the
20 proceeding was (1) pursued to a legal termination favorable to
21 the plaintiff; (2) brought without probable cause; (3) initiated
22 with malice; and (4) brought for the purpose of denying a
23 specific constitutional right. See Womack v. County of Amador,
24 551 F. Supp. 2d 1017, 1031 (E.D. Cal. 2008). Because it is not
25 clearly established whether MUAs are lawful, it is also not
26 clearly established that Weydert and Coffey brought criminal

1  proceedings against plaintiffs without probable cause.

2  Defendants could have reasonably believed that plaintiffs

3  conduct was unlawful, and because plaintiffs admit that they

4  were performing MUAs, the proceedings were brought with probable

5  cause. Thus, Weydert and Coffey are entitled to qualified

6  immunity as to plaintiffs' malicious prosecution claims.

7  **IV. CONCLUSION**

8      For the foregoing reasons, defendants County of San

9  Joaquin, Gary Coffey, and James C. Weydert's motions to dismiss

10  plaintiffs Richard Sausedo and Pedram Vaezi's, Michael Yates's

11  and Wilmer D. Origel's complaints are GRANTED. Complaints are

12  dismissed without prejudice as to these defendants, and with

13  leave to amend.[12] Plaintiffs are given twenty (20) days from the

14  date this order is issued to file any amended complaints.

15      IT IS SO ORDERED.

16      DATED:  December 23, 2009.

17

18

19  LAWRENCE K. KARLTON
    SENIOR JUDGE
20  UNITED STATES DISTRICT COURT

21

22

23

24  _____

25      [12] The court grants leave to amend for theories of liability
    that do not depend on MUAs being legal and theories for which
26  Weydert and Coffey would not be entitled to qualified immunity.

22