UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH AMBROSE, D.C.,

        Plaintiff,

    v.

GARY COFFEY, et al.,

        Defendants.

_____/

NO. CIV. S-08-1664 LKK/GGH

O R D E R

    Plaintiffs bring suits arising out of an investigation of them, their arrests, and their criminal prosecutions. Numerous motions are at issue here. They include two motions for reconsideration, two motions to dismiss, and one motion for judgment on the pleadings.

## I. BACKGROUND

### A.   Procedural History

    On July 18, 2008, plaintiff Joseph Ambrose ("Ambrose") filed a complaint against Gary Coffey ("Coffey"), James C. Weydert ("Weydert"), William Reynolds ("Reynolds"), Travelers Property and Casualty Company of America ("Travelers"), Zenith

1

Insurance Company ("Zenith"), and the County of San Joaquin ("County"). On August 20, 2008, Travelers and Reynolds moved to dismiss all causes of action pled against them, and on August 28, 2008, the County, Coffey, and Weydert also moved to dismiss all claims against them. Ambrose voluntarily dismissed Zenith on September 4, 2008. On November 13, 2008, the court granted defendants' motions to dismiss Ambrose's complaint in part, and granted Ambrose leave to amend his complaint. Ambrose filed an amended complaint on September 18, 2009.

On May 28, 2009, plaintiffs Richard Sausedo ("Sausedo") and Pedram Vaezi ("Vaezi") filed a complaint against Travelers, Reynolds, County, Weydert, and Coffey, Sausedo v. Travelers Prop. & Cas. Co., 2:09-cv-01477-LKK-GGH, arising out of their arrests under similar facts. Plaintiffs concurrently filed a notice of related cases to Ambrose v. Coffey, 2:08-cv-01664-LKK-GGH. On June 16, 2009, the court consolidated Ambrose and Sausedo.

On July 27, 2009, plaintiff Michael Yates ("Yates") filed a virtually identical complaint as Sausedo against the same defendants, Yates v. Travelers Prop. & Cas. Co., 2:09-cv-02062-LKK-GGH. Yates filed a notice of related cases with his complaint to Ambrose and Sausedo. On August 3, 2009, the court ordered the cases related, and on September 2, 2009, the court consolidated Yates with Ambrose and Sausedo.

On September 21, 2009, plaintiff Wilmer D. Origel ("Origel") filed a complaint virtually identical to those of

1  Sausedo and Yates, Origel v. Travlers Prop. & Cas. Co, 2:09-
2  02640-LKK-GGH. On October 2, 2009, Origel filed a notice of
3  related cases with Ambrose, Sausedo, and Yates. On October 30,
4  2009, the court ordered Origel related to Ambrose, Sausedo, and
5  Yates. On January 27, 2009, the court consolidated Origel with
6  Ambrose, Sausedo, and Yates.

7      On December 24, 2009, this court granted Weydert, and
8  Coffey's motion to dismiss on grounds of qualified immunity;
9  plaintiffs did not oppose dismissal of their claims against the
10  County. On January 12, 2010, plaintiffs Sausedo and Vaezi,
11  Yates, and Origel filed amended complaints. On January 26, 2010,
12  County, Weydert, and Coffey moved to dismiss these complaints.
13  Travelers and Reynolds also moved to dismiss these complaints at
14  that time. On January 27, 2010, these plaintiffs filed two
15  separate, but identical, motions for reconsideration of this
16  court's order. On February 5, 2010, Travelers and Reynolds filed
17  a motion for judgment on the pleadings as to plaintiff Ambrose's
18  complaint. All motions were timely opposed.

19      **B.   Factual Allegations**[1]

20          **1.   Plaintiffs' Chiropractic Practice**

21      Plaintiffs Ambrose, Yates, Sausedo, Vaezi, and Origel are
22  all Doctors of Chiropractic licensed by the State of California
23  Board of Chiropractic Examiners ("BCE"). Ambrose First Amended
24  Complaint, Doc. 45, ("AFAC") ¶ 2; Yates First Amended Complaint,

25  _____

26      [1] The allegations described herein are taken from complaints,
    and are taken as true for the purpose of the pending motion only.

1   Doc. 66, ("YFAC") ¶ 3; Origel First Amended Complaint, Doc. 67,

2   ("OFAC") ¶ 3; Sausedo and Vaezi First Amended Complaint, Doc.

3   65, ("SFAC") ¶ 3. The BCE is a state agency charged with

4   regulating the chiropractic profession. YFAC ¶ 8; OFAC ¶ 8; SFAC

5   ¶ 8. In their capacity as chiropractors, plaintiffs all provided

6   services to patients who received medical benefits through

7   workers' compensation insurance. AFAC ¶ 2; YFAC ¶ 3; OFAC ¶ 3;

8   SFAC ¶ 3. As part of their practice, plaintiffs performed a

9   chiropractic procedure called Manipulation Under Anesthesia

10  ("MUA"). AFAC ¶¶ 8; YFAC ¶¶ 9, 17; OFAC ¶¶ 9, 14; SFAC ¶¶ 9, 17.

11  Plaintiff Ambrose explains in his FAC that during an MUA, a

12  chiropractor performs manipulation of a patient who has been

13  anesthetized by a medical doctor. AFAC ¶ 8. But for the addition

14  of anesthesia and the setting of a hospital, plaintiffs allege

15  MUAs employ the same techniques as routine chiropractic

16  practice. YFAC ¶ 12; OFAC ¶ 12; SFAC ¶ 12.

17      On September 13, 1990, the BCE adopted a policy statement,

18  to wit: "a proper chiropractic adjustment, if within the scope

19  of practice § 302, is not made illegal simply because the

20  patient is under anaesthesia." AFAC ¶ 8; YFAC ¶ 9; OFAC ¶ 9;

21  SFAC ¶ 9. Plaintiff Ambrose alleges that MUAs have been

22  recognized as a lawful practice fo chiropracty ever since. AFAC

23  ¶ 8. The other plaintiffs argue that in response to subsequent

24  concerns that MUAs exceeded chiropracty's legitimate scope, the

25  BCE signed a "Final Statement of Reasons" recognizing MUAs on

26  October 21, 2004. YFAC ¶ 13; OFAC ¶ 13; SFAC ¶ 13. The BCE

                                    4

1    reasoned that because chiropractors did not administer the

2    anesthesia themselves, MUAs fell within the scope the BCE's

3    regulations. YFAC ¶ 13; OFAC ¶ 13; SFAC ¶ 13. The BCE reaffirmed

4    its position that MUAs are within the scope of chiropractic

5    practice on January 20, 2005. YFAC ¶ 14; OFAC ¶ 14; SFAC ¶ 14.

6    Plaintiffs Yates, Origel, Sausedo, and Vaezi contend that

7    Suzanne Honor, the worker's compensation manager of the Division

8    of Worker's Compensation ("DWC") for the State of California,

9    regularly spoke at DWC educational conferences on how to

10    properly bill MUAs. YFAC ¶ 15; OFAC ¶ 15; SFAC ¶ 15.

11    Moreover, the State Compensation Insurance Fund ("SCIF")

12    regularly pre-approved MUAs, and the Worker's Compensation

13    Appeals Board ("WCAB") on several occasions ordered payment for

14    MUAS from defendant Travelers. AFAC ¶ 8; YFAC ¶¶ 16, 18; OFAC ¶¶

15    16, 18; SFAC ¶¶ 16, 18. In reliance upon the statements of state

16    agencies, the plaintiffs all believed that MUAS were within the

17    scope of their chiropractic practice and, consequently,

18    performed them. AFAC ¶ 8; YFAC ¶ 17; OFAC ¶ 17; SFAC ¶ 17.

19    Plaintiffs Sausedo and Vaezi routinely perfomed MUAS at Med-1

20    Medical Center. SFAC ¶ 17. Plaintiff Yates performed MUAS as an

21    employee of Sierra Hills Surgery Center. YFAC ¶ 17. Plaintiff

22    Origel was a part owner of both facilities. OFAC ¶ 27.

23    **2.   Travelers Initiates Criminal Investigations**

24    Defendants Travelers, a licensed insurance provider within

25    California, provides workers' compensation benefits. AFAC ¶ 3;

26    YFAC ¶ 4; OFAC ¶ 4; SFAC ¶ 4. Plaintiffs allege that Travelers

owed them all substantial debts for chiropractic services to be paid for through workers' compensation insurance. Id. Plaintiffs Yates, Origel, Sausedo and Vaezi allege that Travelers had unsuccessfully challenged MUA payments owed to chiropractors associated with Sierra Hills and Med-1. YFAC ¶ 24; OFAC ¶ 25; SFAC ¶ 24. They further allege that on December 24, 2003, the WCAB mandated that Travelers pay liens against them for MUAS performed at Sierra Hills. YFAC ¶ 25; OFAC ¶ 26; SFAC ¶ 25.

Plaintiffs allege that the number and frequency of MUAs they performed to be paid through worker's compensation, led Travelers to pursue criminal actions against them in order to prevent future claims and to avoid paying outstanding claims. AFAC ¶ 8; YFAC ¶ 20; OFAC ¶ 20; SFAC ¶ 20. Plaintiffs contend that defendant Reynolds, an employee of Travelers acting under the authorization of his employer, submitted Requests for Prosecution to District Attorney offices in Alameda, Contra Costa, Stanislaus, and San Joaquin counties in 2002. AFAC ¶ 10; YFAC ¶¶ 5, 22, 23; OFAC ¶¶ 23, 24; SFAC ¶¶ 23, 23. San Joaquin County prosecutors responded to Reynolds request, and plaintiffs allege that Reynolds took an active role in the subsequent investigation of Med-1 Medical Center and Sierra Hills with agents of the San Joaquin County District Attorney's Office, including defendant Coffey. AFAC ¶ 11; YFAC ¶ 23; OFAC ¶ 24; SFAC ¶ 23. According to plaintiffs, all defendants were aware that MUAs were within the scope of practice of licensed chiropractors. AFAC ¶ 8; YFAC ¶ 8; OFAC ¶ 8; SFAC ¶ 8.

During the investigation plaintiff Ambrose purports to have entered into a "No Prosecution Agreement" with defendant Weydert on September 18, 2003. AFAC ¶ 6. According to Ambrose, Weydert agreed not to prosecute Ambrose for insurance fraud in exchange for a statement under oath regarding billing procedures at Med-1 Medical Center, Unique Health Care Management, and plaintiff Origel's practice. Id. The agreement specified that it was subject to termination upon a finding of material dishonesty and a motion to withdraw granted by a judicial officer. Id.

### 3.   District Attorney Files and Dismisses Criminal Charges Against Plaintiffs

Defendants Weydert filed a criminal complaint against Origel, part-owner of Med-1 and Sierra Hills, on January 5, 2005, alleging a variety of criminal offenses related to the practice of administering and billing MUAs. OFAC ¶¶ 27, 29. Origel was arrested on January 19, 2005. OFAC ¶ 27. Following the arrest, Travelers moved for a stay of all collection efforts by Med-1 and Sierra Hills for the payment of MUAs performed by plaintiffs and other chiropractors. YFAC ¶ 26; OFAC ¶ 27; SFAC ¶ 26. On May 1, 2006, a preliminary hearing was conducted in the matter of Origel's trial. OFAC ¶ 27. Plaintiff Origel was held to answer on June 15, 2006. Id. The case against plaintiff Origel proceeded to jury trial, and resulted in a mistrial. Id.

On August 23, 2005, defendant Weydert filed criminal complaints against plaintiffs Ambrose, Yates, Sausedo, and Vaezi alleging a host of felony offenses premised on the illegality of

MUAS. AFAC ¶ 7; YFAC ¶ 28; SFAC ¶ 28. Plaintiff Ambrose contends that the complaint was filed against him in violation of the "No Prosecution Agreement." AFAC ¶ 7.

The criminal charges against plaintiff Ambrose were dismissed after a hearing on Ambrose's motion to dismiss on August 15, 2006,. AFAC ¶ 7. Ambrose did not indicate the grounds upon which the trial court dismissed the criminal charges. The criminal complaints against plaintiffs Sausedo and Vaezi were dismissed on March 11, 2008, on the ground of insufficient evidence and in the interest of justice. SFAC ¶ 28. On July 29 2008, defendants Weydert filed a first amended information against plaintiff Origel. OFAC ¶ 29. All charges against Origel were later dismissed on November 20, 2008 in the interests of justice. Id. All criminal charges against Yates were dismissed in the interest of justice on Dec. 11, 2008. YFAC ¶ 29.

For about a year, starting in July 2006, Weydert also made several public statements concerning his prosecution of the chiropractors who perform MUAs, and lobbied against the BCE's adoption of a policy permitting the practice of MUAs by chiropractors. YFAC ¶¶ 37-39; OFAC ¶¶ 37-39; SFAC ¶¶ 37-39.

## II. STANDARDS

### A.   Standard for a Motion for Reconsideration

The court may grant reconsideration of a final judgment under Federal Rules of Civil Procedure 59(e) and 60(b). Generally, a motion for reconsideration of a final judgment is appropriately brought under Federal Rule of Civil Procedure

1   59(e). See <u>Backlund v. Barnhart</u>, 778 F.2d 1386, 1388 (9th Cir.

2   1985) (discussing reconsideration of summary judgment). The

3   motion must be filed no later than ten days after entry of the

4   judgment. See Fed. R. Civ. P. 59(e). Under Rule 59(e), three

5   grounds may justify reconsideration: (1) an intervening change

6   in controlling law; (2) the availability of new evidence; or (3)

7   the need to correct clear error or prevent manifest injustice.

8   <u>See</u> <u>Kern-Tulare Water Dist. v. City of Bakersfield</u>, 634 F. Supp.

9   656, 665 (E.D. Cal. 1986), <u>rev'd</u> in part on other grounds, 828

10  F.2d 514 (9th Cir. 1987).

11      Under Rule 60(b), the court may grant reconsideration of a

12  final judgment and any order based on, among other things: (1)

13  mistake, inadvertence, surprise, or excusable neglect; (2) newly

14  discovered evidence which, with reasonable diligence, could not

15  have been discovered within ten days of entry of judgment; and

16  (3) fraud, misrepresentation, or misconduct of an opposing

17  party. A motion for reconsideration on any of these ground must

18  be brought within a reasonable time and no later than one year

19  of entry of judgment or the order being challenged. See Fed. R.

20  Civ. P. 60(c)(1). A Rule 60(b) motion may also be brought for

21  "any other reason that justifies relief." Fed. R. Civ. P.

22  60(b)(6).

23      Pursuant to Eastern District of California Local Rule

24  230(j), when a party asks for reconsideration of a order

25  granting or denying a motion, the party is to set forth the

26  material facts and circumstances surrounding each motion for

1  which reconsideration is sought, including:

2         (1)  when and to what Judge or Magistrate Judge the prior
3              motion was made,

4         (2)  what ruling, decision or order was made thereon,

5         (3)  what new or different facts or circumstances are
6              claimed to exist which did not exist or were not shown
7              upon such prior motion, or what other grounds exist
8              for the motion, and

9         (4)  why the facts or circumstances were not shown at the
10             time of the prior motion.

11  L.R. 230(j).

12         **B.   Standard for a Motion to Dismiss**

13         A Fed. R. Civ. P. 12(b)(6) motion challenges a complaint's
14  compliance with the pleading requirements provided by the
15  Federal Rules. In general, these requirements are established by
16  Fed. R. Civ. P. 8, although claims that "sound[] in" fraud or
17  mistake must meet the requirements provided by Fed. R. Civ. P.
18  9(b). Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1103-04 (9th Cir.
19  2003).

20         Under Federal Rule of Civil Procedure 8(a)(2), a pleading
21  must contain a "short and plain statement of the claim showing
22  that the pleader is entitled to relief." The complaint must give
23  defendant "fair notice of what the claim is and the grounds upon
24  which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544,
25  555 (2007) (internal quotation and modification omitted).

26         To meet this requirement, the complaint must be supported

10

1  by factual allegations. <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950

2  (2009). "While legal conclusions can provide the framework of a

3  complaint," neither legal conclusions nor conclusory statements

4  are themselves sufficient, and such statements are not entitled

5  to a presumption of truth. <u>Id.</u> at 1949-50. <u>Iqbal</u> and <u>Twombly</u>

6  therefore prescribe a two step process for evaluation of motions

7  to dismiss. The court first identifies the non-conclusory

8  factual allegations, and the court then determines whether these

9  allegations, taken as true and construed in the light most

10 favorable to the plaintiff, "plausibly give rise to an

11 entitlement to relief." <u>Id.</u>; <u>Erickson v. Pardus</u>, 551 U.S. 89

12 (2007).[2]

13      "Plausibility," as it is used in <u>Twombly</u> and <u>Iqbal</u>, does

14 not refer to the likelihood that a pleader will succeed in

15 proving the allegations. Instead, it refers to whether the non-

16 conclusory factual allegations, when assumed to be true,

17 "allow[] the court to draw the reasonable inference that the

18 defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129

19 S.Ct. at 1949. "The plausibility standard is not akin to a

20 'probability requirement,' but it asks for more than a sheer

21 possibility that a defendant has acted unlawfully." <u>Id.</u> (quoting

22

23      [2] As discussed below, the court may consider certain limited
   evidence on a motion to dismiss. As an exception to the general
24 rule that non-conclusory factual allegations must be accepted as
   true on a motion to dismiss, the court need not accept allegations
25 as true when they are contradicted by this evidence. See <u>Mullis v.</u>
   <u>United States Bankr. Ct.</u>, 828 F.2d 1385, 1388 (9th Cir. 1987),
26 <u>Durning v. First Boston Corp.</u>, 815 F.2d 1265, 1267 (9th Cir. 1987).

1  Twombly, 550 U.S. at 557). A complaint may fail to show a right

2  to relief either by lacking a cognizable legal theory or by

3  lacking sufficient facts alleged under a cognizable legal

4  theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699

5  (9th Cir. 1990).

6       The line between non-conclusory and conclusory allegations

7  is not always clear. Rule 8 "does not require 'detailed factual

8  allegations,' but it demands more than an unadorned, the-

9  defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at

10 1949 (quoting Twombly, 550 U.S. at 555). While Twombly was not

11 the first case that directed the district courts to disregard

12 "conclusory" allegations, the court turns to Iqbal and Twombly

13 for indications of the Supreme Court's current understanding of

14 the term. In Twombly, the Court found the naked allegation that

15 "defendants 'ha[d] entered into a contract, combination or

16 conspiracy to prevent competitive entry . . . and ha[d] agreed

17 not to compete with one another,'" absent any supporting

18 allegation of underlying details, to be a conclusory statement

19 of the elements of an anti-trust claim. Id. at 1950 (quoting

20 Twombly, 550 U.S. at 551). In contrast, the Twombly plaintiffs'

21 allegations of "parallel conduct" were not conclusory, because

22 plaintiffs had alleged specific acts argued to constitute

23 parallel conduct. Twombly, 550 U.S. at 550-51, 556.

24      Twombly also illustrated the second, "plausibility" step of

25 the analysis by providing an example of a complaint that failed

26 and a complaint that satisfied this step. The complaint at issue

1  in Twombly failed. While the Twombly plaintiffs' allegations

2  regarding parallel conduct were non-conclusory, they failed to

3  support a plausible claim. Id. at 566. Because parallel conduct

4  was said to be ordinarily expected to arise without a prohibited

5  agreement, an allegation of parallel conduct was insufficient to

6  support the inference that a prohibited agreement existed. Id.

7  Absent such an agreement, plaintiffs were not entitled to

8  relief. Id.[3]

9       In contrast, Twombly held that the model pleading for

10 negligence demonstrated the type of pleading that satisfies Rule

11 8. Id. at 565 n.10. This form provides "On June 1, 1936, in a

12 public highway called Boylston Street in Boston, Massachusetts,

13 defendant negligently drove a motor vehicle against plaintiff

14 who was then crossing said highway." Form 9, Complaint for

15 Negligence, Forms App., Fed. Rules Civ. Proc., 28 U.S.C. App., p

16 829. These allegations adequately "'state[] . . . circumstances,

17 occurrences, and events in support of the claim presented.'"

18 Twombly, 550 U.S. at 556 n.3 (quoting 5 C. Wright & A. Miller,

19 Federal Practice and Procedure § 1216, at 94, 95 (3d ed. 2004)).

20 The factual allegations that defendant drove at a certain time

21 and hit plaintiff render plausible the conclusion that defendant

22 drove negligently.

23

_____

24      [3] This judge must confess that it does not appear self-evident
   that parallel conduct is to be expected in all circumstances and
25 thus would seem to require evidence. Of course, the Supreme Court
   has spoken and thus this court's own doubt needs only be noted, but
26 cannot form the basis of a ruling.

C.    **Standard for Judgment on the Pleadings**

A motion for judgment on the pleadings may be brought "[a]fter the pleadings are closed but within such time as to not delay the trial." Fed. R. Civ. P. 12(c). All allegations of fact by the party opposing a motion for judgment on the pleadings are accepted as true. Doleman v. Meiji Mut. Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir. 1984). A "dismissal on the pleadings for failure to state a claim is proper only if 'the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." ' Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1368, at 690 (1969)); see also McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir.1988).

When a Rule 12(c) motion is used to raise the defense of failure to state a claim, the motion is subject to the same test as a motion under Rule 12(b)(6). McGlinchy, 845 F.2d at 810; Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1989). Thus, the motion will be granted only if the movant establishes that "no relief could be granted under any set of facts that could be proven consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); see also Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Newman v. Universal Pictures, 813 F.2d 1519, 1521-22 (9th Cir. 1987). The court must accept all material allegations of the complaint as true and all doubts must be resolved in the light most favorable to the plaintiff. N.L.

14

1  Indus. Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

2                          **III. ANALYSIS**

3      **A. Motions for Reconsideration of December 24, 2009 Order**

4         Plaintiffs move for reconsideration of this court's

5  December 24, 2009 order granting defendants Coffey, Weydert, and

6  County's motion to dismiss premised on qualified immunity.[4]

7  Specifically, the court held that these defendants were entitled

8  to qualified immunity because it was not clearly established

9  that the performance of MUAs by licensed chiropractors in

10 California was legal. Because plaintiffs articulated all of

11 their claims to depend on MUAs being lawful, plaintiffs could

12 not show that a prosecutor or prosecution investigator could not

13 reasonably believe that his conduct complied with the law. See

14 Pearson v. Callahan, 555 U.S. ___, 129 S.Ct. 808, 822 (2009).[5]

15 ////

16 ////

17 ////

18 ////

19 ////

20 ────────────────────

21      [4] Plaintiffs did not oppose the dismissal of all claims as to
   County.
22
      [5] Plaintiffs Sausedo, Vaezi, and Yates again filed an
23 identical motion to Plaintiff Origel. The court notes that
   plaintiffs are encouraged to file one motion where they are making
24 identical arguments or for parties represented by different counsel
   to join in the others' motions, rather than file duplicate motions.
25 Nonetheless, for convenience, this court will cite to Sausedo,
   Vaezi, and Yates's motion. This order, however, applies to both
26 motions.

1        **1.   Whether a Reasonable Prosecutor or Prosecution
             Investigator Could Have Believed He was Not
2            Violating Clearly Established Law.**

3            **a.   Whether it Was Clearly Established That MUAs
                 Were Lawful at the Time of Plaintiffs'
4                Arrests and Prosecutions.**

5

6        Plaintiffs argue that the performance of MUAs was lawful at

7   the time they were arrested and prosecuted. In support of this

8   argument, plaintiffs submit new evidence that they claim was not

9   submitted in opposition to defendants' motion to dismiss because

10  it was "either unavailable at the time of the motion to dismiss,

11  or was outside the scope of the pleadings and not subject to

12  judicial notice or consideration in the motion."[6] Motion for

13  Reconsideration at 1. Plaintiffs argue that in light of this new

14  evidence, no reasonable prosecutor would have prosecuted

15  plaintiffs. This is a different legal argument than that raised

16  by plaintiffs in their oppositions to defendants' motions to

17  dismiss. Moreover, the court notes that the arguments raised by

18  plaintiffs as to the nature of their claims in their original

19  complaints entirely depended on MUAs being lawful (i.e.

20  defendants prosecuted plaintiffs for performing MUAs knowing

21  that the performance of MUAs was lawful), not on whether

22  prosecuting plaintiffs in light of the available evidence was

23  unreasonable.

24  _____

25       [6] Because the court denies plaintiffs' motion for
    reconsideration as it relates to these documents, it does not
26  decide whether this evidence should be considered in this motion.

1      Nonetheless, for clarity's sake, the court will briefly

2  discuss whether this evidence shows that it was clearly

3  established that MUAs were lawful, the necessary predicate to

4  plaintiffs' arguments concerning their original complaint.

5  Essentially, while plaintiffs' evidence shows that it was

6  reasonable, and perhaps even more reasonable, to believe that

7  MUAs were lawful, it does not demonstrate that it was

8  unreasonable for Weydert and Coffey to believe that the

9  performance of MUAs by chiropractors violated California law. At

10 the time of plaintiffs' arrests and during plaintiffs'

11 prosecutions, the evidence was at least unsettled. In fact, some

12 of plaintiffs' evidence demonstrates that the legality of MUAs

13 was not clearly established at these times. Specifically,

14 plaintiffs have submitted evidence that the issue of the

15 legality of MUAs was, at least, an open question to which there

16 was significant debate. Furthermore, the February 16, 2010

17 approval by the State of California Office of Administrative Law

18 of the regulation setting forth the standard of care for the

19 performance of MUAs, indicates that the law was unsettled on

20 whether such performance was lawful prior to the approval.

21 Accordingly, plaintiffs' motion for reconsideration is denied on

22 this ground.

23                **b.    Whether it Was Clearly Established That
                          Prosecuting Plaintiffs for Performing MUAs
24                        Was Constitutional.**

25      In their motion for reconsideration, plaintiffs raise a new

26 argument that does not suffer from the infirmities of the

arguments upon which they previously relied. Essentially, plaintiffs argue that in light of the substantial evidence indicating that licensed chiropractors in California could legally perform MUAs at the time of plaintiffs' prosecutions, no prosecutor or prosecution investigator could reasonably believe they were not violating clearly established law. Unlike the scenario described above, the clearly established law was not the lawfulness of MUAs, but rather whether plaintiffs had fair warning or fair notice that their conduct in performing MUAs was unlawful. Because defendants were aware of the numerous statements by the Board of Chiropractors that strongly suggested that chiropractors could lawfully perform MUAs as well as of the Workers' Compensation Board's approval of claims for the performance of MUAs, plaintiffs argue, Weydert and Coffey could not have reasonably believed that plaintiffs had fair notice that their conduct was unlawful. Plaintiffs did not raise this argument in opposing defendants' motions to dismiss, and provide no reason as to why this argument was not previously raised. Accordingly, the court does not consider this argument in disposing of plaintiffs' motions to reconsider. However, as discussed below, the court holds that this argument does not depend on MUAs being lawful, and thereby, Weydert and Coffey are not entitled to qualified immunity on this theory of liability.[7]

---

[7] Weydert, however, is entitled to absolute immunity as to all prosecutorial conduct. This immunity is discussed in the following section.

1             **c.   Whether Plaintiffs Have Stated a Claim that**
                **Weydert and Coffey Acted Without Probable**
2                  **Cause Even Though It Was Not Clearly**
                **Established that Performance of MUAs was**
3                  **Lawful.**

In its December 24, 2009 order the court held that because it was not clearly established that the performance of MUAs was lawful, defendants Weydert and Coffey were entitled to qualified immunity on plaintiffs' claims under the Fourth Amendment for unlawful search, seizure, and arrest and for malicious prosecution. In their oppositions to the motions to dismiss, plaintiffs predicated their theories on probable cause upon MUAs being lawful. As such, the court dismissed both the Fourth Amendment and malicious prosecution claims that require lack of probable cause. Nonetheless, as this case has been developing, the court has become aware of facts and theories of liability under which plaintiffs may state a claim based upon the lack of probable cause that does not depend on MUAs being lawful. Even though plaintiffs have not directly argued in their motion to reconsider that the court reconsider its application of qualified immunity to its conclusion concerning probable cause, plaintiffs' arguments in these series of motions to a certain degree suggest that the court reconsider this conclusion. Upon further reconsideration, the court holds that plaintiff had alleged facts which can support a claim premised on lack of probable cause. These allegations, however, only cause the court to revisit its dismissal of the malicious prosecution claims because plaintiffs' unlawful search, seizure, and arrest claims

1 | are barred by the statute of limitations.

2 |     The Ninth Circuit has held that "a plaintiff can rebut a

3 | *prima facie* finding of probable cause . . . by showing that the

4 | criminal prosecution was induced by fraud, corruption, perjury,

5 | fabricated evidence, or other wrongful conduct taken in bad

6 | faith." Awabdy v. City of Adelanto, 368 F.3d 1062, 1067 (9th

7 | Cir. 2004); see also Cunningham v. City of Wenatchee, 345 F.3d

8 | 802, 812 (9th Cir. 2003) ("A police officer's failure to

9 | preserve or collect potential exculpatory evidence does not

10 | violate the Due Process Clause unless the officer acted in bad

11 | faith."). Accordingly, even though Weydert and Coffey could have

12 | acted reasonably in believing they had probable cause to

13 | prosecute plaintiffs for the performance of MUAs, where

14 | plaintiffs have alleged that the criminal prosecutions were

15 | induced by corruption or other wrongful conduct taken in bad

16 | faith, they have alleged facts that could support a finding of

17 | lack of probable cause. Here, plaintiffs have alleged facts

18 | that, if proven, could demonstrate that Weydert and Coffey acted

19 | in bad faith. Specifically, these facts could show that Weydert

20 | and Coffey caused charges to be brought against plaintiffs for

21 | the sole purpose of preventing Travelers, an insurance company,

22 | from paying money it owed to plaintiffs. These facts are

23 | sufficient to state a claim that the prosecutions lacked

24 | probable cause because they were induced by conduct taken in bad

25 | faith.

26 |     In the prior order, this court dismissed plaintiffs' Fourth

1  Amendment claims under the theory that Weydert and Coffey could

2  have reasonably believed that they had probable cause to

3  prosecute plaintiffs. For the reasons discussed above, the court

4  holds that plaintiffs can state claims that depend on the lack

5  of probable cause even if it is not clearly established that the

6  performance of MUAs was lawful. Accordingly, the grounds for

7  dismissal of the Fourth Amendment claim are no longer valid.

8  This claim, however, should be dismissed on alternate grounds.

9  Specifically, in the motions to dismiss considered in the

10 December 24, 2009 order, defendants moved to dismiss the false

11 imprisonment claim on the grounds that they are barred by the

12 statute of limitations. The court agrees for the reasons this

13 claim was dismissed from Ambrose's original complaint on

14 November 13, 2008. In short, in California, the statute of

15 limitations for Section 1983 claims is two years. See Wilson v.

16 Garcia, 471 U.S. 261, 279-80 (1985) (The statute of limitations

17 for Section 1983 claims is borrowed from the forum state's state

18 of limitations for personal injury claims.), Cal. Civ. Proc.

19 Code § 335.1 (West 2008) (Statute of limitations for personal

20 injury claims in California is two years.). The statute of

21 limitations period begins "when the plaintiff knows or has

22 reason to know of the injury that is the basis for the action."

23 Elliot v. City of Union City, 25 F.3d 800, 802 (9th Cir. 1994).

24 In false arrest claims, however, the limitations period begins

25 to run only after the false imprisonment ends. Wallace v. Kato,

26 549 U.S. 384, 389 (2007) ("[F]alse imprisonment ends once the

1   victim becomes held *pursuant to [legal] process* -- when, for

2   example, he is bound over by a magistrate or arraigned on

3   charges.") (emphasis in original). Thus, the limitations periods

4   for Sausedo's, Vaezi's, and Yates' claims began to run on August

5   23, 2005, and for Origel's claim began to run on January 5,

6   2005. As such, the limitations periods for plaintiffs' claims

7   expired in 2007. Plaintiffs did not file their complaints until

8   2009, and have not alleged any facts in support of equitable

9   tolling. For these reasons, the court dismisses plaintiffs'

10  false arrest claims on alternate grounds.[8]

11       Plaintiffs also brought claims for unlawful search and

12  seizure. Plaintiffs have not alleged any facts in support of a

13  claim for an unlawful search and have not alleged any facts in

14  support of a unlawful seizure claim outside of the false arrest

15  claim which the court disposed above (e.g. plaintiffs do not

16  argue that their seizures were unlawful because the officers

17  used excessive force). Thus, plaintiff has not stated a claim

18  upon which they are entitled to relief under these Fourth

19  Amendment theories. For these reasons, the court's dismissal of

20  these claims also remains unchanged.

21       Nonetheless, the court reconsiders its dismissal of

22  plaintiffs' malicious prosecution claims as to Weydert and

23

---

24       [8] The court also notes that while plaintiffs opposed dismissal
    of these claims on this ground in opposition to the motions to
25  dismiss in the December 24, 2009 order, they now do not oppose
    dismissal of these claims in defendant Travelers and Reynolds'
26  motion to dismiss their amended complaints.

1   Coffey. These defendants, however, made two additional arguments

2   in support of their original motion to dismiss Sausedo and

3   Vaezi's, Yates', and Origel's complaint. First, they argue that

4   these plaintiffs did not allege malice. "The malice required in

5   an action for malicious prosecution is not limited to actual

6   hostility or ill will toward plaintiff but exists when the

7   proceedings are instituted primarily for an improper purpose. .

8   . . [P]roceedings are initiated for an improper purpose [when,

9   for example] the person initiated them does not believe that his

10  claim may be held valid." Albertson v. Raboff, 46 Cal. 2d 375,

11  383 (1956). Here, plaintiffs have clearly alleged facts to

12  support a finding of malice. Specifically, plaintiffs have

13  alleged facts that, if proved, would show that Weydert and

14  Coffey initiated prosecutions against plaintiffs not because

15  they believed they were violating the law, but rather in order

16  to advance the financial interest of an insurance company,

17  defendant Travelers. Accordingly, defendants' motion is denied

18  on this ground.

19      Second, defendants argue that plaintiff Yates and Origel

20  have not stated a claim for malicious prosecution because they

21  were held to answer. This argument depends on two theories, that

22  because they were held to answer, (1) there was no favorable

23  termination of their claims and (2) the claims were brought with

24  probable cause. As to argument based on probable cause, for the

25  reasons described above, plaintiffs have pled facts to support a

26  claim for lack of probable cause under a theory that the

1  criminal prosecutions were induced by corruption or other
2  wrongful conduct taken in bad faith. See Awabdy, 368 F.3d at
3  1067. Additionally, the argument based on favorable
4  determination does not warrant dismissal for the reasons
5  discussed in Section  C.3.a. of this order.

6       Defendant Weydert also argued that he is entitled to
7  absolute immunity for the conduct alleged in support of the
8  malicious prosecution claim. As described in greater detail in
9  Section B.1.d., Weydert is absolutely immune only for the
10 conduct of initiating a prosecution and presenting the State's
11 case. Miller v. Gammie, 335 F.3d 889, 896 (9th Cir. 2003)
12 (quoting Imbler v. Patchman, 424 U.S. 409, 431 (1976). Under
13 California law, "the malicious prosecution plaintiff must plead
14 and prove that the prior proceeding [was] commenced by or at the
15 direction of the malicious prosecution defendant." Womack v.
16 City of Amador, 551 F. Supp. 2d 1017, 1031 (E.D. Cal. 2008)
17 (citing Sagonowsky v. More, 64 Cal. App. 4th 122, 128 (1998) and
18 Villa v. Cole, 4 Cal. App. 4th 1327, 1335 (1992)). As such,
19 Weydert is absolutely immune for any conduct that could support
20 a malicious prosecution claim against him. Thus, the court does
21 dismiss this claim as to Weydert on alternative grounds.

22      In conclusion, the court reconsiders its reasoning
23 concerning probable cause in its December 24, 2009 order. As a
24 practical matter, however, this reasoning only cause the court
25 to reconsider its decision dismissing plaintiffs' malicious
26 prosecution claim against Coffey. Accordingly, the court denies

1  Coffey's motion to dismiss plaintiffs' malicious prosecution

2  claims.

3      **B.   Coffey, Weydert, and County's Motion to Dismiss**
       **Sausedo and Vaezi's, Yates's, and Origel's First**

4      **Amended Complaints.**

5      Defendants move to dismiss the amended complaints filed by

6  defendants Sausedo and Vaezi, Yates, and Origel after this

7  court's order dismissing their original complaints on the

8  grounds of qualified immunity. For the reasons described below,

9  the government defendants' motion is granted in part.

10          **1.   Plaintiffs' Section 1983 Claims**

11               **a.   Conceded Claims.**

12      Plaintiffs concede that they have not pled claims against

13  County nor have they pled common law malicious prosecution

14  claims against the County, Weydert, and Coffey. As such, these

15  claims are dismissed. Additionally, subsequent to defendants

16  filing their motion to dismiss, plaintiffs Sausedo and Vaezi,

17  Yates and Origel entered notices of dismissal against County.

18  County is hereby dismissed with prejudice.

19               **b.   Defendants Entitled to Qualified Immunity**
                    **Insofar as Plaintiffs' Claims Depend on MUAs**

20                  **Being Lawful.**

21      As discussed above, this court's December 24, 2009 order

22  held that it was not clearly established that MUAs were lawful

23  at the time of plaintiffs' prosecutions. This court has

24  subsequently reconsidered its decision that the government

25  defendants could have reasonably believed the charges were

26  brought with probable cause because the legality of MUAs was not

25

1  clearly established. Accordingly, plaintiffs' claims are

2  dismissed insofar as they rely on the performance of MUAs being

3  lawful. However, upon close review of plaintiffs' complaints,

4  the court cannot determine the legal theories upon which

5  plaintiffs' section 1983 claims rely. In opposing this motion,

6  plaintiffs do not provide the court with a clear explanation of

7  the legal theories they seek to bring. As such, the court orders

8  that plaintiffs shall amend their complaints such that (1) their

9  legal theories do not depend on MUAs being lawful as to Weydert

10 and Coffey;[9] (2) separately identify each theory of liability

11 under section 1983;[10] (3) identify the conduct of defendants that

12 caused the violation of plaintiffs' civil rights, so long as

13 defendants are not entitled to immunity for such conduct, as

14 described below; and (4) either file one operative complaint for

15 all four consolidated cases or file one operative complaint for

16 Ambrose, Yates, Sausedo, and Vaezi and one complaint for Origel.

17           **c.   Defendants are Not Entitled to Qualified
                  Immunity As to Plaintiffs' Due Process Claim**

18                **that Defendants Prosecuted Plaintiffs
                  Without Fair Notice that their Conduct Was**

19                **Unlawful.**

20     In plaintiffs' oppositions to defendants' motion to

21 dismiss, they raise a theory of liability under the due process

22 clause that does not depend on MUAs being lawful. This theory is

23    ————————————————

24      [9] This, of course, is different than alleging a theory relying
   upon defendants' knowledge of evidence suggesting that MUAs are

25 legal or defendants' belief that MUAs are legal.

26      [10]  For   example,   First   Cause   of   Action,   Violation   of
   Plaintiffs' Due Process Rights Under Section 1983; etc.

based upon the fair warning rule. The principle behind this rule
is that no one "shall be held criminally responsible for conduct
which he could not reasonably understand to be proscribed." U.S.
v. Lanier, 520 U.S. 259, 265 (1997) (quoting Bouie v. City of
Columbia, 378 U.S. 347, 351 (1964)). The Court has articulated
three manifestations of this general principle. First, the court
held that "the vagueness doctrine bars enforcement of a statute
which either forbids or requires the doing of an act in terms so
vague that men of common intelligence must necessarily guess at
its meaning and differ as to its application." Lanier, 520 U.S.
at 266 (internal quotation and citations omitted). Second, the
"rule of lenity, ensures fair warning by so resolving ambiguity
in a criminal statute as to apply it only to conduct clearly
covered." Id. (internal citations omitted). Third, the Court
concluded that, "although clarity at the requisite level may be
supplied by judicial gloss on an otherwise uncertain statute, .
. . due process bars courts from applying a novel construction
of a criminal statute to conduct that neither the statute nor
any prior judicial decision has fairly disclosed to be within
its scope . . . ." Id. (internal citations omitted).

       Here, application of the third manifestation of the fair
warning rule is most appropriate. Plaintiffs have alleged that
defendants prosecuted them knowing both that most information
available to plaintiffs strongly suggested that the performance
of MUAs by chiropractors in California was lawful and that no
chiropractor in California had been prosecuted for performing

1   MUAs. Furthermore, plaintiffs allege that these prosecutions

2   were motivated by an improper interest to aid the insurance

3   company defendants' efforts to resist making payments to

4   plaintiffs for the performance of the MUAs. Accordingly,

5   plaintiffs argue that defendants knowingly applied a novel

6   construction of several criminal statutes against them.

7       Plaintiffs continue to argue that bringing these charges

8   knowing that plaintiffs lack fair warning and for improper

9   purposes creates civil liability against those defendants. In

10  support of this argument, plaintiffs cite to cases which hold

11  that imposing a sanction against an individual who lacks notice

12  that his conduct was prohibited constitutes a due process

13  violation. See, e.g., Newell v. Sauser, 79 F.3d 115, 118 (9th

14  Cir. 1996) (Prison officer not entitled to qualified immunity

15  because a "reasonable officer would have known that [the]

16  general regulation [at issue] did not give [plaintiff] adequate

17  notice that his conduct was forbidden" where plaintiff was

18  sanctioned for violating regulation.). These cases are not

19  directly on point because here ultimately it may be argued that

20  no sanctions were imposed upon plaintiffs. Nonetheless, the

21  standard for qualified immunity does not require the existence

22  of cases concerning "fundamentally similar" or even "materially

23  similar" facts. Hope v. Pelzer, 536 U.S. 730, 741 (2002).

24  Rather, "the salient question . . . is whether the state of the

25  law [at the time of plaintiffs' prosecutions] gave [defendants]

26  fair warning that their [conduct] was unconstitutional." Id.

1    Here, the state of the law indicated both that the Due

2  Process Clause of the Constitution prohibits the enforcement of

3  a criminal statute against individuals who lack fair warning

4  that their conduct violates the statute and that imposing a

5  sanction against individuals without notice that their conduct

6  is sanctionable also violates the Due Process Clause. Given

7  these two lines of reasoning, defendants could not have

8  reasonably believed that prosecuting plaintiffs for performing

9  MUAs was lawful. Thus, plaintiffs have stated a claim for

10  violation of due process for which Weydert and Coffey are not

11  entitled to qualified immunity.[11]

12          **d.   Defendant Weydert is Entitled to Absolute**
               **Immunity As to Plaintiff's Due Process**
13          **Argument Only Insofar as His Conduct Was**
               **"Prosecutorial."**
14

15    As this court stated in its November 13, 2008 order,

16  prosecutors enjoy absolute immunity from suits under section

17  1983 "when performing the traditional functions of an advocate."

18  Kalina v. Fletcher, 522 U.S. 118, 131 (1997). Prosecutors are

19  absolutely immune "[o]nly when 'initiating a prosecution and in

20  presenting the State's case.'" Miller v. Gammie, 335 F.3d 889,

21  896 (9th Cir. 2003) (quoting Imbler v. Patchman, 424 U.S. 409,

22  431 (1976)). The Supreme Court has held that prosecutors are not

23

24         [11] Plaintiffs also argue that their arrest warrants lacked
       probable cause because defendants did not present exculpatory
25     evidence when seeking such warrants. The court does not decide
       whether such an argument has merit because, as discussed below,
26     plaintiffs' false arrest claims are barred by the statute of
       limitations.

immune when they personally attest to facts, <u>Kalina</u>, 522 U.S. at 130; act as an investigator, <u>id.</u>; advise law enforcement officers, <u>Burns v. Reed</u>, 500 U.S. 478, 492-96 (1991); or speak to the media, <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 277-78 (1993). As noted in the courts December 24, 2009 order, prosecutors are entitled to qualified immunity when serving these non-prosecutorial functions. <u>Id.</u> at 269.

Plaintiffs have alleged that Weydert engaged in acts that constitute non-prosecutorial functions. As the court explained in its 2008 order, "[t]he question, however, is not whether Weydert has engaged in any non-prosecutorial acts, but whether the specific acts forming the basis of plaintiff's particular claims were or were not prosecutorial."[12] Again, however, the court cannot determine from the face of plaintiffs' complaints or even from plaintiffs' briefs what plaintiffs' claims are, aside from the fair warning due process claim discussed above. Accordingly, the court at this time only addresses whether

---

[12] The court notes that the Supreme Court has held that the determination of whether a prosecutor is entitled to absolute immunity as to specific conduct is separate from the court's analysis as to whether that conduct caused a plaintiff's injury. <u>Buckley</u>, 509 U.S. at 271 (The functional "approach focuses on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful. The location of the injury may[, however] be relevant to the question whether a complaint has adequately alleged a cause of action for damages."). Here Weydert's motion to dismiss based on absolute immunity combines both stages of the analysis, i.e. defendant argues that plaintiff has failed to state a claim against Weydert because his alleged non-prosecutorial conduct is not sufficient to state a claim for violation of plaintiffs' constitutional rights. Accordingly, the court addresses both steps in the analysis here.

1   Weydert is entitled to absolute immunity as to the fair warning

2   claim. Plaintiffs are instructed when amending their complaints

3   to clearly articulate the specific legal theories under which

4   they seek to hold Weydert liable, as described above, Weydert's

5   specific conduct for which he is not absolutely immune, and the

6   causal connection between this conduct and plaintiffs'

7   constitutional injuries.[13]

8       As to plaintiffs' due process claim arising out of the fair

9   warning rule, plaintiffs have not alleged a sufficient causal

10  connection between Weydert's non-prosecutorial conduct and the

11  violation of their rights. Plaintiffs have alleged Weydert

12  engaged in three acts of non-prosecutorial conduct, which caused

13  plaintiffs' injuries.[14] First, plaintiffs allege that Weydert

14  _____

15      [13] Plaintiffs are also instructed to describe the causal connection between the conduct of the other defendants and the specific constitutional injuries. To the extent that plaintiffs
16  claims depend on their allegedly wrongful prosecutions, plaintiffs ultimately must prove that the defendants' actions, to which they
17  are not entitled to immunity, are the actual and proximate causes of their injuries. See, e.g., Harper v. City of Los Angeles, 533
18  F.3d 1010, 1026, 1028 (9th Cir. 2008)("The presumption of prosecutorial independence protects investigative officers [from
19  damages arising after the prosecutor files a complaint] unless the evidence shows that the officers interfered with the prosecutor's
20  judgment by omitting relevant information or by pressuring the prosecutor to file charges."). While causation is a question of
21  fact, plaintiffs must nonetheless plead plausible allegations that defendants actions caused their injuries. Twombly, 550 U.S. at 557.

22      [14] The court notes that plaintiffs' opposition actually only
23  argues for a causal connection between acts of Weydert after the arrests that show that "he knew or should have known the arrests
24  violated Plaintiffs' Fourth Amendment right to be free from unreasonable search and seizure." Opposition at 8. Actions
25  occurring after the arrest, however, obviously could not have caused the arrests though they might bear upon defendants' state
26  of mind preceding the arrests though they might bear upon of state

31

made statements to the press expressing that MUAs were illegal

to sway public opinion against plaintiffs. Second, plaintiffs

allege that Weydert attended and spoke at the Board of

Chiropractic Examiners' meeting on December 14, 2006, intending

to delay the Board's vote on whether performing MUAs is within

the scope of chiropractic in California. Third, plaintiffs

allege that Weydert submitted a declaration to the Workers'

Compensation Appeals Board of Stockton, arguing in support of

Travelers and State Compensation Fund's petition to stay lien

collection proceedings for MUAs in part because of plaintiffs'

arrests. The injuries plaintiff allege are "economic losses from

the cost of defending themselves against the criminal charges

and from the interruption and loss of their right to practice

the chiropractic procession, and from damage to reputation;

[and] . . . emotional distress. Plaintiffs have stated a

plausible claim that Weydert's conduct caused their injuries.

However, these allegations in no way support a claim that

Weydert violated plaintiffs' due process rights by causing

prosecutions against them without fair notice that their conduct

was unlawful. Accordingly, plaintiffs' Section 1983 claims are

dismissed as to Weydert insofar as they are premised on this

of mind preceding the arrests. That fact, however, appears
irrelevant, given absolute immunity. The court alternatively
interprets these actions as possible conduct that caused their
alleged due process violation.

1 theory.[15]

2       **e.    Defendants Are Not Entitled Any Additional**
3             **Immunities Under the Doctrine of Sovereign**
        **Immunity.**

4       As this court held in its November 12, 2008 order, for an

5 individual to be protected by a state's sovereign immunity, the

6 individual must be a state official sued in his official

7 capacity.[16] The FACs again suggest that Weydert and Coffey are

8 sued in their individual, rather than official capacities.

9 Nonetheless, even if plaintiffs are bringing claims against

10 Weydert and Coffey in the official capacities, they are local,

11 not "state," officers. Local government officials are only

12 protected by the states' sovereign immunity when the perform

13 state functions. McMillian v. Monroe County, 520 U.S. 781

14 (1997). Whether a particular act by a local official constitutes

15 a state function is a question of federal law (in that federal

16 courts will not defer to labels affixed by the state), but the

17 question "will necessarily be dependent on the definition of the

18 official's functions under relevant state law." Id. at 786.

19       As the court held in 2008, Weydert "act[s] as [a] state

20 official [], and so possess[es] Eleventh Amendment immunity,

21

_____

22       [15] Once again, the court notes that absent absolute immunity
for prosecution of the offense, this conduct could well bear upon
23 malice.

24       [16] "A suit against a state official in his or her official
capacity is not a suit against the officer but rather is a suit
25 against the official's office. As such, it is no different from a
suit against the State itself." Will v. Mich. Dep't of State
26 Police, 491 U.S. 58, 71 (1989).

[only] when acting in [a] prosecutorial capacity." <u>Del Campo v.</u>
<u>Kennedy</u>, 517 F.3d 1070, 1073 (9th Cir. 2008) (internal
quotations and citations omitted). Thus, the Ninth Circuit has
used cases considering prosecutorial immunity in determining
prosecutors' eligibility for sovereign immunity. <u>Ceballos v.</u>
<u>Garcetti</u>, 361 F.3d 1168, 1183 n.11 (9th Cir. 2004), <u>rev'd on</u>
<u>other grounds</u>, 547 U.S. 410 (2006). Thus, if Weydert is being
sued in his official capacity, he has sovereign immunity for the
same conduct for which he has prosecutorial immunity if sued in
his individual capacity. Accordingly, under either theory he is
immune from prosecution arising out of the same conduct.

With respect to Coffey, he again does not address whether
any of his acts consisted of "state functions." Coffey bears the
burden of demonstrating that he functioned as a state official,
and has not met that burden. Thus, Coffey is not entitled to
sovereign immunity.

Plaintiffs are instructed when amending the complaints to
explicitly identify whether they are suing the government
defendants, Weydert and Coffey, in their individual capacities,
official capacities, or both. This is the third time this
question has been raised to the court, and clarification by
plaintiffs will avoid the court issuing this same ruling over
and over again.[17]

////

---

[17] Indeed, the court may well decide that enough is enough and
not allow further amendment.

1   **C.   Reynolds and Travelers' Motion to Dismiss Sausedo and**
2   **Vaezi's, Yates's, and Origel's First Amended**
    **Complaints.**

3        Reynolds and Travelers ("Insurance Defendants") move to

4   dismiss plaintiffs Sausedo and Vaezi's, Yates's, and Origel's

5   Section 1983 claims against them insofar as plaintiff brings

6   malicious prosecution and false arrest claims under the civil

7   rights act. These defendants also seek to apply their arguments

8   to dismiss the Section 1983 malicious prosecution claim to their

9   state law malicious prosecution claim. The Insurance Defendants

10  also move to dismiss on the ground that plaintiffs' amended

11  complaints were filed in violation of this court's December 24,

12  2009 order. Plaintiffs concede that their false arrest claims

13  are barred by the statute of limitations.[18] Accordingly, the

14  Insurance Defendants' motion to dismiss the false arrest claim

15  is granted. For the reasons discussed below, the Insurance

16  Defendants' motion is otherwise denied.

17  ////

18  ////

19  _____

20       [18] Plaintiffs are instructed when amending their complaints to
    carefully review this court's November 13, 2008 and December 24,
21  2009 orders. In November 2008, this court dismissed plaintiff
    Ambrose's false arrest claim because it was filed well outside the
22  statute of limitations without allegations of any facts in support
    of equitable tolling. When amending their complaints, plaintiffs
23  should be careful not to add any claims that this court has already
    ordered insufficient under Fed. R. Civ. P. 12(b)(6). Plaintiffs
24  are, of course, free to amend to add new theories of liability
    under the same constitutional or statutory provisions. Nonetheless,
25  if plaintiffs again bring claims based on the same or virtually the
    same factual allegations, which the court has already ruled as
26  insufficient, the court will dismiss these claims with prejudice.

1              **1.   Plaintiffs' Complaints Were Not Filed in**
2                   **Violation of this Court's December 24, 2009**
                    **Order.**
3
4        On December 24, 2009, this court granted the government

5   defendants' motion to dismiss four of the five operative

6   complaints in this consolidated case on the grounds of qualified

7   immunity. The court also granted plaintiffs leave to amend "for

8   theories of liability that do not depend on MUAs being legal and

9   theories for which Weydert and Coffey would not be entitled to

10  qualified immunity." As described above, plaintiffs have at

11  least met this burden. Accordingly, defendants motion to dismiss

12  on this ground is denied.

              **2.   The Court Declines to Strike Plaintiffs'**
13                 **Allegations as to the Legality of MUAs in that**
                   **the Court's December 24, 2009 Holding Only**
14                 **Applied to Whether Government Defendants Are**
                   **Entitled to Qualified Immunity, Not Whether MUAs**
15                 **Were Legal.**

16       The Insurance Defendants alternatively move to strike

17  plaintiffs' allegations that MUAs are lawful. This argument

18  misinterprets the court's December 24, 2009 order. The court

19  ordered plaintiffs to amend their complaint to state theories of

20  liability that do not depend on MUAs being lawful as to

21  defendants Weydert and Coffey because they are entitled to

22  qualified immunity on that issue. A theory of liability

23  depending on MUAs being lawful is entirely appropriate as to the

24  Insurance Defendants. Accordingly, defendants motion to strike

25  is denied.

26  ////

1          **3.    Plaintiffs Have Stated Claims Against Reynolds
2                  and Travelers for Malicious Prosecution Under
                  Section 1983 and state law.**

3          To succeed on a malicious prosecution claim under Section

4    1983, a plaintiff must show both the elements of a state law

5    malicious prosecution claim and that the prosecution was brought

6    for the purpose of denying a specific constitutional right.

7    Womack v. County of Amador, 551 F. Supp. 2d 1017, 1031 (E.D.

8    Cal. 2008) (citing Usher v. City of Los Angeles, 828 F.2d 556,

9    562 (9th Cir. 1987)), Alaya v. KC Environmental Health, 426 F.

10   Supp. 2d 1070 (E.D. Cal. 2006) (same). Under California law,

11   "the malicious prosecution plaintiff must plead and prove that

12   the prior proceeding commenced by or at the direction of the

13   malicious prosecution defendant, was: (1) pursued to a legal

14   termination favorable to the plaintiff; (2) brought without

15   probable cause; and (3) initiated with malice." Womack, 551 F.

16   Supp. 2d at 1031 (citing Sagonowsky v. More, 64 Cal. App. 4th

17   122, 128, 75 Cal. Rptr. 2d 118 (1998) and Villa v. Cole, 4 Cal.

18   App. 4th 1327, 1335, 6 Cal. Rptr. 2d 644 (1992)).

19         The Insurance Defendants move to dismiss plaintiffs'

20   malicious prosecution claims on several grounds. First, they

21   argue that the claim fails because of this court's December 24,

22   2009 decision on qualified immunity. Second, they argue that the

23   claim should be dismissed because they had a good faith belief

24   that MUAs were illegal. Last, they argue that claims should be

25   dismissed because plaintiffs have not established a favorable

26   termination of their criminal prosecutions. The court will

                                  37

1   address each argument in turn.

2               **a.   Effect of Decision on Qualified Immunity**

3      In the court's December 24, 2009 order, the court did not,

4   as the Insurance Defendants contend, hold that plaintiffs

5   criminal prosecutions were brought with probable cause. The

6   court does, however, recognize that the language it used in its

7   holding was ambiguous. The court intended the language to

8   express that because the law was not clearly established as to

9   the legality of MUAs, the government defendants could have

10   reasonably believed there was a legal basis for their claim.

11   Reasonability under qualified immunity is not a defense for non-

12   government employees. Further, the court has reconsidered its

13   ruling on probable cause under <u>Awabdy v. City of Adelanto</u>, 368

14   F.3d 1062 (9th Cir. 2004).

15      The Insurance Defendants also argue that this claim should

16   be dismissed because there are no allegations that Reynolds

17   "pressured or otherwise improperly influenced the decision by

18   the DA's Office to bring criminal charges." This is simply

19   false. Plaintiffs' complaints allege in great detail how

20   Reynolds improperly influenced the San Joaquin district

21   attorney's office.

22                 **b.   Good Faith Defense**

23      The Insurance Defendants also argue that this claim should

24   be dismissed because of the good faith defense. This defense is

25   subjective, and based on factual findings. As such, is not

26   properly resolved as part of the instant motion.

1    Private persons who act under the color of law may assert a

2 good faith defense to a § 1983 claim. Clement v. City of

3 Glendale, 518 F.3d 1090, 1096-1097 (9th Cir. 2008); see also

4 Richardson v. McKnight, 521 U.S. 399, 413 (1997) (The Supreme

5 Court has not foreclosed the possibility of an affirmative good

6 faith defense in § 1983 actions.). Unlike qualified immunity, a

7 good faith defense "depends on the subjective state of mind of

8 the private person." Robinson v. City of San Bernardino Police

9 Dept., 992 F. Supp. 1198, 1207 (C.D. Cal. 1998) (internal

10 citation omitted). The court's earlier finding that an

11 objectively reasonable prosecutor could have believed MUAs were

12 unlawful is not dispositive of the subjective element of the

13 Insurance Defendant's good faith defense.

14    The defendant's subjective state of mind, as part of the

15 affirmative defense of good faith, overlaps with the plaintiffs'

16 burden. To succeed on a malicious prosecution claim under

17 Section 1983 plaintiffs must prove, among other things, that the

18 prosecution was brought with malice and without probable cause.

19 See Womack v. County of Amador, 551 F. Supp. 2d 1017, 1031 (E.D.

20 Cal. 2008). In the Ninth Circuit, the defendant asserting the

21 defense of good faith bears the burden of establish their good

22 faith. Jensen v. Lane County, 222 F.3d 570, (9th Cir. 2000)

23 (leaving open the possibility that private defendant has an

24 *affirmative* good faith defense to a section 1983 claim);

25 Robinson v. City of San Bernardino Police Dept., 992 F. Supp.

26 1198, 1207 (C.D. Cal. 1998) (holding that defendant *established*

her good faith). If the Insurance Defendants are to prevail on a good faith defense they bear the burden of establishing that they did not know, and should not have known, that MUAs were legal as well as that they did not act with malice. Plaintiff has alleged facts in support of both of these elements. Accordingly, defendants motion to dismiss is denied on this ground.

### c.   Favorable Termination

The Insurance Defendants argue that the malicious prosecution claim must fail because plaintiffs have not alleged facts establishing that their prosecutions were favorably terminated as required for such claims. They argue that plaintiffs' criminal prosecutions did not result in favorable legal determinations. Plaintiffs allege that their criminal prosecutions were dismissed pursuant to California Penal Code Section 1385(a), which authorizes a judge to order an action dismissed in furtherance of justice.

Defendants rely on <u>Womack v. County of Amador</u> for the proposition that a Section 1385(a) dismissal is generally not deemed a favorable termination because it reflects ambiguously on the merits, leaving open the question of guilt or innocence. 551 F. Supp. 2d 1017, 1033 (2008). However, the Ninth Circuit has held dismissal qualifies as a favorable termination only "if it reflects the opinion of the prosecuting party or the court that the action lacked merit or would result in a decision in favor of the defendant." <u>Awabdy v. City of Adelanto</u>, 368 F.3d

1062, 1068 (9th Cir. 2004). The court continued, "When such a
dismissal is procured as the result of a motion by the
prosecutor and there are allegations that the prior proceedings
were instituted as the result of fraudulent conduct, a malicious
prosecution plaintiff is not precluded from maintaining his
action unless the defendants can establish that the charges were
withdrawn on the basis of a compromise among the parties or for
a cause that was not inconsistent with his guilt." Id. Thus, at
this stage, plaintiffs need only allege facts showing that there
is a possibility that the charges were dismissed because of
doubts about their legitimacy or the plaintiffs' guilt for the
claim to survive a motion to dismiss.

Plaintiffs assert that the criminal actions against them
were terminated favorably by dismissal of all charges, and
defendants have not presented any judicially noticeable evidence
to the contrary. Thus, plaintiffs have stated a claim for
malicious prosecution under Section 1983 and state law, and the
Insurance Defendants' motion to dismiss is denied as to this
claim.

**D.    Reynolds and Travelers' Motion for Judgment on the
    Pleadings as to Ambrose's First Amended Complaint.**

The Insurance Defendants seek judgment as to plaintiff
Ambrose's malicious prosecution claim under Section 1983 based
on the same arguments discussed in the section above. Their
motion is similarly denied on the same grounds.

The Insurance Defendants also argue that Ambrose's

41

1   conspiracy claim fails as a matter of law. This argument also

2   relies on the argument of which the court disposed above that

3   the conspiracy claim fails because the criminal proceedings were

4   supported by probable cause. As discussed above, this court did

5   not hold that the criminal proceedings were supported by

6   probable cause, and this court has reconsidered whether the

7   government defendants could have reasonably believed that they

8   were acting with probable cause. Accordingly, the Insurance

9   Defendants' motion for judgment on the pleadings is denied.

10              **IV. CONCLUSION**

11      For the foregoing reasons the court DENIES plaintiffs

12  Yates, Sausedo, Vaezi, and Origel's motions for reconsideration

13  as to whether it was clearly established that the performance of

14  MUAs was lawful under California law, Doc. Nos. 74, 76.

15      The court GRANTS plaintiffs Yates, Sausedo, Vaezi, and

16  Origel's motions for reconsideration as to whether they have

17  stated claims for malicious prosecution as to defendant Coffey.

18  Coffey's original motions to dismiss this claim, Doc. 47, is now

19  denied.

20      The court further GRANTS IN PART Defendants County,

21  Weydert, and Coffey's motion to dismiss Plaintiffs Yates's,

22  Origel's, and Sausedo and Vaezi's amended complaints, Doc. No.

23  69. As to this motion the court dismisses with prejudice all

24  claims against County. The court also dismisses Sausedo and

25  Vaezi's malicious prosecution claims under state law against

26  Weydert and Coffey.

1     Further, the court GRANTS IN PART Defendants Travelers and

2  Reynolds' motion to dismiss Plaintiffs Yates's, Origel's, and

3  Sausedo and Vaezi's amended complaints, Doc. No. 71. The court

4  dismisses these plaintiffs' false arrest claims under 42 U.S.C.

5  § 1983. The motion is otherwise denied.

6     The court also DENIES Defendants Travelers and Reynolds'

7  motion for judgment on the pleadings as to Plaintiff Ambrose's

8  first amended complaint, Doc. 80.

9     Lastly, Plaintiffs Yates's, Origel's, and Sausedo and

10  Vaezi's shall file amended complaints consistent with this order

11  within twenty-one (21) days of the issuance of this order. These

12  amended complaints must clearly lay out as separate causes of

13  action each theory of liability under Section 1983. In these

14  separate causes of action, plaintiffs must identify the conduct

15  of each defendant, that is not protected by any privilege, which

16  plaintiffs allege caused each specific constitutional

17  deprivation. Plaintiffs are cautioned to review this court's

18  previous orders when drafting these complaints to avoid bringing

19  claims the court has already held to be legally insufficient.

20     IT IS SO ORDERED.

21     DATED: March 30, 2010.

22

23

24  LAWRENCE K. KARLTON
     SENIOR JUDGE

25  UNITED STATES DISTRICT COURT

26