UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH AMBROSE, D.C.,

                              NO. CIV. S-08-1664 LKK/GGH

      Plaintiff,

   v.

                              O R D E R

GARY COFFEY, et al.,

      Defendants.

_____/

Plaintiffs bring suits arising out of an investigation of them, their arrests, and their criminal prosecutions. All defendants have moved to dismiss. For the reasons discussed below, the motions are granted in part and denied in part.

**A.   Procedural History**

On July 18, 2008, plaintiff Joseph Ambrose ("Ambrose") filed a complaint against Gary Coffey ("Coffey"), James C. Weydert ("Weydert"), William Reynolds ("Reynolds"), Travelers Property and Casualty Company of America ("Travelers"), Zenith Insurance Company ("Zenith"), and the County of San Joaquin ("County"). On August 20, 2008, Travelers and Reynolds moved to dismiss all causes of action

pled against them, and on August 28, 2008, the County, Coffey, and Weydert also moved to dismiss all claims against them. Ambrose voluntarily dismissed Zenith on September 4, 2008. On November 13, 2008, the court granted defendants' motions to dismiss Ambrose's complaint in part, and granted Ambrose leave to amend his complaint. Ambrose filed an amended complaint on September 18, 2009.

On May 28, 2009, plaintiffs Richard Sausedo ("Sausedo") and Pedram Vaezi ("Vaezi") filed a complaint against Travelers, Reynolds, County, Weydert, and Coffey, Sausedo v. Travelers Prop. & Cas. Co., 2:09-cv-01477-LKK-GGH, arising out of their arrests under similar facts. Plaintiffs concurrently filed a notice of related cases to Ambrose v. Coffey, 2:08-cv-01664-LKK-GGH. On June 16, 2009, the court consolidated Ambrose and Sausedo.

On July 27, 2009, plaintiff Michael Yates ("Yates") filed a virtually identical complaint as Sausedo against the same defendants, Yates v. Travelers Prop. & Cas. Co., 2:09-cv-02062-LKK-GGH. Yates filed a notice of related cases with his complaint to Ambrose and Sausedo. On August 3, 2009, the court ordered the cases related, and on September 2, 2009, the court consolidated Yates with Ambrose and Sausedo.

On September 21, 2009, plaintiff Wilmer D. Origel ("Origel") filed a complaint virtually identical to those of Sausedo and Yates, Origel v. Travlers Prop. & Cas. Co, 2:09-02640-LKK-GGH. On October 2, 2009, Origel filed a notice of related cases with Ambrose, Sausedo, and Yates. On October 30, 2009, the court ordered

2

<u>Origel</u> related to <u>Ambrose</u>, <u>Sausedo</u>, and <u>Yates</u>. On January 27, 2009, the court consolidated <u>Origel</u> with <u>Ambrose</u>, <u>Sausedo</u>, and <u>Yates</u>.

On December 24, 2009, this court granted Weydert and Coffey's motion to dismiss <u>Sausedo</u>, <u>Yates</u>, and <u>Origel</u> on grounds of qualified immunity. Plaintiffs did not oppose dismissal of their claims against the County. On January 12, 2010, plaintiffs Sausedo and Vaezi, Yates, and Origel filed amended complaints. On January 26, 2010, County, Weydert, and Coffey moved to dismiss these complaints. Travelers and Reynolds also moved to dismiss these complaints at that time. On January 27, 2010, these plaintiffs filed two separate, but identical, motions for reconsideration of this court's order. On February 5, 2010, Travelers and Reynolds filed a motion for judgment on the pleadings as to plaintiff Ambrose's complaint.

On March 30, 2010, this court denied plaintiffs Yates, Sausedo, Vaezi, and Origel's motions for reconsideration as to whether it was, at the relevant times, clearly established that the performance of manipulations under anaesthesia ("MUAs") was lawful under California law. This court granted plaintiffs Yates, Sausedo, Vaezi, and Origel's motions for reconsideration as to whether they have stated claims for malicious prosecution as to defendant Coffey. Coffey's original motion to dismiss that claim was subsequently denied.

Further, this court granted, in part, defendants County, Weydert, and Coffey's motion to dismiss plaintiffs Yates's, Origel's, and Sausedo and Vaezi's amended complaints. As to that

1  motion, this court dismissed with prejudice all claims against the
2  County. This court also dismissed with prejudice Sausedo and
3  Vaezi's malicious prosecution claims under state law against
4  Weydert and Coffey.

5      In addition, this court granted in part defendants Travelers
6  and Reynolds' motion to dismiss plaintiffs Yates's, Origel's, and
7  Sausedo and Vaezi's amended complaints. The court dismissed these
8  plaintiffs' false arrest claims under 42 U.S.C. § 1983. The motion
9  was otherwise denied. This court also denied defendants Travelers
10 and Reynolds' motion for judgment on the pleadings as to plaintiff
11 Ambrose's first amended complaint.

12     Lastly, this court ordered plaintiffs Yates, Origel, Sausedo
13 and Vaezi to file amended complaints to clearly lay out as separate
14 causes of action each theory of liability under Section 1983,
15 identifying the conduct of each defendant, that is not protected
16 by any privilege, which plaintiffs allege caused each specific
17 constitutional deprivation.

18     On April 20, 2010, Ambrose, Yates, Sausedo, and Vaezi filed
19 a second amended complaint. Origel also filed a second amended
20 complaint on this day. The complaints are substantially similar.
21 On May 4, 2010, defendants Coffey and Weydert and defendants
22 Travelers and Reynolds filed separate motions to dismiss.
23 ////
24 ////
25 ////
26

**B.   Factual Allegations**[1]

**1.   Plaintiffs' Chiropractic Practice**

Plaintiffs Ambrose, Yates, Sausedo, Vaezi, and Origel are all Doctors of Chiropractic licensed by the State of California Board of Chiropractic Examiners ("BCE"). Ambrose Second Amended Complaint, ECF No. 110, ("ASAC") ¶ 3; Origel Second Amended Complaint, ECF No. 111, ("OSAC") ¶ 3. The BCE is a state agency charged with regulating the chiropractic profession. ASAC ¶ 27; OSAC ¶ 49. In their capacity as chiropractors, plaintiffs all provided services to patients who received medical benefits through workers' compensation insurance. ASAC ¶ 3; OSAC ¶ 10. As part of their practice, plaintiffs performed a chiropractic procedure called Manipulation Under Anesthesia ("MUA"). ASAC ¶ 8; OSAC ¶¶ 16-18. Plaintiffs explain that during an MUA, a chiropractor performs manipulation of a patient who has been anesthetized by a medical doctor. ASAC ¶ 8; OSAC ¶ 18. But for the addition of anesthesia and the setting of a hospital, plaintiffs allege MUAs employ the same techniques as routine chiropractic practice. OSAC ¶ 18. Plaintiff Origel states that all patients who received MUAs were first screened and deemed good candidates for the procedure by a medical doctor at Med-1 Medical center.[2] OSAC ¶ 17.

On September 13, 1990, the BCE adopted a policy statement, to

---

[1] The allegations described herein are taken from complaints, and are taken as true for the purpose of the pending motion only. All factual allegations are found in both the ASAC and OSAC unless otherwise noted.

[2] This fact is only found in the OSAC.

wit: "a proper chiropractic adjustment, if within the scope of practice § 302, is not made illegal simply because the patient is under anaesthesia." ASAC ¶ 25; OSAC ¶ 50. Plaintiffs argue that in response to subsequent concerns that MUAs exceeded chiropractors' legitimate scope, the BCE signed a "Final Statement of Reasons" recognizing MUAs on October 21, 2004. ASAC ¶ 31; OSAC ¶ 54. The BCE reasoned that because chiropractors did not administer the anesthesia themselves, MUAs fell within the scope of the BCE's regulation. ASAC ¶ 31; OSAC ¶ 54. The BCE reaffirmed its position that MUAs are within the scope of chiropractic practice on January 20, 2005. ASAC ¶ 32; OSAC ¶ 56.

Plaintiffs contend that Suzanne Honor, the worker's compensation manager of the Division of Worker's Compensation ("DWC") for the State of California, regularly spoke at DWC educational conferences on how to properly bill MUAs. ASAC ¶ 26; OSAC ¶ 47.

Moreover, the State Compensation Insurance Fund ("SCIF") regularly pre-approved MUAs, and the Worker's Compensation Appeals Board ("WCAB") on several occasions ordered payment for MUAs from defendant Travelers. ASAC ¶¶ 13, 24; OSAC ¶¶ 28, 39. In reliance upon the statements of state agencies, the plaintiffs all believed that MUAS were within the scope of their chiropractic practice and, consequently, performed them. ASAC ¶ 33; OSAC ¶ 57. Plaintiffs Ambrose, Yates, Sausedo, and Vaezi, as employees of Med-1 Medical Center, routinely perfomed MUAS at Sierra Hills Surgery Center. ASAC ¶ 8. Plaintiff Origel was a part owner of both facilities.

1  OFAC ¶¶ 3, 9. Plaintiffs Ambrose and Yates were part-owners of

2  Sierra Hills. ASAC ¶ 8.

3  **2.   Travelers Initiates Criminal Investigations**

4  Defendant Travelers, a licensed insurance provider within

5  California, provides workers' compensation benefits. ASAC ¶ 4; OSAC

6  ¶ 4. Plaintiffs allege that Travelers owed them all substantial

7  debts for chiropractic services to be paid for through workers'

8  compensation insurance. ASAC ¶ 4; OSAC ¶ 4. Origel[3] alleges that

9  plaintiffs primarily treated Mexican-born, Spanish speaking,

10 physical laborers. OSAC ¶¶ 10-11. He further alleges that many of

11 these patients were first seen by company doctors who minimized

12 their injuries and tried to either return the patients to work

13 injured or retire them. OSAC ¶ 12. Origel concludes that because

14 the workers low-level labor was "fungible", it was in the economic

15 interest of the employers and insurance carriers to return the

16 patients to work injured or retire them. OSAC ¶ 14. It was against

17 the economic interests of the employers and the insurance carriers

18 for the patients to receive the extensive treatment needed to truly

19 improve. Id. He contends that the Med-1 clinics returned the vast

20 majority of their patients to work without injury through extensive

21 treatment (including MUAs) but at significantly cost to insurance

22 carriers. OSAC ¶ 15. He alleged that the cost to insurance carriers

23 was higher at Med-1 clinics because they treated not only the

24 referring injury, but also all related preexisting injuries in

25

26    [3] The following allegations occur only in the OSAC.

7

1  accordance with the law, while the company doctors only treat the

2  referring injury. Id.

3      Plaintiff Origel further alleges[4] that Travelers utilized a

4  strategy for controlling costs which targets certain clinics and

5  groups for exertion of economic pressures by Travelers. Id. at ¶

6  23. He contends that this strategy is based on a point scale system

7  which discriminates against certain groups. Id. at ¶ 24, 27.

8  Because Med-1 provided extensive treatment aimed at actually

9  healing patients, Origel asserts, Travelers targeted Med-1 and its

10 chiropractors according to its discriminatory point scale. Id. at

11 ¶ 27. Origel further alleges that, on account of this targeting,

12 Travelers investigated the group and raised a series of objections

13 and barriers to their treatment, including, but not limited to

14 refusing payment on "by report" billings and refusing to

15 preauthorize or pay for MUAs. Id.

16     Plaintiffs allege that Travelers had unsuccessfully challenged

17 MUA payments owed to chiropractors associated with Sierra Hills and

18 Med-1. ASAC ¶ 13; OSAC ¶ 28. They further allege that on December

19 24, 2003, the WCAB mandated that Travelers pay liens against them

20 for MUAS performed at Sierra Hills. ASAC ¶ 13; OSAC ¶ 28.

21     They contend that the number and frequency of MUAs plaintiffs

22 billed under worker's compensation led Travelers to pursue criminal

23 actions against them in order to prevent future claims and to avoid

24 paying outstanding claims. ASAC ¶ 12; OSAC ¶¶ 30-33, 36-37, 58.

25

26     [4] The following allegations are only found in OSAC.

8

1  They allege that defendant Reynolds, acting under the authority and
2  supervision of Travelers, instigated these criminal actions for the
3  sole purpose of financial benefit to Travelers and other insurers
4  by  intimidation  of  plaintiffs  and  other  chiropractors  from
5  performing  and  collecting  fees  for  MUAs,  through  the  risk  of
6  criminal prosecution. ASAC ¶¶ 12, 66; OSAC ¶¶ 36-37, 95.

7      Origel alleges[5] that these criminal actions were part of a
8  "blue sky" approach to lowering costs. OSAC ¶¶ 30-33. The "blue
9  sky"  approach  requires  the  assistance  of  a  compliant  district
10 attorney's office having them present criminal charges against the
11 targeted parties. OSAC ¶ 30. Origel states that the very fact of
12 a  highly  publicized  arrest  by  prosecutors  is  the  only  success
13 needed for the insurance industry to successfully employ the "blue
14 sky" approach. OSAC ¶ 31. He contends that once there is a highly
15 publicized arrest, other practitioners will curtail the practices
16 which  the  insurance  company  and  prosecutors  have  selected  for
17 scrutiny for fear of prosecution. Id. As an adjunct to the "blue
18 sky" approach, is the economic destruction of the targeted party
19 so that they are made an example of and so that their business can
20 be taken by more compliant parties. OSAC ¶ 32.

21     Plaintiffs contend that defendant Reynolds, an employee of
22 Travelers acting under the authorization of his employer, submitted
23 Requests for Prosecution to District Attorney offices in Alameda,
24 Contra Costa, Stanislaus, and San Joaquin counties in 2002. ASAC

25

26     [5] The following allegations are found only in OSAC.

1   ¶ 13; OSAC ¶¶ 37-39. San Joaquin County prosecutors responded to

2   Reynolds request, and plaintiffs allege that Reynolds took an

3   active role in the subsequent investigation of Med-1 Medical Center

4   and Sierra Hills with agents of the San Joaquin County District

5   Attorney's Office, including defendant Coffey. ASAC ¶¶ 14-15; OSAC

6   ¶¶ 35-40. Additionally, Origel alleges[6] that defendant Reynolds

7   trained defendants Weydert and Coffey in Travelers' philosophy of

8   medical treatment, provided legal training and directed the

9   criminal investigation of plaintiffs to focus on MUAs, and provided

10  a roadmap for the prosecution of plaintiffs to prosecutors and

11  investigators. OSAC ¶¶ 35-36, 39. He contends that the purpose of

12  inciting the criminal prosecution of plaintiffs for MUAs by

13  Reynolds, under authorization and approval by Travelers, was to

14  intimidate plaintiffs and others from performance of MUA and

15  ultimately to eliminate Travelers' financial responsibility for MUA

16  procedures. OSAC ¶¶ 36-37.

17      Defendants Coffey and Reynolds gathered evidence, took

18  statements, formulated legal strategy, and made decisions regarding

19  the investigation and prosecution. ASAC ¶¶ 11-14; OSAC ¶¶ 35-40.

20  According to plaintiffs, all defendants were aware that MUAs were

21  within the scope of practice of licensed chiropractors. ASAC ¶ 24;

22  OSAC ¶ 45. Additionally, prior to plaintiffs' arrests, defendants

23  Weydert and Coffey had BCE's minutes from 1988-2005, the BCE's

24  Final Statement of Reasons, letters from Vivian Davis and Raymond

25  _____

26      [6] The following allegations are found only in OSAC.

1  Ursillo, showing that BCE had authorized chiropractors to perform
2  MUAs and that MUAs were within the scope of chiropractic, and
3  documents demonstrating that BCE had approved continuing education
4  classes on MUAs. ASAC ¶ 42; OSAC ¶¶ 69-70.

5      Further, plaintiffs allege that each of the defendants knew
6  that plaintiffs relied on the statements and approval of the
7  aforementioned State agencies and personnel and therefore believed
8  in good faith that their performance of MUAs was within the scope
9  of practice of chiropractors. ASAC ¶ 33; OSAC ¶¶ 41, 57. Therefore,
10 defendants could not have reasonably believed that plaintiffs had
11 fair notice that their conduct was unlawful. ASAC ¶ 33; OSAC ¶¶ 41,
12 57. Moreover, plaintiffs contend that defendants Reynolds and
13 Travelers acted with malice toward plaintiffs in requesting and
14 participating in the prosecution of plaintiffs for the financial
15 benefit of Travelers. ASAC ¶ 66; OSAC ¶ 95.

16     During the investigation Ambrose alleges he entered into a "No
17 Prosecution Agreement" with defendant Weydert on September 18,
18 2003. ASAC ¶ 16. According to Ambrose, Weydert agreed not to
19 prosecute Ambrose for insurance fraud in exchange for a statement
20 under oath regarding billing procedures at Med-1 Medical Center,
21 Unique Health Care Management, and Origel's practice. Id. The
22 agreement specified that it was subject to termination upon a
23 finding of material dishonesty and a motion to withdraw granted by
24 a judicial officer. Id.
25 ////
26 ////

1
### 3.   District Attorney Files and Dismisses Criminal Charges Against Plaintiffs

2

3      Weydert filed a criminal complaint against Origel, part-owner

4  of Med-1 and Sierra Hills, on January 5, 2005, alleging a variety

5  of criminal offenses related to the practice of administering and

6  billing MUAs. OSAC ¶ 42. Origel was arrested on January 19, 2005.

7  OSAC ¶ 43. He alleges[7] that this arrest warrant was based on a

8  Declaration in Support of Arrest Warrant presented to the San

9  Joaquin County Superior Court Judge. Id. Origel further alleges

10 that this Declaration contained deliberately false and misleading

11 allegations, including the allegation that his performance and

12 billing of MUAs was outside the scope of chiropractic practices.

13 Plaintiff Origel was held to answer on June 15, 2006. OSAC ¶ 44.

14 The case against plaintiff Origel proceeded to jury trial, and

15 resulted in a mistrial. Id.

16     On August 23, 2005, defendant Weydert filed criminal

17 complaints against plaintiffs Ambrose, Yates, Sausedo, and Vaezi

18 alleging a host of felony offenses premised on the illegality of

19 MUAs. ASAC ¶ 20. Also on August 23, 2005, defendant Weydert

20 presented a Declaration in Support of Arrest Warrant authored and

21 signed by defendant Coffey, to San Joaquin County Superior Court

22 Judge, Robert McNatt. ASAC ¶ 21. Based upon this Declaration,

23 warrants issued for the arrest of plaintiffs Ambrose, Yates,

24 Sausedo, and Vaezi. Id. Plaintiffs contend that this Declaration

25

26      [7] The following allegations occur only in OSAC.

12

1 contained deliberately false and misleading allegations, including
2 allegations that defendants Ambrose, Yates, Sausedo, and Vaezi
3 performed MUAs outside the scope of chiropractic practice. ASAC ¶
4 22. Ambrose also contends that the complaint was filed against him
5 in violation of the "No Prosecution Agreement." ASAC ¶ 20.

6 The criminal charges against Ambrose were dismissed after a
7 hearing on his motion to dismiss on August 15, 2006. ASAC ¶ 23.
8 Ambrose did not indicate the grounds upon which the trial court
9 dismissed the criminal charges. The criminal complaints against
10 Sausedo and Vaezi were dismissed on March 11, 2008, on the grounds
11 of insufficient evidence and in the interest of justice. Id. On
12 November 20, 2008, all charges against Origel were dismissed in the
13 interests of justice. OSAC ¶ 44. On December 11, 2008, all criminal
14 charges against Yates were also dismissed in the interest of
15 justice. ASAC ¶ 23.

16 Origel also alleges[8] that concurrent and coordinated with his
17 criminal prosecution, Weydert made several public statements
18 concerning his prosecution of the chiropractors who perform MUAs,
19 and lobbied against the BCE's adoption of a policy permitting the
20 practice of MUAs by chiropractors, launched a publicity campaign
21 where plaintiff Origel's mug shot was distributed, and made other
22 statements that were intended to destroy Origel's reputation and
23 threaten other chiropractors. OSAC ¶ 59, 82-86.
24 ////

25

26 [8] The following allegations occur only in OSAC.

13

**II. STANDARD FOR A FED. R. CIV. P 12(B)(6) MOTION TO DISMISS**

A Fed. R. Civ. P. 12(b)(6) motion challenges a complaint's compliance with the pleading requirements provided by the Federal Rules. In general, these requirements are established by Fed. R. Civ. P. 8, although claims that "sound[] in" fraud or mistake must meet the requirements provided by Fed. R. Civ. P. 9(b). <u>Vess v. Ciba-Geigy Corp.</u>, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give defendant "fair notice of what the claim is and the grounds upon which it rests." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotation and modification omitted).

To meet this requirement, the complaint must be supported by factual allegations. <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009). "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. <u>Id.</u> at 1949-50. <u>Iqbal</u> and <u>Twombly</u> therefore prescribe a two step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." <u>Id.</u>; <u>Erickson v. Pardus</u>, 551 U.S. 89

(2007).[9]

"Plausibility," as it is used in <u>Twombly</u> and <u>Iqbal</u>, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557). A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).

The line between non-conclusory and conclusory allegations is not always clear. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555). While <u>Twombly</u> was not the first case that directed the district courts to disregard

---

[9] As discussed below, the court may consider certain limited evidence on a motion to dismiss. As an exception to the general rule that non-conclusory factual allegations must be accepted as true on a motion to dismiss, the court need not accept allegations as true when they are contradicted by this evidence. See <u>Mullis v. United States Bankr. Ct.</u>, 828 F.2d 1385, 1388 (9th Cir. 1987), <u>Durning v. First Boston Corp.</u>, 815 F.2d 1265, 1267 (9th Cir. 1987).

1   "conclusory" allegations, the court turns to <u>Iqbal</u> and <u>Twombly</u>

2   for indications of the Supreme Court's current understanding of

3   the term. In <u>Twombly</u>, the Court found the naked allegation that

4   "defendants 'ha[d] entered into a contract, combination or

5   conspiracy to prevent competitive entry . . . and ha[d] agreed

6   not to compete with one another,'" absent any supporting

7   allegation of underlying details, to be a conclusory statement

8   of the elements of an anti-trust claim. <u>Id.</u> at 1950 (quoting

9   <u>Twombly</u>, 550 U.S. at 551). In contrast, the <u>Twombly</u> plaintiffs'

10  allegations of "parallel conduct" were not conclusory, because

11  plaintiffs had alleged specific acts argued to constitute

12  parallel conduct. <u>Twombly</u>, 550 U.S. at 550-51, 556.

13       <u>Twombly</u> also illustrated the second, "plausibility" step of

14  the analysis by providing an example of a complaint that failed

15  and a complaint that satisfied this step. The complaint at issue

16  in <u>Twombly</u> failed. While the <u>Twombly</u> plaintiffs' allegations

17  regarding parallel conduct were non-conclusory, they failed to

18  support a plausible claim. <u>Id.</u> at 566. Because parallel conduct

19  was said to be ordinarily expected to arise without a prohibited

20  agreement, an allegation of parallel conduct was insufficient to

21  support the inference that a prohibited agreement existed. <u>Id.</u>

22  Absent such an agreement, plaintiffs were not entitled to

23  relief. <u>Id.</u>[10]

24  _____

25       [10] This judge must confess that it does not appear self-
    evident that parallel conduct is to be expected in all

26  circumstances and thus would seem to require evidence. Of course,
    the Supreme Court has spoken and thus this court's own uncertainty

1    In contrast, <u>Twombly</u> held that the model pleading for

2  negligence demonstrated the type of pleading that satisfies Rule

3  8. <u>Id.</u> at 565 n.10. This form provides "On June 1, 1936, in a

4  public highway called Boylston Street in Boston, Massachusetts,

5  defendant negligently drove a motor vehicle against plaintiff

6  who was then crossing said highway." Form 9, Complaint for

7  Negligence, Forms App., Fed. Rules Civ. Proc., 28 U.S.C. App., p

8  829. These allegations adequately "'state[] . . . circumstances,

9  occurrences, and events in support of the claim presented.'"

10 <u>Twombly</u>, 550 U.S. at 556 n.3 (quoting 5 C. Wright & A. Miller,

11 Federal Practice and Procedure § 1216, at 94, 95 (3d ed. 2004)).

12 The factual allegations that defendant drove at a certain time

13 and hit plaintiff render plausible the conclusion that defendant

14 drove negligently.

15                            **III. ANALYSIS**

16        **A.    Defendants Weydert and Coffey's Motion**

17              **1.    Plaintiff's First Claim is not Barred by
                        Prosecutorial Immunity as to Defendant Coffey.**

18

19    Defendant Coffey contends that plaintiffs' first claim for

20 Malicious Prosecution Resulting in Violation of Due Process for

21 Lack of Fair Warning is barred because, although he is not a

22 prosecutor, he is nonetheless entitled to prosecutorial

23 immunity. Officials are entitled to absolute prosecutorial

24 immunity "when performing the traditional functions of an

25 _____

26 needs only be noted, but cannot form the basis of a ruling.

17

1  advocate," Kalina v. Fletcher, 522 U.S. 118, 131 (1997), which

2  are "intimately associated with the judicial phase of the

3  criminal process," Imbler v. Pachtman, 424 U.S. 409, 430 (1976).

4  In Kalina, the Supreme Court held that a deputy prosecutor was

5  not entitled to prosecutorial immunity for personally attesting

6  to the truth of averments in a Certificate of Probable Cause

7  used to secure an Arrest Warrant because the prosecutor was

8  functioning as a witness rather than an advocate. Kalina, 522

9  U.S. at 131.

10      It is true that in determining immunity, the court must

11 look to "the nature of the function performed, not the identity

12 of the actor who performed it." Id. at 127 (citing Forrester v.

13 White, 484 U.S. 219, 229 (1988)). Thus, if an investigator is

14 performing a prosecutorial act, they are entitled to absolute

15 prosecutorial immunity. See Khanna v. State Bar of Cal., 505 F.

16 Supp. 2d 633, 647 (N.D. Cal. 2007). However, "a prosecutor's

17 administrative duties and those investigatory functions that do

18 not relate to an advocate's preparation for the initiation of a

19 prosecution or for judicial proceedings are not entitled to

20 absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273

21 (1993). In Buckley, the Supreme Court held that there is a

22 difference between the advocate's role in evaluating evidence

23 and interviewing witnesses in preparation for trial, and the

24 detective's role in searching for "clues and corroboration that

25 might give probable cause" to recommend arrest, and that the

26 latter is not entitled to prosecutorial immunity. Id. at 273.

1  Consequently, in Buckley, a prosecutor who allegedly fabricated

2  evidence before a grand jury was empaneled and petitioner was

3  arrested was held not to be entitled to prosecutorial immunity

4  because his mission at the time was "entirely investigative in

5  character." Id. at 274. "A prosecutor neither is, nor should

6  consider himself to be, an advocate before he has probable cause

7  to have anyone arrested." Id.; see also Genzler v. Loganback,

8  410 F.3d 630, 637-39 (9th Cir. 2005); KRL v. Moore, 384 F.3d

9  1105, 1111 (9th Cir. 2004).

10       Defendant Coffey argues that plaintiffs have only alleged

11  that he engaged in prosecutorial conduct and, therefore, is

12  entitled to absolute immunity. He has not considered all of

13  plaintiffs' allegations against him. While both defendant Coffey

14  and plaintiffs have characterized Coffey's involvement as having

15  initiating prosecutions and prosecuting plaintiffs, plaintiffs

16  have certainly alleged quite a bit more than just prosecutorial

17  conduct. Plaintiffs allege that defendant Coffey commenced and

18  actively participated in the investigation by gathering

19  evidence, taking statements and decision making involved in the

20  investigation of plaintiffs. In addition, the Ambrose plaintiffs

21  allege that Coffey authored and signed a Declaration in Support

22  of Arrest Warrant causing a warrant to be issued for plaintiffs'

23  arrests. ASAC ¶ 21.[11]  These acts were purely investigatory,

24  seeking "clues and corroboration that might give probable cause"

25  _____

26       [11] Origel does not allege who signed the declaration for his
     arrest. OSAC ¶ 43.

19

1  to recommend arrest and acting as a witness.  Accordingly, the
2  court finds defendant Coffey is not entitled to absolute
3  prosecutorial immunity for these acts.

4      In order to sustain their 42 U.S.C. § 1983 for malicious
5  prosecution, plaintiffs must demonstrate that defendant Coffey
6  wrongfully caused charges to be filed against them with malice
7  and without probable cause, and that he did so for the purpose
8  of denying plaintiffs a constitutional right. Awabdy v. City of
9  Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004). Plaintiffs have
10 certainly alleged facts that would support a finding of absence
11 of probable cause and malice. While not raised by Coffey or
12 Weydert, however, plaintiffs have not alleged any facts that
13 suggest that defendants' purpose in prosecuting plaintiffs was
14 to deprive them of their right to fair warning. Nonetheless,
15 Reynolds and Travelers raised this argument in their reply
16 brief, and it is discussed below. Thus, the court here turns to
17 causation.

18     Generally "the decision to file a criminal complaint is
19 presumed to result from an independent determination on the part
20 of the prosecutor, and thus, precludes liability for those who
21 participated in the investigation or filed a report that
22 resulted in the initiation of proceedings." Awabdy, 368 F.3d at
23 1067 (citing Smiddy v. Varney, 665 F.2d 261, 266-68 (9th Cir.
24 1981)). Nevertheless, "the presumption of prosecutorial
25 independence does not bar a subsequent § 1983 claim against
26 state or local officials who improperly exerted pressure on the

1   prosecutor, knowingly provided misinformation to him, concealed
2   exculpatory evidence or otherwise engaged in wrongful or bad
3   faith conduct that was actively instrumental in causing the
4   initiation of legal proceedings." Awabdy, 368 F.3d at 1067. In
5   Awabdy, the Ninth Circuit held that a former city councilman was
6   able to sustain a § 1983 claim for malicious prosecution against
7   defendants because he properly alleged that criminal proceedings
8   were initiated against him on the basis of defendants' knowingly
9   false accusations. Id.

10      The Ambrose plaintiffs here allege that defendant Coffey
11  made a Declaration in Support of Arrest Warrant that "contained
12  deliberately false and misleading allegations. All defendants
13  allege that Coffey gathered information concerning the legality
14  of MUAs and was involved in decisions occurring before the
15  determination on probable cause. Therefore, plaintiffs have
16  alleged enough to demonstrate that their first claim is not
17  barred as to Coffey by prosecutorial immunity. Thus, defendant
18  Coffey's motion to dismiss plaintiffs' first claim is denied.

19          **2.   Plaintiffs' Second Claim Fails Because Both**
20          **Weydert and Coffey Are Entitled to Absolute**
            **Immunity.**

21      Plaintiffs allege that defendants Weydert and Coffey
22  violated plaintiffs' procedural due process rights and
23  maliciously prosecuted them by failing to provide exculpatory
24  evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963).
25  (OSAC ¶¶ 67-78). In Imbler v. Pachtman, the Supreme Court held
26  that a prosecutor is immune from claims of maliciously initiated

prosecution, providing false testimony and withholding exculpatory evidence. Imbler, 424 U.S. at 422 (discussed in Kalina, 522 U.S. at 124). Further, the Ninth Circuit has expressly stated that "a prosecutor's decision not to preserve or turn over exculpatory material before trial, during trial, or after conviction . . . is, . . . an exercise of the prosecutorial function and entitles the prosecutor to absolute immunity" even though his conduct violated Brady. Broam v. Bogan, 320 F.3d 1023, 1030 (9th Cir. 2003).[12] Plaintiffs' claim against Weydert and Coffey for violating Brady can only apply to the scope of the Supreme Court decision, i.e., prosecutorial decisions to withhold or fail to preserve exculpatory evidence before, during, or after trial. Id. Thus, Weydert and Coffey's motion to dismiss this claim is granted, with prejudice.[13]

### 3.   Plaintiffs' Third Claim Fails to State a Claim for Which Relief Can Be Granted.

Plaintiffs claim that defendant Weydert's public statements about the investigations of MUAs constitute a malicious prosecution that resulted in the violation of plaintiffs' First Amendment rights. (ASAC ¶¶ 52-55.) In Denny v. Drug Enforcement

---

[12] This court must confess difficulty in concluding that a violation of the Constitution is within the prosecutorial function, but Imbler and Broam are binding on this court.

[13] The reliance on Brady appears to limit this claim to a failure to turn over exculpatory evidence to plaintiffs. This distinguishes this claim for that discussed in 1 above. Moreover, there is no apparent duty for an investigator to turn material over to the defense, that duty appears to rest with the prosecutor.

1  <u>Admin.</u>, this court held that a criminal investigation in

2  retaliation for and to chill a physician's *lawful speech*

3  supporting medical marijuana was a cognizable First Amendment

4  violation. <u>Denny v. Drug Enforcement Admin.</u>, 508 F. Supp. 2d

5  815, 830 (E.D. Cal. 2007). Here, plaintiffs claim that Weydert's

6  statements were made to intimidate all chiropractors within the

7  State of California from *performing* lawful MUAs, and to scare

8  patients and chiropractors away from *pursuing MUA* as a course of

9  treatment.(ASAC ¶¶ 57-58, OSAC ¶¶ 88-89) (emphasis added).

10      In <u>Denny</u>, this court held that a plaintiff "must plead and

11  prove that the challenged investigative activities would not

12  have been undertaken but for the defendants' retaliatory

13  animus." <u>Denny</u>, 508 F. Supp. 2d at 830. Plaintiffs have nowhere

14  in their Second Amended Complaint pled facts that support a

15  conclusion that an investigation was undertaken with retaliatory

16  animus to plaintiffs' lawful speech. Specifically, plaintiffs do

17  not allege that they engaged in any speech prior to their

18  criminal investigations and prosecutions. Thus, plaintiffs have

19  alleged no facts that defendants retaliated against them for

20  protected speech.

21      Further, to the extent that plaintiffs may also be seeking

22  to bring a claim against defendants for preventing them from

23  practicing their profession, such a claim does not lie here,

24  where plaintiffs have only alleged that defendants sought to

25  prevent them from performing MUAs, not from the practice of

26  chiropracty generally. See <u>Conn v. Gabbert</u>, 526 U.S. 286, 291-92

23

1   (1999)("[T]he liberty component of the Fourteenth Amendment's

2   Due Process Clause includes some generalized due process right

3   to chose one's **field of private employment**, but a right which is

4   nevertheless subject to reasonable government regulation.)

5   (emphasis added).  Thus, plaintiff's third claim is also

6   dismissed with prejudice.

7       **B.   Reynolds and Travelers' Motion**

8           **1.   Plaintiffs' Section 1983 Claim for Malicious
               Prosecution in Violation of Due Process for Lack**

9           **of Fair Warning**

10      The Insurance defendants move to dismiss plaintiffs'

11  Section 1983 malicious prosecution claim. To succeed on a

12  malicious prosecution claim under Section 1983, a plaintiff must

13  show both the elements of a state law malicious prosecution

14  claim and that the prosecution was brought for the purpose of

15  denying a specific constitutional right. Womack v. County of

16  Amador, 551 F. Supp. 2d 1017, 1031 (E.D. Cal. 2008) (citing

17  Usher v. City of Los Angeles, 828 F.2d 556, 562 (9th Cir.

18  1987)), Alaya v. KC Environmental Health, 426 F. Supp. 2d 1070

19  (E.D. Cal. 2006) (same). Under California law, "the malicious

20  prosecution plaintiff must plead and prove that the prior

21  proceeding commenced by or at the direction of the malicious

22  prosecution defendant, was: (1) pursued to a legal termination

23  favorable to the plaintiff; (2) brought without probable cause;

24  and (3) initiated with malice." Womack, 551 F. Supp. 2d at 1031

25  (citing Sagonowsky v. More, 64 Cal. App. 4th 122, 128 (1998) and

26  Villa v. Cole, 4 Cal. App. 4th 1327, 1335 (1992)). Here,

1  plaintiffs allege that the prosecutions against them were

2  brought by defendants knowing that plaintiffs lacked fair

3  warning that their conduct was illegal.

4      In their argument to dismiss this claim, Reynolds and

5  Travelers argue that, "42 U.S.C. § 1983 does not provide a

6  cognizable cause of action for malicious prosecution in

7  violation of substantive due process." Travelers Motion 8. They

8  continue to argue that this claim fails "because the mere fact

9  that a defendant may have a possible defense to a criminal

10 charge does not support the conclusion that the criminal charges

11 were brought without probable cause. Id. at 9-10. These

12 defendants further state that they "have been unable to locate

13 any case supporting the proposition that a malicious prosecution

14 claim can be based on the alleged failure by the person

15 initiating the underlying action to predict that the defendant

16 might raise a defense to the charge." Id. at 10. In their reply,

17 Reynolds and Travelers again argue that plaintiff cannot "assert

18 a claim for malicious prosecution under section 1983 based on

19 the alleged lack fo fair warning." Travelers Reply 5.

20     It appears that these defendants failed to read this

21 court's March 31, 2010 order, ECF No. 109. This order is

22 publically available on both Westlaw and Lexis Nexis. See

23 Ambrose v. Coffey, No. 2:08-cv-1664 LKK-GGH, ___ F. Supp. 2d

24 ___, 2010 WL 1267890, * 8, 11-12, 2010 U.S. Dist. LEXIS 31028,

25 *22-23, 33-37 (E.D. Cal. Mar. 31, 2010). In this order, the

26 court held that plaintiffs had articulated a theory under

Section 1983 for violation of their due process rights by
initiating prosecutions against them knowing that plaintiffs
lacked fair warning that their conduct was unlawful.

The court notes that in their reply, these defendants also
raise a new argument. They argue that plaintiffs have failed to
allege facts that the alleged malicious prosecution was
conducted with the intent to subject a person to a denial of
constitutional rights. It is true that plaintiffs nowhere
alleged facts that directly support a conclusion that the
prosecutions were initiated for the purpose of depriving
plaintiffs of their right to fair warning, but rather have
alleged their purpose to be to prevent plaintiffs from billing
Travelers for the performance of MUAs. Plaintiffs did not write
this cause of action as the court instructed in its prior order.
Specifically, the court instructed plaintiffs to plead a claim
under Section 1983 for violation of their due process rights
because defendants initiated a prosecution against them knowing
that they lacked fair warning that their conduct was unlawful.
This theory of liability was not directly premised upon
malicious prosecution. The malicious prosecution theory they
alleged is flawed because there are no allegations that the
prosecutions were brought for the purpose of depriving them of a
constitutional right, as required to state a claim for malicious
prosecution under Section 1983. <u>Awabdy</u>, 368 F.3d at 1066.

The court considered dismissal with leave to amend so as to
premise plaintiff's fair warning claim as a violation of due

1    process, and not a malicious prosecution claim.  This case,

2    however, has languished at the pleading stage, despite the fact

3    that the parties all know what the case about. Under the

4    circumstances, dismissal and repleading appears to be no more

5    than honoring form over substance, and the court declines to

6    require future pleadings.[14] That determination is especially

7    appropriate in light of the fact that, if there is a pretrial

8    conference in the case, the order emerging therefrom will

9    supercede the pleadings. Thus, Reynolds and Travelers' motion to

10   dismiss this claim is denied.

11              **2.   Motion to Strike Portions of Origel's Complaint**

12          Defendants Reynolds and Travelers also move to strike

13   several paragraphs from Origel's complaint. They argue that

14   these allegations are "impertinent, scandalous, designed to

15   create bias against Travelers and Reynolds, and not material to

16   plaintiffs' [sic] claims." Travelers Motion 12. These

17   allegations concern the common language, ethnicity, and

18   occupation of Origel's patients and a Travelers policy to view

19   claims from patients with this background with extra scrutiny.

20   If proven, these allegations appear to be relevant to ascertain

21   Travelers' and Reynolds' motivation to request prosecution of

22

23          [14]  Travelers and Reynolds had an opportunity to seek
     reconsideration of this court's prior order articulating the fair
24   warning theory, and did not. Further, these defendants should have
     suspected that plaintiffs' claim was premised upon the theory in
25   this court's prior order and, consequently, could have raised
     concerns with the application of that theory to them in this
26   motion. Accordingly, these defendants are not entitled to a further
     opportunity to move to dismiss this claim.

1 | Origel. Thus, defendants' motion to strike is denied.

2 | **IV. CONCLUSION**

3 |     For the foregoing reasons, Coffey and Weydert's motions to

4 | dismiss, ECF Nos. 112, 114, and Reynolds and Travelers' motion

5 | to dismiss and to strike, ECF No. 115, are denied in part and

6 | granted in part as follows:

7 |     (1)   Defendant Coffey's motions to dismiss plaintiffs'

8 |           first causes of action are DENIED.

9 |     (2)   Defendants Coffey and Weydert's motions to dismiss

10 |           plaintiffs' second causes of action are GRANTED, with

11 |           prejudice.

12 |     (3)   Defendants Coffey and Weydert's motions to dismiss

13 |           plaintiffs' third causes of action are GRANTED, with

14 |           prejudice.

15 |     (4)   Defendants Reynolds and Travelers' motion to  dismiss

16 |           plaintiffs' first causes of action is DENIED.

17 |     (5)   Defendants Reynolds and Travelers' motion to strike is

18 |           DENIED.

19 | IT IS SO ORDERED.

20 | DATED:  July 23, 2010.

21 |

22 |

23 | LAWRENCE K. KARLTON
     SENIOR JUDGE

24 |      UNITED STATES DISTRICT COURT

25 |

26 |