UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH AMBROSE, D.C.,

        Plaintiff,

  v.

GARY COFFEY, et al.,

        Defendants.

_____/

NO. CIV. S-08-1664 LKK/GGH

O R D E R

Plaintiffs Ambrose, Yates, Sausedo, Vaezi, and Origel--all licensed chiropractors--bring suits arising out of an investigation of them, their arrests, and their criminal prosecutions.

Now before the court are the following two questions that arose from Defendants' motion for summary judgment and the oral argument thereon: (1) whether Plaintiffs can allege a Section 1983 substantive due process claim that survives Defendants' motions for summary judgment; and (2) whether Plaintiffs' malicious prosecution claims are barred by collateral estoppel.

////

////

////

# I. BACKGROUND[1]

Plaintiffs in this case assert that they performed a chiropractic procedure called Manipulation Under Anesthesia ("MUA"), believing that MUAs were within the scope of their chiropractic practice. They allege that, in violation of their federal due process rights and their rights against malicious prosecution under state law, Defendants (Travelers, an insurance provider, and its employee, William Reynolds) requested and participated in criminal actions against Plaintiffs in order to prevent future claims, and to avoid paying outstanding claims, for the performance of MUAs.

## A. Undisputed Facts

According to the statements of undisputed facts submitted by Defendants in support of their motions, Plaintiffs' responses to those statements, and Defendants' replies, the parties agree that the following facts are undisputed.

Prior to filing criminal charges against Plaintiffs Ambrose, Yates, Sausedo, and Vaezi, relating to the performance of MUAs on August 23, 2005, DDA James C. Weydert ("Weydert") was aware of California Board of Chiropractic Examiners ("BCE") documents

_____

[1] For a detailed summary of the procedural history in this case and the factual allegations contained in Plaintiffs' Second Amended Complaints, see this court's July 23, 2010 order, ruling on Defendants' motions to dismiss. Order, ECF No. 126, 1-13. Since the issuance of that order, following a stipulation by the parties, the court ordered that Defendants Weydert, Coffey, and the County of San Joaquin be dismissed with prejudice. Stipulation & Order, ECF No. 132 (Aug. 27, 2010). The only remaining defendants in this action are therefore Reynolds and Travelers.

1  adopting statements that "a proper chiropractic adjustment, if
2  within the scope of practice of Section 302, is not made illegal
3  simply because the patient is under anesthesia."  Defs' Reply re:
4  Origel, ECF No. 181 ("DRO"), ¶ 60; Defs' Reply re: Ambrose et al.
5  ("DRA"), ¶¶ 63, 67.   Similarly, Weydert was aware of the
6  information in those documents prior to filing criminal charges
7  against Origel relating to the performance of MUAs in March 2006.
8  DRO ¶ 64.

9      Prior to filing criminal charges against Plaintiffs Ambrose,
10 Yates, Sausedo, and Vaezi, and prior to filing criminal charges
11 against Origel relating to the performance of MUAs, the DA's Office
12 (including Defendant Gary Coffey, a criminal investigator with the
13 DA's office) knew that the BCE had signed a "Final Statement of
14 Reasons" recognizing MUAs on October 21, 2004, and that the BCE had
15 approved continuing education classes on MUAs.  DRO ¶¶ 65, 66; DRA
16 ¶¶ 68, 69.

17     On or about August 23, 2005, DDA Weydert filed a criminal
18 complaint against Plaintiffs Yates and Ambrose charging them with
19 six counts of criminal conduct, including the uncertified practice
20 of medicine for performing MUAs, insurance fraud, conspiracy, and
21 grand theft.  DRA ¶ 73.[2]  On or about August 23, 2005, DDA Weydert
22 filed a criminal complaint against Plaintiffs Sausedo and Vaezi
23 charging them with three counts of criminal conduct, including the

24  _____

25     [2]  According to Plaintiffs' Second Amended Complaint, the
   criminal charges against Ambrose were dismissed after a hearing on
26 his motion to dismiss on August 15, 2006.

1  uncertified practice of medicine for performing MUAs and insurance

2  fraud.  DRA ¶ 79.[3]

3      In March 2006, an amended complaint was filed by the DA's

4  Office against Origel which included, for the first time, a charge

5  against Origel for a violation of Business & Professions Code §

6  2052--uncertified practice of medicine--relating to the performance

7  of MUAs.  DRO ¶ 73.

8      In May/June 2006, the criminal case against Origel proceeded

9  to a preliminary hearing in front of Judge Garrigan of the San

10 Joaquin County Superior Court.   DRO ¶ 77; DRA ¶ 88.   At the

11 preliminary hearing, which was conducted by DDAs Green and Weydert,

12 Defendant William Reynolds ("Reynolds")--an employee of Travelers

13 who was involved in investigating alleged workers compensation

14 fraud--was called as a witness by the prosecution.  Reynolds did

15 not provide any testimony on the issue of MUAs, including the

16 legality of that procedure.  DRO ¶ 79.

17     In June 2006, Plaintiff Origel submitted a brief in the

18 criminal case arguing that he did not have fair warning that the

19 performance of MUAs was illegal.  DRO ¶ 80; DRA ¶ 89.  During oral

20 argument at the conclusion of the preliminary hearing, Origel's

21 attorney argued the fair warning issue.   DRO ¶ 81; DRA ¶ 90.

22 Despite those arguments regarding the alleged lack of fair warning,

23 in June 2006, at the conclusion of the preliminary hearing, Judge

24

25     [3] According to Plaintiffs' Second Amended Complaint, the
   criminal charges against Sausedo and Vaezi were dismissed on March
26 11, 2008, on the grounds of insufficient evidence and in the
   interests of justice.

1  Garrigan found the evidence sufficient to hold Origel to answer on

2  fifteen counts, including the charge relating to the performance

3  of MUAs.   DRO ¶ 82; DRA ¶ 91.

4      In March 2007, Origel filed a motion pursuant to California

5  Penal Code § 995 to set aside the order holding him to answer

6  following the preliminary hearing, and arguing that his federal due

7  process rights were being violated because he was being prosecuted

8  for performing MUAs when "no statute, case law or regulation []

9  states that MUAs are outside the scope of practice."  DRO ¶ 83; DRA

10 ¶ 92.   The DA's Office filed an opposition to the motion, and

11 Origel filed a reply.   DRO ¶ 84; DRA ¶ 93.   The motion was heard

12 and denied in June 2007 by a different judge from the one who held

13 Origel to answer at the preliminary hearing.   DRO ¶ 85; DRA ¶ 94.

14     In June 2007, the criminal case against Yates proceeded to a

15 preliminary hearing in front of Judge Garrigan of the San Joaquin

16 County Superior Court.   DRA ¶ 84.   Reynolds did not testify as a

17 witness for the prosecution at the preliminary hearing, which was

18 conducted by DDA Sudha Rajender.   DRA ¶ 85.   At the conclusion of

19 the preliminary hearing, Yate's defense attorney argued that the

20 court should not hold Yates to answer as to the uncertified

21 practice of medicine charge because the laws were too vague for the

22 Court to find that MUAs were outside the scope of practice for a

23 chiropractor.   DRA ¶ 86.   The state court held Yates to answer,

24 including on the MUA charge.   DRA ¶ 87.[4]

25 ─────────────────

26     [4] According to Plaintiffs' Second Amended Complaint, the
criminal charges against Yates were dismissed in the interests of

1    The criminal case against Origel proceeded to trial in 2008.

2 After the prosecution presented its case-in-chief, Origel made a

3 motion to dismiss the case pursuant to California Penal Code §

4 1118.1.  The state court denied the motion.  DRO ¶ 87.[5]

5 **B. Plaintiffs' Remaining Causes of Action**

6    Following the court's July 23, 2010 order ruling on

7 Defendants' motions to dismiss and the stipulation and order

8 dismissing Defendants Weydert, Coffey, and the County of San

9 Joaquin, Plaintiffs' only remaining causes of action were against

10 Reynolds and Travelers for "malicious prosecution resulting in

11 violation of due process for lack of fair warning," Ambrose Second

12 Amended Complaint ("ASAC"), ECF No. 110, ¶¶ 34-39 (First Cause of

13 Action); Origel Second Amended Complaint, ECF No. 111 ("OSAC"), ¶¶

14 60-66, and "common law malicious prosecution," ASAC ¶¶ 61-67

15 (Fourth Cause of Action); OSAC ¶¶ 90-96.

16    In the court's July 23, 2010 order, in regards to Plaintiffs'

17 first cause of action against Reynolds and Travelers for "malicious

18 prosecution resulting in violation of due process for lack of fair

19 warning," this court provided as follows:

20        [P]laintiffs nowhere alleged facts that directly
         support a conclusion that the prosecutions were
21

22 justice.

23    [5] According to Plaintiff Origel's Second Amended Complaint,
all charges against Origel were dismissed in the interests of
24 justice on November 20, 2008.  OSAC, ECF No. 111, ¶ 44.  In this
court's December 24, 2009 order ruling on Defendants' motions to
25 dismiss, however, the court noted that "At oral argument,
defendants informed the court that Origel was tried and that the
26 trial resulted in a hung jury."  Order, ECF No. 64, 7 fn. 1.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

> initiated for the purpose of depriving plaintiffs
> of their right to a fair warning, but rather have
> alleged their purpose to be to prevent plaintiffs
> from billing Travelers for the performance of MUAs.
> Plaintiffs did not write this cause of action as
> the court instructed in its prior order.
> Specifically, the court instructed plaintiffs to
> plead a claim under Section 1983 for violation of
> their due process rights because defendants
> initiated a prosecution against them knowing that
> they lacked fair warning that their conduct was
> unlawful.  This theory of liability was not
> directly premised upon malicious prosecution.  The
> malicious prosecution theory they alleged is flawed
> because there are no allegations that the
> prosecutions were brought for the purpose of
> depriving them of a constitutional right, as
> required to state a claim for malicious prosecution
> under Section 1983.  Awabdy [v. City of Adelanto],
> 368 F.3d [1062,] 1066 [(9th Cir. 2004)].  The court
> considered dismissal with leave to amend so as to
> premise plaintiff's fair warning claim as a
> violation of due process, and not a malicious
> prosecution claim.  This case, however, has
> languished at the pleading stage, despite the fact
> that the parties all know what the case [is] about.
> Under the circumstances, dismissal and repleading
> appears to be no more than honoring form over
> substance, and the court declines to require future
> pleadings.  That determination is especially
> appropriate in light of the fact that, if there is
> a pretrial conference in the case, the order
> emerging therefrom will supersede the pleadings.

18  Order, ECF No. 126, 26-27.

19      By order issued December 13, 2011, this court reiterated that

20  it construed Plaintiff's first cause of action as a claim under

21  Section 1983 for violation of Plaintiffs' due process rights

22  because Defendants initiated a prosecution against them knowing

23  that they lacked fair warning that their conduct was unlawful.

24  Order, ECF No. 186.

25  **D. Defendants' Motion for Summary Judgment**

26      Defendants' filed motions for summary judgment as to

7

1   Plaintiffs' remaining claims. Defs' Mots., ECF Nos. 155, 157. The

2   court found that: (1) Plaintiffs are not barred by collateral

3   estoppel from bringing a claim under Section 1983 for violation of

4   their due process rights because Defendants initiated a prosecution

5   against them knowing that Plaintiffs lacked fair warning that their

6   conduct was unlawful; and (2) Defendants' motions for summary

7   judgment are granted as to Plaintiffs' Section 1983 procedural due

8   process claims. Order, ECF No. 186, at 9-15.

9       At oral argument on Defendants' motions for summary judgment,

10  Plaintiffs' counsel indicated that they had felt constrained by

11  this court's prior order suggesting that Plaintiffs' § 1983 due

12  process claims were most appropriately pled under a theory of

13  procedural due process, as opposed to a theory of substantive due

14  process. This court therefore ordered additional briefing from

15  Plaintiffs, to designate specific facts demonstrating the existence

16  of genuine issues for trial as to their substantive due process

17  claim.

18      Additionally, because Defendants, in their reply to

19  Plaintiffs' opposition to summary judgment, raised the argument

20  that Plaintiffs' malicious prosecution claims were barred by

21  collateral estoppel, the court granted the parties an opportunity

22  to submit further briefs regarding Defendants' collateral estoppel

23  as to malicious prosecution argument.

24      Plaintiffs filed briefs, presently before the court,

25  addressing the substantive due process and collateral estoppel

26  issues, and Defendants replied. See Pls' Supplemental Brs., ECF

Nos. 187, 188; Defs' Supplemental Br., ECF No. 189.

## II. ANALYSIS

### A. Plaintiffs' Substantive Due Process Claim

As a preliminary matter, in response to Plaintiffs' supplemental briefs, Defendants argue that the court cannot entertain a substantive due process claim by Plaintiffs because, inter alia: (1) consideration of such a claim would first require Plaintiffs to amend their complaint to add a substantive due process claim and no leave to amend should be granted because "a motion [for leave to amend] would be untimely, no good cause has been shown to justify the untimely proposed amendment, and plaintiffs should be judicially estopped from trying to assert a substantive due process claim";[6] and (2) any substantive due process claim by Plaintiffs would be barred by the applicable statute of limitations.[7] Defs' Supplemental Br., ECF No. 189, at

---

[6] Defendants' argument that amendment is required before the court may construe Plaintiffs' claim as being brought under a substantive due process theory is consistent with the transcript of the motions hearing, at which Plaintiff's counsel asked, "Does the court wish me to submit an amended pleading or just briefing on that issue?", and the court replied, "Why don't you start with briefing and we'll see whether the amendment will lie?". Tr., ECF No. 185, at 9.

[7] Additionally, Defendants twice suggest that the court's consideration of Plaintiffs' claims under a substantive due process theory, at this stage in the litigation, would violate Defendants' due process rights. See Defs' Supplement Br., ECF No. 189, at 5 ("Ironically, defendants' due process rights are now in danger of being violated."), 9 ("Allowing plaintiffs to defeat the motions for summary judgment based on new legal claims asserted for the first time at the hearing on the motions would be inappropriate and a violation of defendants' due process rights."). Defendants do not make clear which due process theory would protect their right to preclude another party from explicating their basis for a

1   6-14.[8]

2        **i. Leave to Amend**

3        Federal Rule of Civil Procedure 15(a) provides that leave to

4   amend shall be "freely give[n] when justice so requires." "In the

5   absence of any apparent or declared reason–such as undue delay, bad

6   faith or dilatory motive on the part of the movant, repeated

7   failure to cure deficiencies by amendments previously allowed,

8   undue prejudice to the opposing party by virtue of allowance of the

9   amendment, futility of amendment, etc.-the leave sought should, as

10  the rules require, be 'freely given.'" Foman v. Davis, 371 U.S.

11  178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). "'[T]he purpose of

12  pleading is to facilitate a proper decision on the merits.'" Id.

13  at 181-82, 83 S.Ct. 227 (quoting Conley v. Gibson, 355 U.S. 41, 48,

14  78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The strong policy permitting

15  amendment is to be applied with "extreme liberality." Eminence

16  Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir.

17  2003) (citation omitted). Factors which merit departure from the

18  usual "[l]iberality in granting a plaintiff leave to amend" include

19  bad faith and futility. Bowles v. Reade, 198 F.3d 752, 757 (9th

20  Cir. 1999).

21        The court first addresses whether amendment would be futile,

22  _____

23  constitutional claim.   In the absence of any legal support for
    Defendants' due process argument, the court declines to further
24  address their due process contention.

25        [8]The court's citations to page numbers in the parties'
    supplemental briefs refer to the court's electronic pagination
26  system.

1   due to the applicable statute of limitations and the merits of

2   Plaintiffs' substantive due process argument, before turning to the

3   remaining considerations for granting leave to amend.

4           **a. Statute of Limitations**

5       Defendants argue that "the statute of limitations on any

6   substantive due process claim ran at least a year before the civil

7   complaints were filed," based on Defendants' reasoning that

8   Plaintiffs' cause of action accrued upon the filing of the criminal

9   charges against Plaintiffs relating to the MUAs.    Defs'

10  Supplemental Br., ECF No. 189, at 12.

11      Actions brought pursuant to 42 U.S.C. § 1983 are governed by

12  state statutes of limitations for personal injury actions.   Knox

13  v. Davis, 260 F.3d 1009, 1012 (9th Cir. 2001); Karim-Panahi v. Los

14  Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988) (citing

15  Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254

16  (1985), *superceded by statute on other grounds as stated in* Jones

17  v. R.R. Donnelley & Sons Co., 541 U.S. 369, 377-78 (2004)).   In

18  California, the statute of limitations for personal injury actions

19  is two years.   Cal. Civ. Proc. Code § 335.1 (West 2003).   Thus,

20  Plaintiffs had two years after their substantive due process claim

21  accrued to bring an action for violation of their substantive due

22  process rights.

23      "While state law determines the period of limitations, federal

24  law determines when a cause of action accrues."   Cline v. Brusett,

25  661 F.2d 108, 110 (9th Cir. 1981) (internal citations omitted).

26  Under federal law, the statute of limitations begins to run when

1  a potential plaintiff knows or has reason to know of the asserted

2  injury.  Action Apartment Ass'n v. Santa Monica Rent Control Bd.,

3  509 F.3d 1020, 1026-27 (9th Cir. 2007).

4      While a cause of action for malicious prosecution does not

5  accrue until the case has been terminated in favor of the accused,

6  see Venegas v. Wagner, 704 F.2d 1144, 1146 (9th Cir.1983), a

7  "substantive due process violation is complete as soon as the

8  government action occurs."  Action Apartment Ass'n, 509 F.3d at

9  1027 (citing Macri v. King Country, 126 F.3d 1125, 1129 (9th Cir.

10  1997)).

11      Here, Plaintiffs knew or had reason to know that they were

12  being prosecuted for the performance of MUAs, without fair warning

13  as to any illegality of the procedure, at the time the criminal

14  charges were filed against them for performance of MUAs.  Thus,

15  substantive due process causes of action arising from the

16  prosecution of Plaintiffs Yates, Ambrose, Sausedo, and Vaezi, for

17  their perfomance of MUAs, accrued on August 23, 2005.  Any

18  substantive due process cause of action arising from the

19  prosecution of Plaintiff Origel, for his performance of MUAs,

20  accrued in March 2006.

21      The statute of limitations on the substantive due process

22  claims brought by Plaintiffs Yates, Ambrose, Sausedo, and Vaezi,

23  therefore expired on August 23, 2007.  The statute of limitations

24  on the substantive due process claim brought by Plaintiff Origel

25  expired in March 2008.  The earliest filed complaint in this case

26  was filed by Plaintiff Ambrose, in July 2008.  Thus, all of

1   Plaintiffs' substantive due process claims are barred by the

2   applicable statute of limitations.

3       Plaintiffs cannot successfully argue that the continuing

4   violation theory, which is applicable to § 1983 actions and allows

5   plaintiffs to seek relief for events outside of the limitations

6   period, see Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001),

7   applies in their case.  Because Plaintiffs do not allege a system

8   or practice of discrimination, the only way they can show a

9   continuing violation is to "state facts sufficient . . . [to]

10  support[] a determination that the alleged discriminatory acts are

11  related closely enough to constitute a continuing violation, and

12  that one or more of the acts falls within the limitations period."

13  Id. (citing DeGrassi v. City of Glendora, 207 F.3d 636, 645 (9th

14  Cir. 2000)).

15      The Ninth Circuit has held, however, that a "mere 'continuing

16  impact from past violations is not actionable.'" Id. (internal

17  citations omitted).  Here, even though the negative effects of the

18  criminal prosecutions against Plaintiffs continued throughout the

19  pendency of their criminal cases, the continued prosecutions were

20  impacts of the initial filing of the criminal charges against them.

21  Thus, the continuing violation doctrine is inapplicable to this

22  case.

23      Because Plaintiffs are time-barred from bringing a claim for

24  violation of their substantive due process rights, amendment to

25  allow such a claim would be futile.

26  ////

1          **b. Merits of Plaintiffs' Substantive Due Process Claim**

2          Although the court has concluded that Plaintiffs' substantive

3     due process claims arising from the criminal prosecutions against

4     them are time-barred, the court feels it necessary to address the

5     merits of such a claim, should its first conclusion be found to be

6     in error.

7          Plaintiffs' substantive due process claim has not been clearly

8     articulated.   It   appears   to   be   based   on   the   prosecution   of

9     Plaintiffs without fair warning that the performance of MUAs was

10    illegal, and on Defendants' abuse of the criminal process.

11         The substantive due process prong of the Fourteenth Amendment

12    protects against egregious official conduct, which is "arbitrary

13    in the constitutional sense"; that is, the conduct must amount to

14    an "exercise of power without any reasonable justification in the

15    service of a legitimate governmental objective." <u>County of</u>

16    <u>Sacramento v. Lewis</u>, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d

17    1043 (1998); <u>Shanks v. Dressel</u>, 540 F.3d 1082, 1088 (9th Cir.

18    2008).   The cognizable level of executive abuse of power is that

19    which "shocks the conscience." <u>Costanich v. Dep't of Social and</u>

20    <u>Health Services</u>, 627 F.3d 1101, 1111 (9th Cir. 2010) (citing

21    <u>Brittain v. Hansen</u>, 451 F.3d 982, 991 (9th Cir. 2006)).

22         Put another way, an abuse of process constitutes a substantive

23    due process violation if it "'offend[s] those canons of decency and

24    fairness which express the notions of justice of English-speaking

25    peoples even toward those charged with the most heinous offenses."

26    <u>Johnson v. Barker</u>, 799 F.2d 1396, 1400 (9th Cir. 1986) (citing

1 Rochin v. California, 342 U.S. 165, 169 (1952)).[9]

2      The protection from governmental action provided by

3 substantive due process has most often been reserved for the

4 vindication of fundamental rights.  Halverson v. Skagit County, 42

5 F.3d 1257, 1261 (9th Cir. 1994) (citing Albright v. Oliver, 510

6 U.S. 266, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994) ("The

7 protections of substantive due process have for the most part been

8 accorded to matters relating to marriage, family, procreation, and

9 the right to bodily integrity.")).  The Supreme Court has always

10 been reluctant to expand the concept of substantive due process

11 because it asserts that guideposts for responsible decisionmaking

12 in this unchartered area are scarce and open-ended.  Id. at 1262

13 (citing Collins v. City of Harker Heights, 503 U.S. 115, 112 S.Ct.

14 1061, 1068, 117 L.Ed.2d 261 (1992)).[10]  Where, as here, Plaintiffs

15 rely on substantive due process to challenge governmental action

16 that does not impinge on fundamental rights, the court does "not

17 require that the government's actions actually advance its stated

18 purposes, but merely look[s] to see whether the government *could*

19 have had a legitimate reason for acting as it did."  Id. (citing

20 Wedges/Ledges of California, Inc. v. City of Phoenix, 24 F.3d 56,

21 66 (9th Cir. 1994)).  Official decisions that rest on an erroneous

22

23      [9] While the decency and fairness inherent in our notions of
24 justice have never been the exclusive province of "the English-
speaking peoples," the court observes the meaning and import of the
Ninth Circuit's statement of law.
25

26      [10]  How this differs from all the cases explicating
constitutional rights has not been addressed.

1  legal  interpretation  are  not  necessarily  constitutionally

2  arbitrary.   Shanks, 540 F.3d at 1089 (citing Collins v. City of

3  Harker Heights, 503 U.S. 115, 128-30, 112 S.Ct. 1061, 117 L.Ed.2d

4  261 (1992); Brittain v. Hansen, 451 F.3d 982, 996 (9th Cir. 2006)).

5       As  to  the  initiation  of  criminal  prosecution  against

6  Plaintiffs,  the  court  previously  concluded  that  "a  reasonable

7  prosecutor or investigator could have relied on the language in

8  [People v. Fowler, 32 Cal.App.2d Supp. 737, 745, 84 P.2d 326

9  (1938)] that the practice of chiropracty is drugless to conclude

10 that any use of drugs, regardless of who administers them, violates

11 the Chiropractic Act." Ambrose v. Coffey, 696 F.Supp.2d 1109, 1116

12 (E.D. Cal. 2009).  Consistent with this court's prior opinion, the

13 court  here  determines  that  the  government  could  have  had  a

14 legitimate  reason  for  initiating  criminal  prosecutions  against

15 Plaintiffs  based  on  their  performance  of  MUAs  and,  thus,  the

16 government's actions did not rise to the level of a substantive due

17 process violation.

18      In sum, because Plaintiffs' substantive due process claims are

19 time-barred,  and  because  such  claims  would  not  succeed  on  the

20 merits, amendment to allow such claims would be futile.  The court,

21 thus,  need  not  discuss  the  remaining  considerations  for  granting

22 leave to amend under Federal Rule of Civil Procedure 15(a).  See

23 Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222

24 (1962).

25 ////

26 ////

**B. Collateral Estoppel as to Plaintiffs' Malicious Prosecution Claim**

Defendants argue that Plaintiffs' state law malicious prosecution claims are barred by collateral estoppel because the state court's finding of probable cause in the criminal prosecutions of Plaintiffs Origel and Yates, following preliminary hearings, "bars relitigation of the probable cause element" of a malicious prosecution cause of action and "entitles defendants to summary judgment as to the state law malicious prosecution claim[s]" brought by all Plaintiffs.[11] Defs' Mot., ECF No. 189, at 21.

In the malicious prosecution context, probable cause is a suspicion founded on circumstances sufficiently strong to warrant a reasonable man to believe that the charge is true. <u>Centers v. Dollar Markets</u>, 99 Cal.App.2d 534, 540, 222 P.2d 136, 141 (1950). To succeed on a malicious prosecution claim, amongst other factors, the plaintiff must prove that the defendant did not have reasonable grounds for believing that the facts alleged in the criminal complaint were true. <u>Id.</u> at 540, 222 P.2d at 141.

Under California law, an issue is precluded if (1) the issue sought to be precluded from relitigation was identical to that decided in a former proceeding; (2) that issue must have been

---

[11] In order for Plaintiffs to recover on a malicious prosecution claim, they would have to prove: (1) termination of the criminal proceedings in their favor; (2) want of probable cause; and (3) malice on the part of Defendants. <u>Sheldon Appel Co. v. Albert & Oliker</u>, 47 Cal.3d 863, 871, 765 P.2d 498, 501 (Cal. 1989).

1   actually litigated in the former proceeding; (3) that issue must

2   have been necessarily decided in the former proceeding; (4) the

3   decision in the former proceeding must be final and on the merits;

4   and (5) the party against whom preclusion is sought must be the

5   same as, or in privity with, the party to the former proceeding.

6   Hernandez v. City of Pomona, 46 Cal. 4th 501, 511, 207 P.3d 506

7   (Cal. 2009).  Of these five factors, the parties contest only the

8   finality of the decision in the former proceeding, and the privity

9   of the parties involved.

10      **i. Finality**

11      A long-standing principle of California common law is that "a

12  decision by a judge or magistrate to hold a defendant to answer

13  after a preliminary hearing constitutes *prima facie*--but not

14  *conclusive*--evidence of probable cause."   Awabdy v. City of

15  Adelanto, 368 F.3d 1062, 1067 (9th Cir. 2004); cf. Haupt v.

16  Dillard, 17 F.3d 285, 288 (9th Cir. 1994) ("The probable cause

17  determination at [Plaintiff's] preliminary hearing was not

18  interlocutory in any meaningful sense; it was, rather, a final,

19  conclusive determination of the issue. . . . [because the]

20  determination was immediately appealable").  As to the preclusive

21  effect of a probable cause determination, the California Court of

22  Appeal has explained that:

23          A finding of probable cause to hold the defendant
            over for trial is a final judgment on the merits
24          for the purposes of collateral estoppel under the
            California law because the accused can (1)
25          immediately appeal the determination by filing a
            motion to set aside the preliminary hearing ([Cal.]
26          Pen. Code § 995) and (2) obtain review of the

                                18

1    decision on the motion to set aside the preliminary
     hearing by filing a writ of prohibition ([Cal.]
2    Pen. Code § 999a).  Also, the issue of probable
     cause cannot be litigated further because it cannot
3    be used as a defense at trial.

4   McCutchen v. City of Montclair, 73 Cal.App.4th 1138, 1145-46, 87

5   Cal.Rptr.2d 95, 100 (Cal. Ct. App. 1999).

6        In June 2006, following a preliminary hearing in the San

7   Joaquin County Superior Court, Plaintiff Origel was held to answer

8   on criminal charges, one of which related to the performance of

9   MUAs.  In June 2007, Origel's motion to set aside the order holding

10  him to answer for the charge relating to the performance of MUAs

11  was heard and denied.  Plaintiff Yates was similarly held to answer

12  on a criminal charge related to the practice of MUAs, following a

13  preliminary hearing.

14       The undisputed fact that Plaintiffs Origel and Yates were held

15  to answer on criminal charges related to the performance of MUAs,

16  after a preliminary hearing, therefore constitutes prima facie

17  evidence that probable cause existed to proceed in their criminal

18  prosecutions.

19       However, "[a]mong the ways that a plaintiff can rebut a prima

20  facie finding of probable cause is by showing that the criminal

21  prosecution was induced by fraud, corruption, perjury, fabricated

22  evidence, or other wrongful conduct undertaken in bad faith."

23  Awabdy, 368 F.3d at 1067; see also McCutchen, 73 Cal.App.4th at

24  1147 ("When the officer misrepresents the nature of the evidence

25  supporting probable cause and that issue is not raised at the

26  preliminary hearing, a finding of probable cause at the preliminary

19

1  hearing would not preclude relitigation of the issue of integrity

2  of the evidence.").

3      As to the probable cause hearing in the criminal case against

4  Plaintiff Origel, Plaintiffs submitted numerous email exchanges

5  indicating that William Reynolds ("Reynolds") was both interested

6  in the monetary benefits to his company of declaring MUAs illegal

7  and saw his influence as a motivating force in the criminal

8  prosecutions.  See, e.g., Pls' Evid. Opp'n, ECF No. 162, Ex. 7

9  (August 25, 2005 email from Reynolds) ("Dr. Stahl: You have to love

10 it.  DOI proclaims MUA's illegal!  Wow!"); Pls' Evid. Opp'n, ECF

11 No. 162, Ex. 9 (August 25, 2005 email from Reynolds to Steven Piper

12 from "St. Paul Travelers") ("I just spoke with the DOI Investigator

13 and he states that his office wants to 'prosecute' all the DC's in

14 the state for billing this service (MUA's).  It would dramatically

15 affect the insurance commissioner's budget and political standing

16 to have a major arrest investigation of this magnitude.   The

17 financial impact would be huge!  There are 18,000 DC's in the state

18 and I bet 25% are involved in this procedure.  It will be very

19 interesting to see if we can franchise this investigation on a

20 National Investigation.  Would you like to discuss this?"); Pls'

21 Evid. Opp'n, ECF No. 162, Ex. 8 (October 17, 2005 email from

22 Reynolds to a consultant for Travelers) ("Lori, This is what Frank

23 & I have been pushing on!  The San Joaquin Co. DA arrested the 4

24 DC's for doing this procedure.").

25     Plaintiffs submitted evidence that, in a March 29, 2011

26 deposition of Lon Malcolm ("Malcolm"), a criminal investigator for

1    the California Department of Insurance Fraud Division, Malcolm

2    testified that portions of the affidavit that he had submitted to

3    DDA Weydert to establish the existence of probable cause to support

4    of the search warrant were "totally based on what Mr. Reynolds

5    [had] conveyed to [him]." Pls' Evid. Opp'n, ECF No. 162, Ex. 22,

6    104:3, 105:6-9; see also Pls' Evid. Opp'n, ECF No. 162, Ex. 24, 4-

7    15 (Affidavit).   The evidence before the court does not indicate

8    that the extent of Reynolds' influence of Malcolm was raised at the

9    preliminary hearing.

10       Defendants Reynolds and Travelers submitted evidence showing

11   that Malcolm also testified that he had independently reviewed the

12   citations to corporate law referred to in his affidavit, which

13   "either directly or ultimately, support[ed] the Department of

14   Workers' Compensation position on the irregularity of the MUA

15   referral system and [the] MUA procedures described [in the

16   affidavit]." See Decl. Richard Garcia, ECF No. 183, Ex. C, 107:5-

17   11; Pls' Evid. Opp'n, ECF No. 162, Ex. 23, 17:6-9.

18       Given Plaintiff's evidence indicating that the prosecutions

19   of Origel and Yates were based on Malcolm's affidavit, which was

20   in turn based on the evidently self-interested and potentially bad

21   faith influence of Reynolds, and the fact that the testimony

22   regarding Malcolm's reliance upon Reynolds was not available at the

23   time of the preliminary hearing, the court finds that Plaintiffs

24   have presented sufficient evidence to overcome the presumption that

25   Plaintiffs "had a full and fair opportunity to litigate the issue

26   of probable cause during the course of [their] criminal

1  prosecution." See Haupt v. Dillard, 17 F.3d 285, 290 (9th Cir.

2  1994). Thus, the court concludes that the fact that Plaintiffs

3  Origel and Yates were held to answer on their criminal charges is

4  not final for collateral estoppel purposes as to Plaintiffs' state

5  law malicious prosecution claim.

6  **ii. Privity**

7  Because the court determines that the state court's decision

8  to hold Plaintiffs Origel and Yates to answer after a preliminary

9  hearing does not, in this case, constitute a finding of probable

10 cause for collateral estoppel purposes, Defendants cannot assert

11 collateral estoppel on the probable cause issue against the

12 remaining Plaintiffs.

13 Thus, Plaintiffs are not barred by collateral estoppel from

14 bringing their state law claim for malicious prosecution.

15 **IV. CONCLUSION**

16 For the reasons provided above, Plaintiffs may not amend their

17 complaint to allege a substantive due process claim. Plaintiffs

18 are not barred by collateral estoppel from bringing their state law

19 claim for malicious prosecution.

20 A status conference is set for December 3, 2012 at 2:00 p.m.

21 The parties shall file their status reports fourteen (14) days

22 prior to the status conference.

23 IT IS SO ORDERED.

24 DATED: November 1, 2012.

25
                                          LAWRENCE K. KARLTON
26                                        SENIOR JUDGE
                                          UNITED STATES DISTRICT COURT